## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JESUS ACOSTA ARTICA, JUAN ZELAYA, NILSON CABALLERO, JOSE RUIZ, ADONIS LOBO, and ERNESTO GALEANO, Individually and on Behalf of all other Employees Similarly Situated,** | **ECF** <br><br> **09-CV-3796 (CBA)(RER)** |
| **Plaintiff,** | |
| -against- | **SECOND AMENDED COLLECTIVE ACTION COMPLAINT** |
| **J.B. CUSTOM MASONRY & CONCRETE, INC., J.B. BATTAGLIA, J.B. CONTRACTING, ALFREDO J. BATTAGLIA, JOHN BATTAGLIA and SALVATORE MANNINO, Jointly and Severally,** | |
| **Defendants.** | |

### NATURE OF THE ACTION

1.      Plaintiffs JESUS ACOSTA ARTICA ("Artica"), JUAN ZELAYA ("Zelaya"), NILSON CABALLERO ("Caballero"), JOSE RUIZ ("Ruiz"), ADONIS LOBO ("Lobo"), and ERNESTO GALEANO ("Galeano" and, collectively with Artica, Zelaya, Caballero, Ruiz and Lobo, the "Named Plaintiffs," and collectively with all the plaintiffs who have filed consent to sue forms in this action, the "Plaintiffs[1]"), allege, on behalf of themselves and all other similarly situated current and former employees of the defendants who elect to opt into this action (the "Collective Action Members") pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216(b), that they are entitled to: (i) unpaid wages from defendants J.B. CUSTOM MASONRY &

---

[1] In addition to the Named Plaintiffs, nineteen additional former employees of the Defendants have opted into this action, including: Lundy Hemmings; Peter Vitucci; Angel Ponce; Luis Martin; Hugo Rivas; Balkrishna Birsen; Marco Ruiz; Genaro Ruiz; Ector Adilio Ruiz; Milton Lobo; Osmin Lobo; Tony Lobo; Nelson Ruiz; Elyn Trochez; Renaldo Medina; Genrrin Medina; Jaime Rivas; R. Alejandro Cabrera; and Noslin Caballero.  The FLSA and NYLL claims asserted herein apply equally to the Named Plaintiffs and each of the Opt-in Plaintiffs.  The Named Plaintiffs and each of the Opt-in Plaintiffs are collectively referred to herein as the "Plaintiffs".

CONCRETE, INC. ("J.B. Custom Masonry"); J.B. HOLDING & PROPERTY CORP., sued here as J.B. BATTAGLIA, J.B. RESIDENTIAL, LLC, sued here as J.B. CONTRACTING, (collectively with J.B. Custom Masonry, J.B. Battaglia and J.B. Contracting, the "Corporate Defendants"), ALFREDO J. BATTAGLIA, JOHN BATTAGLIA and SALVATORE MANNINO (collectively, Alfredo J. Battaglia, John Battaglia, and Salvatore Mannino are referred to as the "Individual Defendants" and, collectively with the Corporate Defendants, the "Defendants"), for worked performed for which they received no compensation at all; (ii) unpaid wages for overtime work for which they did not receive overtime premium pay, as required by law, and (iii) liquidated damages, costs and attorneys fees pursuant to the FLSA, 29 U.S.C. §§201 *et seq.*

2.      The Named Plaintiffs further complain on behalf of themselves and on behalf of each of the Plaintiffs that they are entitled to wages from Defendants for work performed for which they received no compensation at all as well as for overtime work for which they did not receive overtime premium pay, as required by New York Labor Law §§ 650 *et seq.,* including Part 142, § 142-2.2 ("Overtime Rate") of Title 12 of the Official Compilation of Codes, Rules and Regulations promulgated by the Commissioner of Labor pursuant to the Minimum Wage Act (Article 19 of the New York State Labor Law), along with "spread-of-hour" pay for each shift worked in excess of 10 hours a day.  Plaintiffs further complain that Defendants took illegal payroll deductions from Plaintiffs and failed to pay Plaintiffs for certain waiting and travel time, and deducted wages from Plaintiffs' pay when Defendants were dissatisfied with their work, in violation of New York Labor Law.

3.      The Named Plaintiffs further complain on behalf of themselves and all Plaintiffs who performed work pursuant to public works contracts that they are entitled to unpaid

prevailing wages from Defendants for Defendants' willful failure to pay legally-mandated prevailing wage and supplemental benefits, including relevant overtime for employees employed pursuant to public works contracts, as required by New York Labor Law § 220 and applicable contracts entered into between Defendants and certain governmental entities including the City of New York's Department of Parks & Recreation.

4.      Plaintiffs further complain that they are entitled to compensation arising out of Defendants' retaliation against them, in violation of the FLSA and the New York Labor Law § 215, for attempting to protect their rights under the FLSA and New York Labor Law.

5.      Galeano further complains that Defendants committed assault and battery when Alfredo J. Battaglia and Salvatore Mannino punched, kicked, restrained and otherwise attacked him, and released a trained German Sheppard and instructed the dog to attack him, after Galeano went to the Defendants' offices to pick up his final paycheck, causing Galeano to suffer severe physical and emotional injuries.  Galeano further complains that he is entitled to compensation arising out of Defendants' retaliation against him in violation of the FLSA and the New York Labor Law.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§1331 and 1337, 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

7.      Venue is proper in this district pursuant to 28 U.S.C. §1391.

8.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C.

3

§§ 2201 and 2202.

## THE PARTIES

9.       The Plaintiffs are, at relevant times, adult individuals residing in Queens and Kings Counties, New York.  Certain of the Plaintiffs are currently living in Honduras, although they lived and worked in Brooklyn and Queens, New York when working for Defendants.

10.      Upon information and belief, J.B. Custom Masonry & Concrete, Inc. has been, at all relevant times, a domestic corporation with its principle place of business at 104-11 101st Ozone Park, NY 11417.

11.      Plaintiffs have performed construction-related work for J.B. Custom Masonry & Concrete, Inc., which served as Plaintiffs' employer.  Further, J.B. Custom Masonry & Concrete, Inc. and the other Corporate Defendants are all part of one uniform "enterprise" as defined by the FLSA and NYLL because the companies are under common ownership and control.  The Corporate Defendants share the same owners and utilize the same business locations to operate their common business enterprise.

12.      Upon information and belief, J.B. Battaglia and J.B. Contracting are assumed business names for the J.B. Custom Masonry, J.B. Custom Corp., J.B. Holding & Property Corp., and J.B. Residential, LLC.  At all relevant times, J.B. Battaglia, J.B. Contracting have been unregistered businesses with their principle place of business at 104-11 101st Ozone Park, NY 11417.

13.      Plaintiffs have performed construction work for J.B. Custom Masonry, J.B. Custom Corp., J.B. Holding & Property Corp., and J.B. Residential, LLC, which have all served as Plaintiffs' employer.  Further, J.B. Custom Masonry, J.B. Custom Corp., J.B. Holding &

Property Corp., and J.B. Residential, LLC, are all part of one uniform "enterprise" as defined by the FLSA and NYLL because the companies are under common ownership and control.  The Corporate Defendants shared the same owners and utilized the same business locations to operate their common business enterprise.

14.    Upon information and belief, Defendants Alfredo J. Battaglia and John Battaglia are officers, directors and/or managing agents of the Corporate Defendants, who reside in Howard Beach, New York and who participated in the day-to-day operations of the Corporate Defendants and acted intentionally and maliciously and are "employers" pursuant to the FLSA, 29 U.S.C. §203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, as well as the New York Labor Law Sec. 2 and the regulations thereunder and is jointly and severally liable with the Corporate Defendants.  The Individual Defendants directed and controlled Plaintiffs' work conditions, and they participated in the decision not to pay wages for all hours worked along with overtime and prevailing wages.

15.    Upon information and belief, Salvatore Mannino is an employee of the Corporate Defendants, whose address is unknown at this time, and who is a cousin of Defendant Alfredo J. Battaglia, with whom he participated in the attack of Ernesto Galeano, as set forth herein. Salvatore Mannino also participated in the day-to-day operations of the Corporate Defendants and acted intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.C. §203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, as well as the New York Labor Law Sec. 2 and the regulations thereunder, and he is jointly and severally liable with the Individual and Corporate Defendants.  Salvatore Mannino, together with Alfredo Battaglia, were responsible for calculating overtime and for ensuring that employees were paid properly on prevailing wage and private jobs.

## COLLECTIVE ACTION ALLEGATIONS

16.     Pursuant to 29 U.S.C. §207, Plaintiffs prosecute their FLSA claims as a collective action on behalf of all persons who performed work for Defendants since September 2, 2006 to the entry of judgment in this case (the "Collective Action Period") who opt into this lawsuit  (the "Collective Action Members").

17.     This collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are at least fifty (50) Collective Action Members who worked for Defendants during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.  There are currently twenty-five Collective Action Members who have joined this action.

18.     Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the fields of employment law and class action litigation.  Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

19.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them.  There will be no difficulty in the management of this action as a collective action.

20.     Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiffs and other Collective Action Members are:

    a.  whether the Defendants employed the Collective Action members within the meaning of the FLSA;

    b.  whether the Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and the Collective Action Members;

    c.  what proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

    d.  whether Defendants failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided by the FLSA in any area where Plaintiffs are employed, in violation of C.F.R. § 516.4;

    e.  whether Defendants failed to pay the Collective Action Members wages for all hours worked as well as overtime compensation for hours worked in excess of forty hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

    f.  whether Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA; and

    g.  whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interest, costs and disbursements and attorneys' fees.

21.     Plaintiffs know of no difficulty that will be encountered in the management of this

litigation that would preclude its maintenance as a collective action.

## NYLL ALLEGATIONS

22.     The New York Labor Law claims are brought on behalf of all Plaintiffs who have

opted into this action who were employed by Defendants at any time since September 2, 2003 to

the entry of judgment in this case (the "NYLL Period").

## STATEMENT OF FACTS

23.     At all relevant times, Defendants have been in the construction services business,

providing general contracting, machine rentals and roll-off containers and hauling services.

24.     According to Defendants' website at www.jbgeneralcontracting.com, "J.B.

Contracting is a second generation family owned business.  The company was started by John

Battaglia in 1973 and is now run by his son Alfredo J. Battaglia.  The company prides itself on a

tradition of excellence begun over 30 years ago.  All of our jobs are owner supervised, assuring

you of complete satisfaction."  The Defendants list a business address of 104-11 101st Street in

Ozone Park.

25.     Defendants employ at least twenty (20) employees at any one time in their

construction business and have had substantial employee turnover over the past six years.

26.     Plaintiffs have been employed by Defendants in positions as general laborers and

construction workers whereby they performed work as general laborers throughout the New

York City and Long Island regions.

27.     Plaintiffs were long-term employees of the Defendants and were typically

required to work six (6) days per week in excess of ten (10) hours per shift, and frequently much

more, for a total of sixty (60) to seventy (70) hours per week.  Plaintiffs were paid approximately

$9-20 per hour, based on a eight-hour work day, and were frequently required to work

substantial "off-the-clock" work for which they received no compensation whatsoever.  Plaintiffs were required to report to Defendants' shop by 6:45 am in order to receive their job assignments and to prepare the vans for the day's work.  Plaintiffs were not paid for the work performed at the shop or for traveling to and from the job locations.  Plaintiffs were required to perform additional "off-the-clock" work and received no overtime pay for hours worked in excess of forty hours a week, in violation of state and federal law.  Plaintiffs were not typically given a thirty (30) minute uninterrupted lunch break, notwithstanding the fact that a 30 minute lunch break was deducted from their pay.  In the event that Plaintiffs were late to work, Defendants would typically deduct $10-15 from Plaintiffs paycheck.  Plaintiffs received no "spread of hours" pay for shifts worked in excess of ten (10) hours per day and frequently received no compensation when waiting for materials, when on weather-related delays or if Defendants were dissatisfied with the work that Plaintiffs performed.

28.     Plaintiffs were frequently required to work significant "off the clock" work, often laboring for many hours each week for which they received no compensation.  Upon asking Defendants for an explanation for why Plaintiffs were only paid for eight hours a day, Alfredo Battaglia stated that "the extra time was for him," and that if Plaintiffs had a problem with that, they could quit working for Defendants.

29.     Upon information and belief, Defendants failed to pay time and one-half premium pay for overtime hours worked to all of their other laborers, construction workers and other similar employees, who were also required to work in excess of forty (40) hours per week.

30.     Throughout the Time Period, Plaintiffs were typically required to work well in excess of forty hours per week and Defendants' failed to pay Plaintiffs' overtime compensation for hours worked in excess of forty hours per week.   Defendants also failed to pay Plaintiffs for

all hours that they worked, failing to pay them any compensation at all for certain work performed during the Time Period.

31.     Throughout the time period, Defendants obtained government contracts whereby they were required to pay their employees working on such contracts prevailing wages. Throughout the time period, Plaintiffs frequently did not receive the statutorily-required prevailing wages plus supplemental benefits, as required by state and federal law.

32.     Additionally, although Plaintiffs were providing labor to Defendants on public works contracts, including work performed on City of New York roads and sidewalks for which certain plaintiffs were required to sign Prevailing Wage forms, Defendants consistently failed to compensate them for all hours worked at the base and overtime rates specified in the applicable prevailing wage regulations.

33.     Plaintiffs' work was performed in the normal course of the Defendants' business and was integrated into the business of Defendants.

34.     The work performed by Plaintiffs required little skill and no capital investment.

35.     Plaintiffs typically worked in excess of 40 hours a week, yet the Defendants willfully failed to pay Plaintiffs' overtime compensation of one and one-half times their regular hourly rate in violation of the FLSA, the New York Labor Law and the supporting New York State Department of Labor regulations.

36.     Defendants refused to pay the Plaintiffs who performed work on public works projects, including but not limited to work performed on Brooklyn sidewalks for the New York City Department of Parks & Recreation, the required prevailing wage plus supplemental benefits when employed on public works contracts, in violation of New York law and in breach of Defendants' contract with the City of New York.

37.     Throughout all relevant time periods, the Defendants failed to maintain accurate and sufficient time records accurately recording the number of hours worked by the Plaintiffs each day.

38.     Upon information and belief, throughout the majority of Plaintiffs' employment with Defendants, Defendants failed to post or keep posted a notice explaining the minimum wage and overtime pay rights provided by the FLSA, requiring that the FLSA statute of limitations be tolled during the period of time in which notice was not posted.

**FIRST CLAIM FOR RELIEF**
**FAIR LABOR STANDARDS ACT**

39.     Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

40.     At all relevant times Defendants have been and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

41.     At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs within the meaning of the FLSA.

42.     Upon information and belief, at all relevant times, the Corporate Defendants have had gross revenues in excess of $500,000.00.

43.     Plaintiffs have provided their consent in writing to be a party to this action, pursuant to 29 U.S.C. §216(b).

44.     At all relevant times, the Defendants had a policy and practice of refusing to pay wages for all hours worked, requiring Plaintiffs to work substantial unpaid "off-the-clock" hours each week.  Further, Defendants refused to pay overtime compensation to its employees for their hours worked in excess of forty hours per workweek.

45.     As a result of the Defendants' willful failure to compensate Plaintiffs at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, the Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

46.     As a result of the Defendants' failure to properly record, report, credit and/or compensate Plaintiffs for all hours that they worked, the Defendants have failed to make, keep and preserve records with respect to each of the Plaintiffs sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

47.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

48.     Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants their unpaid wages, their unpaid overtime compensation, an additional amount equal as liquidated damages, additional liquidated damages for unreasonably delayed payment of wages, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF
## NEW YORK LABOR LAW-OVERTIME

49.     Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

50.     At all relevant times, Plaintiffs were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

51.     At all relevant times, Defendants failed to keep and maintain a proper record of the number of hours that Plaintiffs worked each week as required by New York Labor Law.

52.     Defendants willfully violated Plaintiffs rights by failing to pay them compensation for all hours worked, requiring Plaintiffs to perform substantial "off the clock" work each day, while failing to pay Plaintiffs overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, and an additional hour of pay for each hour worked in excess of ten hours in one day, in violation of the New York Labor Law and its regulations.  Defendants further violated Plaintiffs' rights by deducting wages as a penalty in the event an employee was late or absent, in the event Plaintiffs were required to wait on materials, weather or equipment or if Defendants were dissatisfied with Plaintiffs' work.

53.     As a result of the Defendants' failure to record, report, credit and/or compensate Plaintiffs for all hours worked, the Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the New York Labor Law.

54.     The foregoing conduct, as alleged, constitutes a willful violation of the New York Labor Law.

55.     The Defendants' New York Labor Law violations have caused Plaintiffs irreparable harm for which there is no adequate remedy at law.  Due to the Defendants' New York Labor Law violations, Plaintiffs are entitled to recover from Defendants their unpaid wages for all "off the clock" work, unpaid overtime compensation, damages for unreasonably delayed payment of wages, damages for all illegal payroll deductions, spread-of-hours pay for each shift in excess of ten hours, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to New York Labor Law § 663(1) et al and § 196-d.

**THIRD CLAIM FOR RELIEF**
**NEW YORK LABOR LAW – FAILURE TO PAY WAGES**

56.     Plaintiffs repeat, reallege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

57.     Defendants failed to pay Plaintiffs at the agreed upon regular and overtime compensation rates, and failed to pay Plaintiffs the benefits and wage supplements owed to them.

58.     Defendants' failure to pay Plaintiffs at the agreed-upon rates, including all prevailing wages and supplements, constitutes a violation of, inter alia, New York Labor Law §§191, 198 and 220.

59.     At all relevant times, the Defendants had a policy and practice of refusing to pay their employees prevailing wages for all hours worked on city and government contracts, as well as one and a half times the prevailing wage for hours worked on city and government contracts in excess of eight hours per day and on Saturdays and Sundays.

60.     Due to Defendants' New York Labor Law violations, Plaintiffs are entitled to recover from Defendants their unpaid wages, unpaid prevailing wages, unpaid benefits, liquidated damages, interest, reasonable attorneys' fees, and the costs and disbursements of this action.

**FOURTH CLAIM FOR RELIEF**
**<u>BREACH OF CONTRACT</u>**

61.     Plaintiffs repeat, reallege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

62.     Defendants entered into public works contract with public entities, including but not limited to a New York City Department of Parks & Recreation contract to perform sidewalk renovation work within the Borough of  Brooklyn.

63.     As a result, Defendants were obligated to pay prevailing wages, including

14

supplementary benefits, to the Plaintiffs who performed services for these contracts, as well as overtime bonuses for hours beyond forty hours or outside regular work hours.

64.     Plaintiffs performed work on public works projects for Defendants that required the payment of a mason's wage of approximately $74.11 per hour, including supplementary benefits, and daily overtime at rates of approximately $111.16 per hour.  Plaintiffs were typically actually paid less than $20 per hour in cash, based on an 8 hour day, with no overtime for their work on prevailing wage jobs.  Plaintiffs were required to sign false affidavits stating that they had been paid correctly and to endorse payroll checks back to the Company.

65.     Plaintiffs were assigned to work on these public works contracts.

66.     Defendants failed to pay Plaintiffs the applicable prevailing wage, including the appropriate premiums specified in the regulations.

67.     Defendants forced Plaintiffs to sign affidavits stating that they received the applicable prevailing wage, when in actuality they had not.

68.     Defendants forced Plaintiffs to endorse the back of payroll checks issued for work performed on public works projects and to immediately return the checks to the Defendants. Plaintiffs were typically paid cash at their normal hourly rates for public works projects, notwithstanding affidavits stating that they had received the prevailing wages.

69.     Defendants' failure to pay the prevailing wage to Plaintiffs constituted a material breach of their public works contracts.

70.     Plaintiffs who performed work on the prevailing wage projects[2] were third party beneficiaries of the prevailing wage requirements of these public contracts.

71.     As a result, Plaintiffs have been damaged, and are entitled to recover as third-

---

[2] Plaintiffs who performed work on Prevailing Wage Contracts for Defendants and who did not receive the applicable prevailing wage payments include, but are not limited to: Jose Ruiz; Peter Vitucci; Luis Martin; Hugo Rivas; Jamie Rivas; Alejandro Cabrera; Ernesto Galeano; Angel Ponce; Nilson Caballero; and Noslin Lobo.

party beneficiaries from Defendants their unpaid wages, prevailing wages, supplemental benefits, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of the action.

## FIFTH CLAIM FOR RELIEF
## NEW YORK LABOR LAW – DISCRIMINATION AND RETALIATION

72.     Plaintiff Galeano repeats and re-alleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

73.     Galeano worked for Defendants from 2004 through approximately August 15, 2009.

74.     Throughout the time Galeano worked as a general laborer for Defendants, he was paid on an hourly basis with no overtime or spread-of-hour pay.  Galeano was typically required to work at least six (6) days per week from 6:45 a.m. to no earlier than 4:45 p.m., and frequently much later.  Galeano was paid based on an 8 hour work day and was required to perform approximately two "off the clock" hours of work each day.

75.     Defendants failed to provide a breakdown as to the pay rate or deductions withheld, and defendants frequently deducted wages from my checks without explanation.  In the event that Defendants thought that their employees made a mistake, or were late to work, Defendants would deduct wages as a penalty.

76.      In the event that Galeano or any other employee complained about Defendants' payment practices, Alfredo J. Battaglia would curse at them and tell Galeano that he could quit.

77.     In 2005, Galeano sustained an injury while on the job, causing him to lose a portion of his large finger while working for Defendants.  Defendants attempted to cover up the accident such that Galeano would not claim against Defendants workers' compensation policy.

Alfredo J. Battaglia claimed that Galeano did not work for him, and he told Galeano that he had no right to recover for the lost finger.

78.   Galeano continued to work for Defendants until August 15, 2009, when he was forced to quit due to Defendants' illegal pay practices and poor working conditions.  During the summer of 2009, Galeano received a small raise based on the fact that he was performing work on a public works project.  Rather than pay the hourly mason's rate of approximately $74.11 per hour, Defendants agreed to pay Galeano $18.75 per hour for eight hours a day with no overtime for his work performed on prevailing wage projects.  At the time that he was forced to quit due to Defendants' illegal payroll practices, Galeano was owed no less than $900 for work performed during the prior week (not including the unpaid prevailing wages and overtime).

79.   When Galeano went to Defendants' office on August 18, 2009 to collect his final paycheck, Alfredo J. Battaglia told Galeano to "get the F-ck out of here."  While Galeano requested that Defendants pay him his final paycheck, as required by law, Alfredo J. Battaglia told him that if he didn't work, he wouldn't get paid and told him to leave.   Galeano complained that Defendants had violated his right to receive his final paycheck and in retaliation for trying to enforce his right to payment, Galeano was subjected to a brutal physical attack.

80.   Alfredo J. Battaglia had previously told Galeano and his co-workers that his guard dog was trained to attack Hispanics.  While the guard dog was tied up in the back of the office, Alfredo J. Battaglia went to the back to release to dog while Galeano was trying to obtain his final paycheck.  Salvatore Mannino started to hit, kick and attack Galeano while Alfredo J. Battaglia released Spike, his German Sheppard.  Once Alfredo Battaglia released Spike and instructed Spike to attack Galeano, Alfredo Battaglia joined in hitting and kicking Galeano. Prior to the August 18, 2009 attack, Spike had previously bitten at least five other employees

along with a 14 year old girl, and the dog had been specifically trained to follow Alfredo Battaglia's commands as a guard dog.

81.     Defendants' dog attacked Galeano, biting his arm, stomach and leg.  While Galeano attempted to fend-off the dog, Alfredo J. Battaglia and his cousin, Salvatore Mannino, kicked Galeano in the face and beat him up.  While Galeano was wearing shorts and sandles, Alfredo Battaglia and Salvatore Mannino were both wearing heavy work boots.  During the attack, Galeano was thrown against a glass room divider, which shattered, and Galeano fell down to the ground.  After Galeano fell down, Alfredo J. Battaglia and Salvatore Mannino continued to kick him.  Salvatore Mannino and Alfredo Battaglia both instigated the attack, striking Galeano and causing him to suffer severe personal injury and mental distress.

82.     Eventually a woman across the street started screaming, as she was witnessing Defendants' attack Galeano.  Alfredo and Salvatore stopped their attack and Galeano was transported to Jamaica Hospital by ambulance.

83.     The district attorney is currently pursuing assault charges against Alfredo J. Battaglia and Salvatore Mannino arising out of this attack, which occurred simply because Galeano attempted to pick up his final paycheck.  Defendants' retaliation has caused Galeano to suffer financial, physical and mental damages and injuries, in violation of New York Labor Law § 215.

84.     New York Labor Law § 215 states:

§ 215.  Penalties and civil action; employer who penalizes employees because of complaints of employer violations:

> 1. No employer or his agent, or the officer or agent of any corporation, shall discharge, penalize, or in any other manner discriminate against any employee because such employee has made a complaint to his employer, or to the commissioner or his

authorized representative, that the employer has violated any provision of this chapter, or because such employee has caused to be instituted a proceeding under or related to this chapter, or because such employee has testified or is about to testify in an investigation or proceeding under this chapter. If after investigation the commissioner finds that an employer has violated any provision of this section, the commissioner may, by an order which shall describe particularly the nature of the violation, assess the employer a civil penalty of not less than two hundred nor more than two thousand dollars. Notwithstanding the provisions of section two hundred thirteen of this chapter, the penalties set forth in this section shall be the exclusive remedies available for violations of this section.

2. An employee may bring a civil action in a court of competent jurisdiction against any employer or persons alleged to have violated the provisions of this section. The court shall have jurisdiction to restrain violations of this section, within two years after such violation, and to order all appropriate relief, including rehiring or reinstatement of the employee to his former position with restoration of seniority, payment of lost compensation, damages, and reasonable attorneys' fees.

85.     When Plaintiff Galeano attempted to collect his final paycheck, Defendants refused to pay him, in violation of the New York Labor Law.   Thereafter, when Galeano complained to Defendants and tried to enforce his right to receive his final paycheck, Defendants subjected him to a brutal physical attack, causing him to suffer physical and mental injuries as well as lost wages, economic and non-economic damages.

86.     For the foregoing reasons, Plaintiff Galeano is entitled to recover from Defendants his unpaid wages, unpaid overtime compensation, damages for unreasonably delayed payment of wages, back pay, front pay, rehiring and/or reinstatement, economic and non-economic damages arising out of physical and emotional injuries, punitive damages to punish Defendants, interest, and reasonable attorneys' fees, costs and disbursements of the action pursuant to New York Labor Law § 663(1).

## SIXTH CLAIM FOR RELIEF
## ASSAULT & BATTERY

87.     Plaintiffs repeat and re-allege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

88.     As a result of the acts set forth above, Salvatore Mannino and Alfredo Battaglia's August 18, 2009 attack caused Galeano to be placed in great fear for his life and to suffer severe physical and psychological injury, abuse and agony, which injury is continuing today.

89.     Defendants' acts were willful, intentional, wanton, malicious and oppressive.

90.     Defendants' attack was performed in an effort to intimidate and humiliate Galeano, and was performed in direct retaliation for his efforts to collect his final paycheck, as required to be provided by Defendants under the law.

91.     Alfredo J. Battaglia and Salvatore Mannino's intentional acts in releasing Defendants' guard dog and having the dog attack Galeano, as well as their action in hitting, pushing, kicking and otherwise attacking Galeano constitutes assault and battery, actionable under the laws of New York.

92.     Alfredo J. Battaglia and Salvatore Mannino's actions in attacking Galeano were performed in the course of Defendants' businesses, and the attacks were ratified and endorsed by the Corporate Defendants.

93.     The police report generated in response to Defendants' attack on Galeano states:

> At T/P/O C/V present at 106 PCT states he went to above location to request pay from employer (PERP#1), when PERP#1 and PERP #2 told C/V "Get the fuck out of here" and began pushing C/V towards exit door.  C/V states PERP#1 went into lot to get black dog and let dog loose towards C/V.  Dog bit C/V on right hand and wrist, at which point C/V states PERP #1 did kick C/V in left eye causing redness and swelling.  Dog also bit C/V on torso and left thigh.  C/V states as he tried to hold dog down, PERP #1 and PERP #2 kept kicking and punching C/V causing pain throughout

body.  C/V states PERP#1 also slammed C/V into an office window causing C/V pain in his neck.  C/V was removed to Jamaica Hospital via ambulance…

94.     The police report names Ernesto Galeano as the victim, and Alfredo J. Battaglia as the PERP#1.  The incident is stated to have taken place at J.B. Construction, located at 104-11 101 Street.  The "action of victim prior to incident" section of the police report states "went to get pay from employer."

95.     For the foregoing reasons, Plaintiff Galeano is entitled to recover from Defendants economic and non-economic damages arising out of his lost wages, reimbursement for medical expenses, compensation for physical injuries and severe emotional distress, compensatory and punitive damages arising out of Defendants' Alfredo Battaglia and Salvatore Mannino's brutal attack.

## SEVENTH CLAIM FOR RELIEF
## NEW YORK LABOR LAW – DISCRIMINATION AND RETALIATION

96.     Plaintiffs repeat, reallege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

97.     Following the filing of the this lawsuit, Defendant Alfredo Battaglia has called certain Plaintiffs and has harassed and intimidated them, causing at least one Plaintiff, Jesus Acosta Artica, to relocate to a new apartment after Alfredo Battaglia told the first Named Plaintiff that he knew where he lived.  This threat came after Alfredo Battaglia and Salvatore Mannino attacked Ernesto Galeano, and caused Jesus Acosta Artica and all other Named Plaintiffs to fear for their physical safety.

98.     Alfredo Battaglia made other threats and placed harassing phone calls to Plaintiffs, including several harassing phone calls to Plaintiffs Jaime Rivas and Alejandro Cabrera, which were placed after the two men had joined this lawsuit.  Defendant Battaglia

addressed the Plaintiffs' complaints and participation in the present action by stating, among

other things, the following:

> "You have no ... and no balls. Because if you had a problem with
> me you would have came to see me to talk about it."  Battaglia
> continues, "...eight years every day, you never missed one day.
> Now you think you're all hot shit. You ain't..."

> With regard to the Plaintiffs quitting because of the Defendants'
> unlawful pay practices, Defendant Battaglia commented, "I don't
> need your father. I don't need your scumbag brother. I don't need
> none of you."

> Concerning the unlawful pay practices, Plaintiff Jaime Rivas
> commented, "You – three years you pay me $200.00 a day and the
> last year you pay me $180.00.  What is that? Defendant Battaglia
> responded by stating, "Yeah, that's more than you're worth. It's
> more than what you're worth." Battaglia continued, "You're worth
> zero."

99.     Defendant Alfredo Battaglia has threatened Plaintiffs, telling them that he "knows

people" and he has repeatedly told Jaime Rivas to "watch your back."  Alfredo Battaglia's

threats came after Plaintiffs Jaime Rivas and Alejandro Cabrera were forced to quit because of

Defendants' illegal pay practices and subsequently joined the present action to enforce their

rights under state and federal law.  Plaintiffs did not receive threatening phone calls from

Defendants until they joined the present action.

100.    Alfredo Battaglia attended two days of Plaintiffs' depositions.  Prior to the start of

the first deposition on April 4, 2011, before his attorney was in the room, Alfredo Battaglia

attempted to intimidate Noslin Caballero Lobo and Battaglia called him "trash" both before and

after the deposition.  During Plaintiffs' depositions, Alfredo Battaglia would intently write down

Plaintiffs' addresses along with their current employer.  After writing down this information,

Alfredo Battaglia appeared to send a text message, thought to contain Plaintiffs' addresses,

causing Plaintiffs to fear further retaliation.  Upon information and belief, Alfredo Battaglia's actions during depositions were intended to intimidate and frighten Plaintiffs, in retaliation for pursuing the instant lawsuit.

101.    Defendant Alfredo Battaglia's ongoing threats and harassment constitutes retaliation, in violation of New York Labor Law § 215, and has caused the Named Plaintiffs, Jaime Rivas, Alejandro Cabrera along with the Opt- in Plaintiffs to fear for their physical safety.

102.    Defendants' New York Labor Law § 215 retaliation has caused Plaintiffs to suffer financial, physical and emotional damages and injuries.

## TENTH CLAIM FOR RELIEF
## FLSA – RETALIATION

103.    Plaintiffs repeat, reallege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

104.    Following the filing of this lawsuit, Defendant Alfredo Battaglia has called certain Plaintiffs and Class and Collective Action Members and harassed and intimidated them, causing at least one Plaintiff, Jesus Acosta Artica, to relocate to a new apartment after Alfredo Battaglia told him that "he knew where he lived," for fear of physical injury.

105.    In addition to the harassment and discriminatory comments made   by   Defendant Alfredo Battaglia, in his phone calls to Plaintiff Jaime Rivas, Defendant Battaglia addressed the Plaintiffs' complaints and participation in the present action in stating, among other things, the following:

> "You have no ... and no balls. Because if you had a problem with me you would have came to see me to talk about it."  Battaglia continues, "...eight years every day, you never missed one day. Now you think you're all hot shit. You ain't..."

> With regard to the Plaintiffs quitting because of the Defendants' unlawful pay practices, Defendant Battaglia commented, "I don't

need your father. I don't need your scumbag brother. I don't need none of you."

Concerning the unlawful pay practices, Plaintiff Jaime Rivas commented, "You – three years you pay me $200.00 a day and the last year you pay me $180.00.  What is that? Defendant Battaglia responded by stating, "Yeah, that's more than you're worth. It's more than what you're worth." Battaglia continued, "You're worth zero."

106.    Defendant Alfredo Battaglia has threatened Plaintiffs, telling them that he "knows people" and he has repeatedly told Plaintiffs to "watch your back."  Defendant Battaglia's threats came after Plaintiffs Jaime Rivas and Alejandro Cabrera were forced to quit because of Defendants' illegal pay practices and subsequently joined the present action to enforce their rights under state and federal law.  Plaintiffs did not receive threatening phone calls from Defendants until they joined the present action.

107.    Defendant Alfredo Battaglia has threatened Plaintiffs, telling them that he "knows people" and he has repeatedly told Plaintiffs to "watch your back."  Alfredo Battaglia attended two days of Plaintiffs' depositions.  Prior to the start of the first deposition on April 4, 2011, before his attorney was in the room, Alfredo Battaglia attempted to intimidate Noslin Caballero Lobo and Battaglia called him "trash" both before the deposition began and then again after the deposition had ended.  During Plaintiffs' depositions, Alfredo Battaglia would intently write down Plaintiffs' addresses along with names of their current employers.  After writing down this information, Alfredo Battaglia appeared to send a text message, thought to contain Plaintiffs' addresses, causing Plaintiffs to fear further retaliation.  Upon information and belief, Alfredo Battaglia's actions during depositions were intended to intimidate and frighten Plaintiffs, in retaliation for pursuing the instant lawsuit.

108.    Defendant Alfredo Battaglia's ongoing threats and harassment constitutes retaliation, in violation of the FLSA, and has caused the Named Plaintiffs, Jaime Rivas, Alejandro Cabrera and the Opt-in Plaintiffs to fear for their physical safety.

109.    Defendants' retaliation has caused Plaintiffs to suffer financial, physical and emotional damages and injuries.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court grant the following relief:

a.    An order tolling the statute of limitations;

b.    Designation of this action as a collective action on behalf of the Plaintiffs and appointing the Named Plaintiffs and their counsel to represent the Collective Action members;

c.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

d.    An injunction against the  Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

e.    An award of wages for all "off-the-clock" hours worked, as well as overtime compensation for work performed over forty hours per week pursuant to the FLSA and the New York Labor Law;

f.    Reimbursement for all illegal payroll deductions pursuant to New York Labor Law;

g.    An award of liquidated damages equal to all unpaid wages and overtime owed

pursuant to the FLSA;

h.    An award of liquidated and/or punitive damages as a result of the Defendants'
      willful failure to pay for all hours worked as well as overtime compensation
      pursuant to 29 U.S.C. § 216 and the New York Labor Law;

i.    An award of damages arising out of the non-payment of wages and overtime;

j.    An award of compensatory damages for failure to pay the required prevailing
      wage and supplemental benefits, including relevant daily and weekly overtime;

k.    An award of damages arising out of the non-payment of "spread-of-hour" pay;

l.    An award of compensatory, economic, non-economic and punitive damages as to
      Galeano arising out of Defendants' unlawful retaliation against him, along with
      payment of his final paycheck;

m.    An award of compensatory, economic, non-economic and punitive damages as to
      the Named Plaintiffs, Jamie Rivas, Alejandro Cabrera, Noslin Caballero Lobo and
      the Opt-in Plaintiffs arising out of Defendants' unlawful retaliation against them
      for filing and/or participating in the instant lawsuit pursuant to the FLSA and
      NYLL;

n.    An award of compensatory, economic, non-economic and punitive damages as to
      Galeano arising out of Defendant Salvatore Mannino and Alfredo Battaglia's
      unlawful assault and battery against him, along with the attack of Alfredo
      Battaglia's German Sheppard;

o.    An award of back wages and future lost wages arising out of Defendants' illegal
      retaliation and assault and battery as against Galeano;

p.    An award of back wages and future lost wages arising out of Defendants' illegal

26

retaliation against the Named Plaintiffs, Jamie Rivas, Alejandro Cabrera, Noslin Caballero Lobo and the Opt-in Plaintiffs;

q.   An award of prejudgment and post-judgment interest;

r.   An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

s.   Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
       April 13, 2011

PELTON & ASSOCIATES PC


By:  */s/ Brent E. Pelton*
     Brent E. Pelton (BP 1055)
Attorney for Plaintiffs, Individually, and
on Behalf of All Other Persons Similarly Situated
111 Broadway, Suite 901
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800