## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JESUS ACOSTA ARTICA, JUAN ZELAYA, NILSON CABALLERO, JOSE RUIZ, ADONIS LOBO and ERNESTO GALEANO, Individually and on Behalf of all other Employees Similarly Situated,** | **ECF**<br><br>**09-CV-3796 (CBA)(RER)** |
| **Plaintiff,** | |
| **-against-** | |
| **J.B. CUSTOM MASONRY & CONCRETE, INC., J.B. BATTAGLIA, J.B. CONTRACTING, ALFREDO J. BATTAGLIA, JOHN BATTAGLIA and SALVATORE MANNINO, Jointly and Severally,** | |
| **Defendants.** | |

| | |
|---|---|
| **JESUS ACOSTA ARTICA, JUAN ZELAYA, NILSON CABALLERO, JOSE RUIZ, ADONIS LOBO, ERNESTO GALEANO, HUGO RIVAS and JAIME RIVAS, Individually and on Behalf of all other Employees Similarly Situated,** | **11-CV-0842 (CBA)(RER)** |
| **Plaintiff,** | |
| **-against-** | |
| **J.B. CUSTOM MASONRY & CONCRETE, INC., J.B. CUSTOM CORP., J.B. HOLDING & PROPERTY CORP., J.B. RESIDENTIAL, LLC, ALFREDO J. BATTAGLIA, JOHN BATTAGLIA, JOSEPHINE BATTAGLIA and SALVATORE MANNINO, Jointly and Severally,** | |
| **Defendants.** | |

## PLAINTIFFS' PRETRIAL MEMORANDUM OF LAW

Brent E. Pelton [BP-1055]
Pelton & Associates, PC
111 Broadway, Suite 901
New York, New York 10006
(212) 385-9700
pelton@peltonlaw.com

Dorothy A. O'Brien
Dorothy A. O'Brien Attorney & Counselor
at Law PLC
2322 East Kimberly Rd, Suite 100E
Davenport, IA 52807
Telephone: (563) 355-6060
Facsimile:  (563) 355-6666

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ……………………………………………….................3

ARGUMENT   ……………………………………………………………………………5

I.      PLAINTIFFS ARE ENTITLED TO UNPAID WAGES AND OVERTIME
        UNDER FLSA AND NEW YORK LABOR LAW…………………………………...5

        A.  Plaintiffs are entitled to Overtime Compensation Under
            the FLSA and New York Labor Law………………………………………….6

        B.  Plaintiffs are entitled to spread-of-hours compensation………………………8

        C.  Plaintiffs are entitled to compensation for all hours worked,
            including "prep" and "travel" time……………………………………………9

        D.  Plaintiffs are entitled to prevailing wages at contractually required
            rates for work performed throughout the statutory period…………………...12

        E.  In the absence of accurate time-records, Plaintiffs may satisfy their
            burden by providing reasonable estimates of the amount of work
            performed and compensation received ………………………………………14

II.     DEFENDANTS' VIOLATIONS OF FLSA AND NEW YORK LABOR
        LAW WERE WILLFUL AND WITHOUT A GOOD-FAITH BASIS…...……………16

        A.  Defendants' conduct was willful……………………………………………16

        B.  Defendants are unable to prove a good-faith basis and reasonable belief that
            their conduct complied with the FLSA………………………………………17

        C.  New York Labor Law Damages………………………………………………18

III.    PLAINTIFFS ARE ENTITLED TO INTEREST, COSTS, AND FEES………………..18

IV.     MANY PLAINTIFFS ARE ENTITLED TO COMPENSATION BECAUSE
        DEFENDANTS RETALIATED AGAINST THEM FOR PARTICIPATING
        IN THE PRESENT ACTION ……………………………………………………………19

V.      PLAINTIFF ERNESTO GALEANO IS ENTITLED TO DAMAGES
        FOR THE PHYSICAL ATTACK BY DEFENDANTS ALFREDO

## TABLE OF CONTENTS

J. BATTAGLIA AND SALVATORE MANNINO AND
DEFENDANTS' DOG…....……………………………………………………………26

VI.    ALL DEFENDANTS WERE PLAINTIFFS' EMPLOYERS AND THUS
JOINTLY AND INDIVIDUALLY LIABLE FOR UNPAID WAGES …………………29

A.  All Corporate Defendants Comprise a Single-Employer Enterprise…….30

CONCLUSION………………………………………………………………………………..31

Plaintiffs respectfully submit this Pretrial Memorandum of Law in accordance with the pretrial practice and procedures of this Court.

## PRELIMINARY STATEMENT

Named Plaintiffs Jesus Acosta Artica, Juan Zelaya, Nilson Caballero, Jose Ruiz, Adonis Lobo, Ernesto Galeano, Hugo Rivas and Jaime Rivas along with seventeen opt-in plaintiffs[1] (collectively, the "Plaintiffs") brought this civil action against their former employers J.B. Custom Masonry & Concrete, Inc., J.B. Custom Corp., J.B. Holding & Property Corp., J.B. Residential, LLC (collectively, "J.B. Contracting" or, the "Corporate Defendants"), Alfredo J. Battaglia ("A. Battaglia"), Josephine Battaglia ("J. Battaglia"), John Battaglia and Salvatore Mannino ("Mannino" and together with A. Battaglia, J. Battaglia and John Battaglia, the "Individual Defendants" and, collectively with the Corporate Defendants, the "Defendants") to recover for unpaid regular wages, unpaid overtime wages, unpaid prevailing wages, retaliation, assault and battery and negligence.[2]

Plaintiffs are former long-term employees of Defendants whereby they worked in manual labor construction-related positions that are properly classified as "non-exempt" under the FLSA. Though Plaintiffs worked long hours over many years and were integral to the operation of Defendants' construction business, Defendants engaged in systemic, willful and long-term violation of federal and state laws at the expense of Plaintiffs and their families.

---

[1] The seventeen opt-in Plaintiffs are: Lundy Hemmings; Peter Vitucci; Angel Ponce; Luis Martin; Balkrishna Birsen; Marco Ruiz; Genaro Ruiz; Ector Adilio Ruiz; Milton Lobo; Osmin Lobo; Tony Lobo; Nelson Ruiz; Elyn Trochez; Renaldo Medina; Genrrin Medina; R. Alejandro Cabrera; and Noslin Caballero.
[2] Plaintiff Ernesto Galeano alleges claims of assault and battery arising out of the physical attack from Defendants Alfredo J. Battaglia and Salvatore Mannino, and a claim of negligence related to the attack and resulting dog bites from Defendant Alfredo J. Battaglia's dog "Spike."

According to Defendant's website, http://www.jbgeneralcontracting.com, "J.B. Contracting is a second generation family owned business.  The company was started in 1973.[3] The company prides itself on a tradition of excellence begun over 30 years ago.  All of our jobs are owner supervised, assuring you of complete satisfaction.   The company has grown successfully over the years as masonry contractors and in equipment and machine rental businesses.  We rent dumpster and roll off containers of all sizes and do a good business.  This is due to the many referrals and recommendations from our satisfied customers."

Defendants' website further depicts seven "major services" that Defendants' offer, including: (1) General Contracting; (2) Dumpster Rental; (3) Machine Rental; (4) Snow Removal; (5) Violations Removal; (6) Garbage Removal; and (7) Trucking and Hauling.  All of Defendants' services are listed with a business address of 104-11 101st Street, Ozone Park, New York 11417.

In addition to their numerous private and commercial projects at any one time, the evidence will show that J.B. obtained a public works contract with the New York City Department of Parks and Recreation valued between approximately $600,000 and $1 million for approximately one year of work between 2009 and 2010.  Despite the large contracts obtained by Defendants in their "highly successful" business, the evidence will show that Defendants' efforts to make their contracting business more profitable came at the cost of underpaying their construction laborers.

The evidence will also show that Defendants employ as many as twenty-five (25) employees at any one time in their contracting and construction business.  Plaintiffs were typically required to work well in excess of forty (40) hours each week including shifts in excess

---

[3]  Defendants' website has recently been changed, although it previously stated, among other things, that "The Company was started by John Battaglia in 1973 and is now run by his son Joseph Battaglia."

of ten (10) hours in a day, yet Defendants failed to pay them overtime compensation of time and one-half their regular hourly rate, or New York spread-of-hours compensation for shifts lasting more than ten hours, as mandated by law.

The principal issue in dispute in this case is what hours Plaintiffs worked.  Defendants contend that Plaintiffs were only "working" while at the job sites and that a typical work day was "eight hours," and that Defendants' business is seasonal and therefore Defendants only operated with a "skeleton crew" during the winter months.  In light of Plaintiffs' testimony and the fact that Defendants have failed to create or preserve records of the hours worked by Plaintiffs, in violation of state and federal law, Defendants will be unable to meet their burden of proof on this issue.

## **ARGUMENT**

### I.   **PLAINTIFFS ARE ENTITLED TO UNPAID WAGES AND OVERTIME UNDER FLSA AND NEW YORK LABOR LAW**

Defendants owe Plaintiffs significant unpaid wages, overtime and liquidated damages due to J.B.'s underpayment of wages throughout their employment.  Determination of whether any underpayment occurred, and thus calculation of the amounts owed, depends on three interrelated findings: (1) the total hours worked each week; (2) the total wages paid; and (3) the hourly minimum wage and overtime pay required by federal and state law. *See, e.g.*, *Padilla v. Manlapaz*, 643 F. Supp. 2d 302, 312 (E.D.N.Y. 2009); *Yu G. Ke v. Saigon Grill, Inc.*, 595 F.Supp.2d 240, 255 (S.D.N.Y. 2008); *Heng Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048, 2007 U.S. Dist. LEXIS 7770 (S.D.N.Y. Feb 1, 2007).

Regardless of how workers are paid, federal and state law look to a worker's "regular rate of pay" on an hourly basis for purposes of calculating the minimum and overtime wages due. 29 C.F.R. § 778-109; 12 N.Y.C.R.R. § 137-1.3.  The regular rate of pay is the typical rate paid for a

worker's non-overtime hours each week.  The regular rate is typically calculated by totaling the worker's remuneration for the week and dividing by the total hours worked. 29 C.F.R. § 778-109; 12 N.Y.C.R.R. § 137-3.5.  Overtime premium pay, for hours in excess of forty (40) in a week, is calculated at 1 ½ times a worker's regular rate, when it exceeds the minimum wage, or the applicable minimum wage, when the regular rate is illegally low. 29 U.S.C. § 207; 12 N.Y.C.R.R. § 137-1.3.  In addition to the unpaid overtime wages, Plaintiffs seek to recover unpaid regular wages for hours worked "off-the-clock" for which they were not compensated at all.  For these "off-the-clock" hours, Plaintiffs are owed minimum and overtime wages, assuming Plaintiffs' typical work weeks of approximately 60 hours.  These key issues are explored in detail below.

> **A.      Plaintiffs are entitled to Overtime Compensation Under the FLSA and New York Labor Law.**

The Defendants were all persons "acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  When considering who is or is not an "employer," Second Circuit courts have held that "the overarching concern is whether the alleged employer possessed the power to control the workers in question, with an eye to the economic reality presented by the facts of each case." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (citations and internal quotation marks omitted); *see also Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 264-266, n. 48 (S.D.N.Y. 2008) (test for whether an individual constitutes an "employer" under New York law parallels the same test pursuant to FLSA).  Here, the Individual Defendants each possessed the power to control the Plaintiffs. Defendants A. Battaglia and J. Battaglia are co-owners of the J.B. Construction enterprise, and accordingly acted directly in the interest of the enterprise that employed all Plaintiffs. *See* 29 U.S.C. § 203(d).  Furthermore, Individual Defendants Mannino and John Battaglia were

supervisors of the Plaintiffs and acted directly in the interest of the J.B. Construction enterprise in directing the Plaintiffs' work.  As such, each individual Defendant meets the definition of "employer" under the statute and will be held jointly and severally liable for wages owed to Plaintiffs.

Plaintiffs were employed by Defendants, 29 U.S.C. § 203(e)(1), and were suffered and permitted to work all hours claimed, as set forth in 29 U.S.C. § 203(g).  Testimony from Plaintiffs demonstrates that they performed work for J.B. Construction and that Defendants knew or should have known that such work was being performed on their behalf.  Plaintiffs performed significant "off-the-clock" work for which they received no regular wages or overtime wages in violation of state and federal laws.  Defendants required Plaintiffs and the other construction workers and manual laborers to report to work typically between 6:30 and 6:45 am, and sometimes earlier.  These early morning duties included loading the trucks with tools and equipment needed for the day's construction.  Plaintiffs were not paid for work performed until "on the job," which was typically between 7:30 and 8:00 am.  Similarly, Defendants frequently required that Plaintiffs work after the scheduled 4:30 pm shift, but failed to record time worked after 4:30 pm as "time worked" for payroll purposes.  Notwithstanding the fact that Plaintiffs typically worked shifts of approximately ten (10) hours or more, six (6) days a week, for a total of approximately sixty (60) hours of work each week, Plaintiffs did not receive compensation when working over eight hours a day or overtime compensation of time and one-half their regular rate of pay.  Indeed, Plaintiffs were only paid for forty-eight hours of work per week even when they worked in excess of sixty (60).  Plaintiffs were only occasionally and sporadically given "extra" pay if they worked later than 5:00 pm, for a shift in excess of ten and one-half (10.5) hours.  This "extra" pay was given at the complete discretion of Defendant A.

Battaglia without regard to the number of hours worked in excess of forty (40) hours in a week, and was not at the overtime premium rate.

Furthermore, it was common knowledge that Defendants refused to pay employees for travel time back to the yard, or for work performed in the yard cleaning and off-loading materials and equipment. Defendants also deducted thirty (30) minutes from Plaintiffs' pay for lunch each day, notwithstanding the fact that Plaintiffs rarely received a full 30 minute uninterrupted lunch period. On those occasions when Plaintiffs complained to Defendant A. Battaglia about not being paid for overtime or for all hours worked, Defendant A. Battaglia frequently responded, among other things, that time worked in excess of eight hours in a day was "his time," meaning that Plaintiffs had to work that time without compensation. *See* Nilson Caballero Depo. 59:22-60:2; Genrrin Medina Depo. 18:6-10; Ernesto Galeano Depo. 108:6-13. J.B. failed to accurately record the time Plaintiffs spent working each day, and even after Defendants implemented a sign-in and sign-out system for recording the Plaintiffs' time spent "on the job,"[4] Defendants failed to maintain any records recording the time spent working at the J.B. Construction shop in the mornings and evenings or in transit to and from job sites.

**B.      Plaintiffs are entitled to spread-of-hours compensation.**

New York Labor Law provides that any non-exempt employee whose workday is longer than ten (10) hours "shall receive one hour's pay at the basic minimum hourly wage rate." N.Y. Comp. Codes R. & Regs. tit. 12, § 137–1.7. This "spread of hours" is defined as the number of hours from the time an employee starts his workday until the time the employee finishes his workday, including both working time and non-working time (e.g., lunch breaks or off-time between split shifts). *Id.* at § 137–3.11; *Dong v. CCW Fashion Inc.*,

---

[4]  Defendants admit to having changed their timekeeping system for certain employees in or around the Fall of 2009, as a result of this lawsuit and to comply with certain requirements of their prevailing wage project.

06 Civ. 4973, 2009 U.S. Dist. LEXIS 33194, at *10 (S.D.N.Y. Feb. 19, 2009); *Heng Chan*, 2007 U.S. Dist. LEXIS 7770, at *59-60.  The  regulations and cases clearly state that an employee is entitled to an extra hour's pay irrespective of whether the employee's spread of hours includes non-working time. *See, e.g., Heng Chan*, 2007 U.S. Dist. LEXIS 7770, at *60 (explaining that employees are entitled to spread of hours for each workday in which "(a) the spread of hours exceeds 10 hours;  or (b) there is a split shift;  or (c) both situations occur") (quoting N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.4).

Courts have routinely concluded that, under New York law, plaintiffs can recover spread-of-hours wages in addition to their federal or state minimum wage and overtime claims. *See, e.g., Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 343 (S.D.N.Y. 2005) (plaintiffs recovered overtime and liquidated damages under FLSA and New York law, in addition to spread-of-hours damages); *see also Liu v. Jen Chu Fashion Corp.*, 2004 U.S. Dist. LEXIS 35 (S.D.N.Y. Jan. 7, 2004).

In this case, Defendants do not appear to contest that they never paid Plaintiffs spread-of-hours wages for days they worked more than ten (10) hours.  Thus, all Plaintiffs are entitled to spread-of-hours compensation for each day they worked in excess of ten (10) hours.

## C.    Plaintiffs are entitled to compensation for all hours worked, including "prep" and "travel" time.

J.B. contends that a portion of Plaintiffs' days, especially for non-driver "laborers," was not spent "working" and thus need not be compensated.  Federal and state law make it clear, however, that compensable work time includes time spent prepping and cleaning company

vehicles, and traveling to and from worksites, despite Defendants' contention that this is not "working" time.[5]

To analyze what is in fact compensable time, we first look to work as defined in the law. "Work is defined as 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'" *Holzapfel v. Town of Newburgh, NY*, 145 F.3d 516, 522 (2d Cir. 1998) (*quoting Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944)). For wage earning purposes, work begins with the first compensable activity of the day. After that, all time and activities are compensable. *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005). Work need not be performed during scheduled on-duty hours for an employee to receive compensation. *See Steiner v. Mitchell*, 350 U.S. 247, 256 (1956) (holding that employees must be compensated for "activities performed either before or after the regular work shift… if those activities are an integral and indispensable part of the principal activities for which covered [employees] are employed"); *see also Mitchell v. King Packing Co*., 350 U.S. 260, 263, 76 S. Ct. 337 (1956) (meat packer's work sharpening knives before going to work in a slaughterhouse is "an integral part of and indispensable to the various butchering activities for which they were principally employed and is compensable under the FLSA, as amended by the Portal-to-Portal Act").

FLSA and New York Labor Law both require employers to compensate employees for all work "suffered or permitted," including "wait time." *See Moon v. Kwon*, 248 F. Supp. 2d 201, 228 (S.D.N.Y. 2002) (citing 29 U.S.C. § 203(g); N.Y. Lab. Law § 2(7)). As explained by the United States Department of Labor:

> A stenographer who reads a book while waiting for dictation,

---

[5] The New York State Department of Labor similarly defines working time as "time worked or time of permitted attendance, including waiting time, whether or not work is provided, and time spent in traveling as part of the duties of the employee." N.Y. Comp. Codes R. & Regs. tit. 12, § 137–3.6.

> a messenger who works a crossword puzzle while awaiting assignments, a fireman who plays checkers while waiting for alarms and a factory worker who talks to his fellow employees while waiting for machinery to be repaired are all working during their periods of inactivity. . . . [The wait time is work time because] the employee is unable to use the time effectively for his own purposes. It belongs to and is controlled by the employer. In all of these cases waiting is an integral part of the job. The employee is engaged to wait.

29 C.F.R. § 785.15; *see also Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944) ("Readiness to serve may be hired, quite as much as service itself . . . ."). An employee is off duty, and therefore not entitled to compensation, only when he is "completely relieved from duty" for a period "long enough to enable him to use the time effectively for his own purposes." 29 C.F.R. § 785.16(a); *see also Reich v. S. New Eng. Telecommc'ns Corp.*, 121 F.3d 58, 65-66 (2d Cir. 1997) (holding that workers were still on duty because they were required to stay on site to perform passive safety and security duties during lunch breaks). The employee must be "*definitely told* in advance that he may leave the job and that he will not have to commence work until a *definitely specified hour* has arrived." 29 C.F.R. § 785.16(a) (emphasis added).

The Second Circuit reaffirmed this point in ordering an employer that forbade its employees from working overtime to provide back pay for all overtime work actually performed. *Chao v. Gotham Registry, Inc.*, 514 F.3d 280 (2d Cir. 2008). The court held that "[a]n employer who has knowledge [either actual or constructive] that an employee is working, and who does not desire the work be done, has a duty to make every effort to prevent its performance . . . even where the employer does not desire the employee to work." *Id.* at 288. The employer "cannot sit back and accept the benefits without compensating for them." *Moon*, 248 F. Supp. 2d at 228 (quoting 29 C.F.R. § 785.13).

Having suffered or permitted this labor, Defendants may not now attempt to escape

liability through after-the-fact protestations that they never wanted the work performed in the first place or would have acted differently had they known that the law required them to pay for this "prep" and "finishing" work. *See Gotham Registry*, 514 F.3d at 288 (holding that an employer has a duty to make an effort to prevent an employee from doing work it does not wish to be done).

**D.     Plaintiffs are entitled to prevailing wages at contractually required rates for work performed throughout the statutory period.**

New York Labor Law § 220 requires the payment of a "prevailing rate of wage" (§ 220(5)) to "laborers, workmen or mechanics" for employment on "public works" (§ 220(3)(a)) contracted with "the state or a public benefit corporation or a municipal corporation or a commission appointed pursuant to law" (§ 220(2-a)).  The prevailing wage rate is set by the New York Department of Labor annually, by reference to wages "in the same trade or occupation in the locality where the work is being performed." § 220(5)(a).  The law provides: "The wages to be paid for a legal day's work, as hereinbefore defined, to laborers, workmen or mechanics upon such public works, shall not be less than the prevailing rate of wages…." § 220(3)(a).

Employees on public works must be paid, in addition to prevailing wages, "supplements" by reference to "prevailing practices in the locality." § 220(3)(b), (5)(b) and (c).  Supplements include non-wage fringe benefits, such as "health, welfare, non-occupational disability, retirement, vacation benefits, holiday pay[,] life insurance, and apprenticeship training." § 220(5)(b).  Where employees do not receive any actual "supplemental" benefits, they must be paid the minimum cash value of such "supplements" as set by the prevailing wage law. Employees must also be paid, for overtime work in excess of eight hours per day and five days per week, "a premium wage commensurate with the premium wages prevailing in the area in which the work is performed." § 220(2).

12

As do many construction and contracting companies located in New York City, J.B. Construction entered into a highly coveted construction contract with the City of New York, including the New York City Department of Parks & Recreation, which required the payment of prevailing wages, as set forth in the prevailing wage schedules of the New York City Comptroller. *See* Plaintiffs' Exhibit No. 56 (P-56).   Since certain Plaintiffs were performing construction work pursuant to the prevailing wage contracts, Plaintiffs were the intended third party beneficiaries of these agreements.

New York courts have long held that employees may recover as third party beneficiaries in a breach of contract action if the employer fails to pay the wages and supplements mandated by the New York prevailing wage law. *See Cox v. NAP Const. Co., Inc.*, 10 N.Y.3d 592, 601-02 (2008).   In *Fata v. S.A. Healy Co.,* 289 N.Y. 401 (1943), the Court of Appeals held that the workers had a common law contract claim even though the prevailing wage law had its own administrative enforcement mechanism.   The court held that "where a valid statute requires the insertion of provisions intended for the protection of laborers or other groups in contracts relating to matters which are subject to regulation by the State," a "contractual obligation is created which may be enforced by action brought by one of the group for whose benefit the provisions have been inserted." 289 N.Y. at 406; *see also Quintanilla v. Suffolk Paving Corp.*, 2011 WL 1323033, at *7 (E.D.N.Y. Feb. 10, 2011); *Wright v. Herb Wright Stucco, Inc.*, 50 N.Y.2d 837 (1980) (approving dissent below, reported at 422 N.Y.S.2d 253, 254) (affirming that private right of action available).

Defendants admit to entering into a contract with the New York City Department of Parks and Recreation on a public works project to provide construction services primarily on sidewalks and roads throughout the borough of Brooklyn, New York.   Despite the fact that this

contract required the payment of prevailing wages, Defendants would routinely pay their workers less than the wage rate required by law and the public works contract.  In fact, Defendants continued to pay those Plaintiffs who performed work on the prevailing wage project at their regular hourly rate, but forced Plaintiffs to sign affidavits stating that they were in fact paid the prevailing wage rate.  The majority of the Plaintiffs are unable to read English, yet the affidavits that Defendants required Plaintiffs to sign were written in English without Spanish translation provided.  In addition, certain Plaintiffs were also required to endorse checks that Defendants would retain while Plaintiffs were paid their regular wages in cash. Upon information and belief, Defendants would pocket the difference between the required wage under state and federal law and/or contract and the wage actually paid to Plaintiffs.

Furthermore, as demonstrated in section A, *supra*, Plaintiffs were not paid overtime premiums of time and one-half their regular rate of pay for work performed in excess of forty (40) hours in a week.  In failing to compensate Plaintiffs at one and one-half times their regular hourly rate for hours worked in excess of forty (40) in a week, Defendants similarly failed to compensate certain Plaintiffs at prevailing wage overtime rates for work performed in excess of eight hours in a day, five days in a week and holidays.[6]  Plaintiffs who performed work pursuant to the Defendants' public works contract are entitled to prevailing wage overtime pay based upon their contractually mandated § 220 prevailing wages. *See Sobczak v. AWL Industries, Inc.*, 540 F. Supp. 2d 354, 361 (E.D.N.Y. 2007).

   **E.      In the absence of accurate time-records, Plaintiffs may satisfy their burden by providing reasonable estimates of the amount of work performed and compensation received.**

Defendants failed to maintain accurate records of Plaintiffs' wages and hours, as required under both federal and state law. *See* 29 U.S.C. § 201 *et seq.*; 29 C.F.R. § 516.4; 12 N.Y.C.R.R.

---

[6]  *See* P-56.

§ 137-2.1.  Under such circumstances, the court is to base its calculation of wages owed on the workers' reasonable estimates of hours worked and wages received, absent *specific* rebuttal evidence by Defendant that those estimates are inaccurate. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946); *Saigon Grill*, 595 F. Supp. 2d at 255; *Heng Chan*, 2007 U.S. Dist. LEXIS 7770, at \*66 (record-keeping requirements are the "fundamental underpinnings" of wage and hour laws).

To meet his initial burden, an employee need not produce documentary evidence but may instead base his testimony on his recollection alone. *See, e.g., Saigon Grill*, 595 F.Supp.2d at 254-55; *Rivera v. Ndola Pharm. Corp.,* 497 F. Supp. 2d 381, 388 (E.D.N.Y. 2007); *ACBL Corp.,* 427 F. Supp. 2d at 335; *see also Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 31 (2d Cir. 2002) (finding burden satisfied by employee's testimony, which was corroborated by that of a co-worker).  Once the employee has provided reasonable estimates of the amount of work performed and compensation received, the burden shifts to the employer to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee evidence." *Anderson*, 328 U.S. at 668; s*ee also Manlapaz*, 643 F. Supp. 2d at 307 ("the burden then shifts to the employer to prove by a preponderance of the evidence that the plaintiff was properly paid for the hours worked"); *Mascol v. E & L Transport., Inc.*, 387 F. Supp. 2d 87, 94 (E.D.N.Y. 2005).  If the employer fails to do so, the court is to award damages to the employee based on his own testimony, even though the award may only approximate actual damages.

In this case, Defendants will be unable to refute Plaintiffs' testimony regarding the hours that they worked.  Defendants concede that prior to the instant lawsuit being filed, they had no method of tracking employees' hours or wage payments.  Defendant A. Battaglia testified that he

expected the "laborers," including all Plaintiffs, to be at the Defendant's shop at 6:45 am ready to work, although Mr. Battaglia did not consider these employees to be "working" until they got to the jobsite. *See* Alfredo J. Battaglia Deposition Transcript 64:8-65:17.[7]  Although Defendant A. Battaglia deemed the Plaintiffs to "start work" when they arrived at the worksite, he admits that Defendants did not keep records of the time that the laborers arrived at the work site or left the worksite. *See* AJB Depo. 66:17-24.

Defendants willfully failed to install a time clock or other timekeeping system in order to benefit from Plaintiffs' substantial unpaid overtime.  "When an employer has failed to keep proper records, courts should not hesitate to award damages based on the 'just and reasonable inference' from the evidence presented.'"  *Mary Boyke v. Superior Credit Corp*., 2006 U.S. Dist. Lexis 93928,*15, (N.D.N.Y. Dec. 28, 2006) (*citing Martin v. Tony & Susan Almo Foundation*, 952 F.2d 1050, 1052 (8th Cir.), cert. denied, 505 U.S. 1204 (1992)).  The employer "cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the FLSA."  *Id.*

## II. DEFENDANTS' VIOLATIONS OF FLSA AND NEW YORK LABOR LAW WERE WILLFUL AND WITHOUT A GOOD-FAITH BASIS

Plaintiffs' recovery in this case will be enhanced because Defendants' violations of federal and state law were willful and without a good-faith basis.

### A. Defendants' conduct was willful.

Where an employer's violations are willful, the FLSA statute of limitations is three years rather than two.[8]  29 U.S.C. § 255(a).  Furthermore, employers are required to pay 25%

---

[7] Hereinafter, references to Deposition Transcripts will be formatted as follows: ([Defendant's initials] Depo. Page#:line#).

[8] New York law provides a six-year statute of limitations in all cases for unpaid wages. N.Y. Lab. Law § 663(3).

liquidated damages on wages owed under New York law for willful state law violations. N.Y. Lab. Law

§198(1), 663(1) (25% liquidated damages for willful violations).  For the purposes of assessing liquidated damages, the test for "willfulness" is the same under the NYLL as it is under the FLSA.  *Keun-Jai Moon,* 248 F. Supp. 2d at 235 (state law follows the federal test on "willfulness" for the purposes of assessing liquidated damages).  The Supreme Court has held that a willful violation is one where "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)*; see also Herman v. RSR Sec. Servs., Ltd.,* 172 F.3d 132, 141-42 (2d Cir. 1999) (ignorance can be tantamount to reckless disregard).  That standard is easily met in this case.  That Defendants would own and manage a mid-sized contracting and construction company for decades without complying with the wage and overtime provisions of the FLSA or New York Labor Laws demonstrates, at the very least, "reckless disregard" tantamount to willfulness.

      **B.**      **Defendants are unable to prove a good-faith basis and reasonable belief that their conduct complied with the FLSA.**

     Defendants will be required to pay 100% liquidated damages on top of wages owed under FLSA because Defendants will be unable to prove the required affirmative defense that they possessed a good-faith basis and a reasonable belief that their conduct complied with FLSA.  *See* 29 U.S.C. § 216(b) (100% liquidated damages);  *S. New Eng. Telecomm'cns Corp.*, 121 F.3d at 71 ("The employer bears the burden of establishing, by plain and substantial evidence, subjective good faith and objective reasonableness…the burden, under 29 U.S.C. § 260, is a difficult one to meet, however, and 'double damages are the norm, single damages the exception.'");  *Brock v. Wilamosky*, 833 F.2d 11, 20 (2d Cir. 1987) ("The Act does not authorize the court to decline to

award liquidated damages, in whole or in part, unless the employer has established its good-faith, reasonable-basis defense"); *Tlocoapa v. Carregal*, 386 F. Supp. 2d 362, 368 (S.D.N.Y. 2005). Since FLSA liquidated damages are considered compensatory, while New York Labor Law damages are more punitive in nature, employees are entitled to recover both concurrently. *See Saigon Grill*, 595 F. Supp. 2d at 261 (ordering defendants to pay both federal and state liquidated damages, "since they also serve fundamentally different purposes.").

> ### C.      New York Labor Law Damages

The statute of limitations under New York law for wage payment violations is six years. N.Y. Lab. Law §§ 198(3), 663(3).

## III.     PLAINTIFFS ARE ENTITLED TO INTEREST, COSTS, AND FEES

New York law provides for 9% prejudgment interest per annum on unpaid wages. N.Y. C.P.L.R. §§ 5001, 5004.  Courts may award interest in addition to any damages. *Reilly v. Natwest Mkts. Group Inc.*, 181 F.3d 253, 265 (2d Cir. 1999).  Prejudgment interest is available for unpaid overtime claims under the New York Labor Law. *See Heng Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048 (GEL), 2007 WL 1373118, at *9 (S.D.N.Y. May 8, 2007); *Liu*, 2004 WL 33412, at *5.  It is equally available for liquidated damages under the NYLL, *see Liu*, 2004 WL 33412, at *5, and where liability for unpaid overtime also is found under the federal FLSA, *see Heng Chan*, 2007 WL 1373118, at *9.  Prejudgment interest is also available for unpaid overtime under the FLSA. *See Food Jungle,* 2006 WL 2708055, at *8 (awarding plaintiff liquidated damages under the FLSA and prejudgment interest under N.Y. C.P.L.R. § 5001). Federal and state law also require that Defendants pay the reasonable attorneys' fees and costs incurred by Plaintiffs to enforce their rights. 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a), § 663(1).  Plaintiffs respectfully request the opportunity to submit attestations as to costs and fees

at the close of trial.

## IV.   MANY PLAINTIFFS ARE ENTITLED TO COMPENSATION BECAUSE DEFENDANTS RETALIATED AGAINST THEM FOR PARTICIPATING IN THE PRESENT ACTION

Under FLSA, an employer may not "discharge or in any other manner discriminate against any worker because that worker has filed a complaint or instituted or caused to be instituted any proceeding under or related to this act or has testified or is about to testify in any such proceeding." 29 U.S.C. § 215(a)(3).  In order to establish a prima facie case for retaliation, a plaintiff must demonstrate "participation in protected activity known to the defendant, an employment action disadvantaging the person engaged in the protected activity, and a causal connection between the protected activity and the adverse employment action."  *Cruz v. Coach*, 202 F.3d 560, 566 (2d Cir. 2000); *see also Mullins v. City of New York*, No. 04 Civ. 2979 (SAS), 2008 U.S. Dist. LEXIS 22611, at *12 (S.D.N.Y. Mar. 21, 2008) (applying this framework in the FLSA context); *Lai v. Eastpoint Int'l Inc.*, No. 99 Civ. 2095 (DLC), 2000 U.S. Dist. LEXIS 12502, at *9-11 (S.D.N.Y. Aug. 30, 2000) (same).

If an employer violates the FLSA's anti-retaliation provision, the plaintiff may recover "such legal or equitable relief as may be appropriate . . . including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).  Punitive damages are also available.  *See Sines v. Service Corp. Int'l*, 03 Civ. 5465(SC), 2006 U.S. Dist. LEXIS 82164, at *4-10 (S.D.N.Y. Nov. 8, 2006) (affirming jury's award of $130,000 in punitive damages on top of award of approximately $65,000 in back pay and liquidated damages); *see also Travis v. Gary Community Mental Health Ctr., Inc.*, 921 F.2d 108, 111 (7th Cir. 1990) (stating that compensatory, punitive, and emotional distress damages are available).

19

In this case, those Plaintiffs asserting this claim will have no difficulty establishing a prima facie case of retaliation.  Here, as in the *Mullins* case, no party disputes that the filing of a FLSA lawsuit for overtime is a "protected activity," thus the first prong of the prima case of retaliation is established.

As for the second prong of the prima facie case of retaliation, the adverse employment action, it is settled law that an employment action disadvantages an employee if "it well might have 'dissuaded a reasonable worker from making or supporting [similar] charge[s]....'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citations omitted).  In *White*, the Supreme Court made it clear that the anti-retaliation provision is "not limited to discriminatory actions that affect the terms and conditions of employment." 548 U.S. at 64; *see also Illiano v. Mineola Union Free Sch. Dist.,* 585 F. Supp. 2d at 352; *Kessler v. Westchester County Dep't of Soc. Servs.,* 461 F.3d 199, 207 (2d Cir. 2006) (citations omitted).  The Court explained that "the means by which an employer can retaliate against an employee are not limited to altering his compensation, terms, conditions, or privileges of employment," and that limiting the retaliation provision to "employment-related actions would not deter the many forms that effective retaliation can take." *Kessler v. Westchester County Dep't of Soc. Servs.,* 461 F.3d at 208 (citations omitted).

For Plaintiffs' participating in a "protected activity," A. Battaglia physically attacked Plaintiff Ernesto Galeano and made multiple threatening phone calls to several Plaintiffs, including Jesus Acosta Artica, Jaime Rivas and R. Alejandro Cabrera, after they joined the present action.   Among other things, A. Battaglia threatened Jaime Rivas by stating the following:

"You're a scumbag Rasta. And when I get done with you, when I get done with you with the ..., you're a scumbag. That's all. You're a scumbag weasel. You know what a weasel is?"

"You and Alejandro, all of you.  You're a fucking Latino scumbag. That's all. I just want you to know. You're a *puta*. You and you're mother, both of you are."

"You are. I have bought you... I bought you and I sell you. You know that."

"You know that. And I'm worth past 15 million dollars..."

"You're worth zero."

"'Cause you work here and you're a piece of shit; that's all."

"Watch your back you little piece of shit. Watch your back."

"Watch your back you little motherfucker. Watch your back."[9]

In a separate series of phone calls to Alejandro Cabrera, A. Battaglia left threatening voicemail messages of the same nature as the comments above.   In addition, A. Battaglia threatened Plaintiff Jesus Artica, stating that he knew where Artica lived, causing Mr. Artica to move his family to a new residence and then, ultimately, causing Artica to move back to Honduras.

The Tenth Circuit addressed the very issue of post-termination threats in the Title VII of the Civil Rights Act of 1964 ("Title VII") context in *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079 (10th Cir. 2007), in which a plaintiff was subjected to threats by her former employer. Among other things, the threats consisted of comments from the employer that "he would seek to ruin her marriage and that she should consider the repercussions of her actions on her family." *Id*. at 1090.   In finding that such threats constituted actionable retaliation, the Tenth Circuit established that, "[A] reasonable employee could well find such a combination of threats and actions taken with the design of imposing both economic and psychological harm sufficient to

---

[9]   A copy of the full transcripts of the phone call Defendant Alfredo J. Battaglia made to Plaintiff Jaime Rivas and the voicemail messages Defendant Alfredo J. Battaglia left for Plaintiff Alejandro Cabrera were attached as Exhibit B to Plaintiffs' Reply in Further Support of Plaintiffs' Motion to Amend and Consolidate (Docket No. 53).

dissuade him or her from making or supporting a charge of discrimination. Indeed, we have found lesser conduct to suffice under similar legal standards." *Id*. Here, the threats by Defendant A. Battaglia are much more violent and discriminatory in nature than those in the *Williams* case and would certainly be intimidating enough to create fear and dissuade any reasonable employee from enforcing their rights under the FLSA and NYLL after hearing such threats.

In approaching the question whether the threats the Defendants made against the Plaintiffs were "materially adverse," Plaintiffs are fully aware that anti-retaliation provisions "protect individuals 'not from all retaliation' but only from retaliation 'that produces an injury or harm' " that itself rises to a " 'level of seriousness.' " *Id.* at 1087 (quoting *White,* 548 U.S. at 67). To qualify under this standard, as the Tenth Circuit held in *Williams*, a plaintiff must show "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. (quoting *White,* 548 U.S. at 68, 126 S.Ct. 2405) (internal quotation marks omitted). "Requiring this level of adversity . . . is necessary 'to separate significant from trivial harms,' " *id.* (quoting *White,* 548 U.S. at 68, 126 S.Ct. 2405), "petty slights, minor annoyances, and simple lack of good manners," *White,* 548 U.S. at 68, 126 S.Ct. 2405.

Threatening phone calls to Plaintiffs causing them to fear for their safety and the safety of their families, to the point where one Plaintiff, Jesus Acosta Artica, was forced to move his apartment out of such fear of physical harm, is more than sufficient to establish "significant harm" aimed to intimidate the Plaintiffs and discourage them from enforcing their legal rights. Indeed, the very "purpose of statutory anti-retaliation provisions is to prevent employers from intimidating employees and discouraging them from enforcing their legal rights." *Harmar v. United Airlines, Inc.,* No. 95 C 7665, 1996 WL 199734, at *1 (N.D. Ill. Apr. 23, 1996).

Similarly, Judge Colleen McMahon held that "there is nothing unreasonable about the jury's concluding that secret surveillance by an employer well might (which is the phrase used by the Supreme Court in Burlington) dissuade a reasonable employee from continuing to complain about discrimination – especially in the context of the apparent lack of a sympathetic response from management to complaints." *Mendez v. Starwood Hotels & Resorts Worldwide, Inc.,* 2010 U.S. Dist. LEXIS 107709, *53 (S.D.N.Y September 29, 2010). Threats of physical harm such as the ones contained in Defendants' phone calls to Plaintiffs, along with A. Battaglia's threat that Jesus Acosta Artica "better watch out" because A. Battaglia knew where the lead plaintiff lived, causing Artica to move, are exactly the types of retaliation that the FLSA and NYLL must guard against because these are threats that may prevent a reasonable employee from exercising his or her rights under the FLSA and NYLL. *See Mendez v. Starwood Hotels, supra.*

Furthermore, the threatening phone calls and voicemail messages were not isolated incidents directed solely at the individual Plaintiffs receiving such calls, but were intended to intimidate the entire group of former employees participating in the present action. Plaintiffs were well aware of Defendants A. Battaglia and Mannino's vicious attack and beating on their co-Plaintiff Ernesto Galeano, for attempting to enforce his rights under the NYLL and FLSA. Receiving threatening phone calls from Defendant A. Battaglia generated a real and valid fear for their safety and the safety of their families because they did not want to end up in the hospital like Galeano. As such, it is clear that the brutal assault and battery on Galeano was not only retaliation for Galeano's attempt to enforce his rights under the NYLL and FLSA, but it was an aggressive intimidation tactic by Defendants to prevent other Plaintiffs and employees from enforcing their rights as well. These threats, in light of the physical attack of Galeano, and A. Battagila's boasts that he "knew people" that could hurt Plaintiffs, more than satisfy the

governing standard of being "harmful to the point that they could well dissuade a reasonable worker from [engaging in protected activity]." *White,* 548 U.S. at 57.

While the *White* case deals with a retaliation claim arising under Title VII, FLSA retaliation claims are governed by the same legal analysis applicable to retaliation claims under Title VII, 42 U.S.C. § 2000e *et seq.*; *Buie v. Quad/Graphics, Inc.,* 366 F.3d 496, 503 (7th Cir. 2004); *Conner v. Shnuck Mkts., Inc.*, 121 F.3d 1390 (10th Cir. 1997) (determining the prima facie case brought under the FLSA was similar to that under Title VII); *see also Ergo v. International Merchant Services, Inc.*, 519 F. Supp. 2d 765, 780-81 (N.D. Ill. 2007) (retaliation claim brought under FLSA, 42 U.S.C. § 201 *et seq.* is still subject to *White*'s "dissuade a reasonable person" standard to analyze the element of adverse action). For the reasons set forth above, the threats made by Defendant A. Battaglia, causing all Plaintiffs to "fear for their safety," are adverse employment actions that satisfy the second prong of the prima facie case for retaliation under state and federal law.

A causal connection between an adverse action and a plaintiffs' protected activity may be established "through evidence of retaliatory animus directed against a plaintiff by the defendant." *Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir. 1991) (internal quotation marks and citation omitted); *Sumner v. U.S. Postal Service,* 899 F.2d 203, 209 (2d Cir. 1990) (citing *Davis v. State Univ. of New York,* 802 F.2d 638, 642 (2d Cir. 1986); *De Cintio,* 821 F.2d at 116 n.8). There is no doubt that the threats by A. Battaglia are directly related to the Plaintiffs' participation in the present action and are designed to intimidate, punish and dissuade Plaintiffs from participating in the protected activity that is this action.

The threatening phone calls and voicemail messages were made by Defendant A. Battaglia after Plaintiffs commenced and joined the present action. In addition to the threats and

discriminatory comments, in his phone calls to Plaintiff Jaime Rivas, Defendant A. Battaglia addressed the Plaintiffs' complaints and participation in the present action in stating, among other things, the following:

"You have no ... and no balls.  Because if you had a problem with me you would have came to see me to talk about it."  A. Battaglia continued, "...eight years every day, you never missed one day.  Now you think you're all hot shit. You ain't ..."

With regard to the Plaintiffs quitting because of the Defendants' unlawful pay practices, Defendant A. Battaglia commented, "I don't need your father. I don't need your scumbag brother. I don't need none of you."

Concerning the unlawful pay practices, Plaintiff Jaime Rivas commented, "You – three years you pay me $200.00 a day and the last year you pay me $180.00. What is that?" Defendant A. Battaglia responded by stating, "Yeah, that's more than you're worth.  It's more than what you're worth." A. Battaglia continued, "You're worth zero."[10]

Defendant A. Battaglia's threats came after Plaintiffs Jaime Rivas and Alejandro Cabrera were forced to quit because of Defendants' illegal pay practices and subsequently joined the present action to enforce their rights under state and federal law.  Plaintiffs did not receive threatening phone calls from Defendants until they joined the present action.  Aside from Defendant A. Battaglia's comments related to the issues of the present case, pure logic also commands the conclusion that the only sensible reason Defendant A. Battaglia called these Plaintiffs was to threaten, harass and intimidate the Plaintiffs for their participation in the present action.   Accordingly, the causal connection between the Plaintiffs' participation in the present action and the retaliation by Defendants is easily established.

---

[10]  *See supra* Note 9 and accompanying text.

If, as here, the plaintiff establishes a prima facie case, a rebuttable presumption of retaliation arises, and the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment decision. *See Reeves*, 530 U.S. at 143. If the employer articulates a nondiscriminatory reason for its actions, the presumption of retaliation is rebutted, and the burden shifts back to the plaintiff to show, without the benefit of any presumptions, "sufficient potential proof for a reasonable jury to find the proffered legitimate reason merely a pretext for impermissible retaliation." *Gallagher v. Delaney*, 139 F.3d 338, 349 (2d Cir. 1998); *see also Myrick v. New York City Employees Ret. Sys.*, No. 99 Civ. 4308, 2002 U.S. Dist. LEXIS 8032, 2002 WL 868469, at *5 (S.D.N.Y. May 3, 2002).

Plaintiffs also have a claim for retaliation under New York law, which covers a broader range of protected activities than FLSA. New York Labor Law makes it illegal to

> discharge, penalize, or in any other manner discriminate against any employee because such employee has made a complaint to his employer, or to the commissioner or his authorized representative, that the employer has violated any provision of this chapter, or because such employee has caused to be instituted a proceeding under or related to this chapter, or because such employee has testified or is about to testify in an investigation or proceeding under this chapter.

N.Y. Lab. Law § 215(1). By its terms, New York Labor Law protects employees from retaliation not only when they institute formal proceedings (or are in the process of doing so), as under FLSA, but also when they merely complain to their employers about labor law violations, such as Galeano's complaint to his employer regarding Defendants' failure to pay wages. Accordingly, there is no question that Plaintiffs will be able to assert a claim for retaliation under New York Labor Law.

**V.   PLAINTIFF ERNESTO GALEANO IS ENTITLED TO DAMAGES FOR THE PHYSICAL ATTACK BY DEFENDANTS ALFREDO J. BATTAGLIA AND SALVATORE MANNINO AND DEFENDANTS' DOG**

Under New York law, "an 'assault' is an intentional placing of another person in fear of imminent harmful or offensive contact. A 'battery' is an intentional wrongful physical contact with another person without consent." *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993) (collecting authorities); *accord Charkhy v. Altman*, 252 A.D.2d 413, 414, 678 N.Y.S.2d 40 (1st Dep't 1998); 6A N.Y. Jur. 2d Assault--Civil Aspects § 1 (1997). "It does not matter that the penal law lays down specific elements for the various offenses or degrees of offenses that entail unwanted touching . . . . In the civil context . . ., the common meanings of 'assault' and 'battery' subsume all forms of tortious menacing and unwanted touching." *United Nat'l Ins. Co.*, 994 F.2d at 108; *accord* 6A N.Y. Jur. 2d Assault--Civil Aspects § 2.

Defendants A. Battaglia and Mannino brutally attacked Plaintiff Ernesto Galeano on August 18, 2009, when Galeano went to Defendants' offices to collect his final paycheck.  In addition, Alfredo J. Battaglia's dog attacked Galeano at A. Battaglia's command.  A. Battaglia had previously told Galeano and his co-workers that his German Shepherd guard dog, "Spike," was trained to attack Hispanics.  While Mr. Galeano was waiting to collect his final paycheck, Mr. Battaglia went to the back of the shop to release the guard dog.  Commanding a dog to "sic 'em" in the manner that Defendant A. Battaglia did with Spike, on its own, has been found to constitute an assault. *See Bram v. Lusat Realty Corp.*, 8 N.Y.S.2d 176 (Civ Ct Bronx County 1938).

Meanwhile, Mannino started to hit, kick and attack Galeano while A. Battaglia released Spike.  Once A. Battaglia released Spike and instructed Spike to attack Galeano, A. Battaglia joined in hitting and kicking Mr. Galeano.  Prior to the August 18, 2009 attack, Spike had previously bitten at least five other J.B. Construction employees including Hugo Rivas, Marcos

Ruiz, Adonis Lobo, Rosario LaPuma and "Taz," along with a 14 year old girl.  The dog had been specifically trained to follow A. Battaglia's commands as a guard dog.

New York State's highest court ruled "that the owner of a domestic animal who either knows or should have known of that animal's vicious propensities will be held strictly liable for the harm the animal causes as a result of those propensities. Vicious propensities include the propensity to do any act that might endanger the safety of the persons and property of others in a given situation." *Bard v. Jahnke*, 6 N.Y.3d 592 (N.Y. 2006) (citation omitted); *Muller v. McKesson*, 73 N.Y. 195 ; *Anderson v. Carduner*, 279 A.D.2d 369; *Mariano v. Schmidt*, 133 A.D.2d 72; *Fontecchio v. Esposito*, 108 A.D.2d 780.  It is for the jury to determine whether the animal had known vicious propensities, although the keeping of a dog as a guard dog may give rise to an inference that the owner had knowledge of the dog's vicious propensities. *See Collier v. Zambito*, 1 N.Y.3d 444 (Ct. App. N.Y. 2004).

A. Battaglia summoned his dog Spike to attack Galeano, biting his arm, stomach and leg. While Galeano attempted to fend off the dog, A. Battaglia and Mannino kicked Galeano in the face and beat him up.  While Galeano was wearing shorts and sandals, A. Battaglia and Mannino were both wearing heavy work boots.  During the attack, Galeano was thrown against a glass room divider, which shattered, and Galeano fell down to the ground.  After Galeano fell down, A. Battaglia and Mannino continued to kick him. Mannino and A. Battaglia both instigated the attack, striking Galeano and causing him to suffer severe personal injury and mental distress.

Given the nature and severity of the attack by Defendants A. Battaglia and Mannino and Defendant A. Battaglia's dog, Plaintiff Galeano can easily establish a prima facie case for battery. *See Wende C. v. United Methodist Church*, 4 N.Y.3d 293 (Ct. App. N.Y. 2005); *Laurie Marie M. v. Jeffrey T.M.*, 159 A.D.2d 52 (N.Y.A.D. 2d Dept 1990), aff'd 77 N.Y.2d 981 (Ct.

App. N.Y. 1991); *Cerilli v. Kezis*, 16 A.D.3d 363 (N.Y.A.D. 2d Dept 2005); *Bastein v. Sotto*, 299 A.D.2d 340 (N.Y.A.D. 2d Dept 2002).

A witness to the attack started screaming, interrupting it.  Mr. Galeano was later transported to Jamaica Hospital by ambulance.

The district attorney is currently pursuing assault charges against A. Battaglia and Mannino arising out of this attack, which was prompted by Mr. Galeano's asserting his rights under the FLSA and NYLL.

## VI.    ALL DEFENDANTS WERE PLAINTIFFS' EMPLOYERS AND THUS JOINTLY AND INDIVIDUALLY LIABLE FOR UNPAID WAGES

Pursuant to FLSA and New York Labor Law, all corporate defendants as well as individuals who meet the definition of "employer" are personally and directly liable for wage and hour violations. *See Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 192 (S.D.N.Y. 2003).  FLSA defines an "employer" as "any person acting directly or indirectly in the interests of an employer in relation to an employee." 29 U.S.C. § 203(d).  More than one person may be an employer, and employers may have "shared or delegated operation control to other[s]… or exercised that control infrequently." *Keun-Jai Moon*, 248 F. Supp. 2d at 237.  New York Labor Law likewise broadly construes who may be considered an employer for purposes of liability, and employs the same "economic reality" test used under FLSA. *See Jiao*, 2007 U.S. Dist. LEXIS 96480 at *9, n. 12 ("[C]ourts have interpreted the definition of 'employer' under New York Labor Law coextensively with the definition used by the FLSA.").

The "economic reality" test for determining who constitutes an "employer" looks at such factors as whether the defendant has power over the hiring and firing of employees, supervises or controls employee work schedules or conditions of employment, determines the rate and method of payment, or maintains employment records. *RSR Sec. Servs. Ltd.*, 172 F.3d at 139; *Yang v.*

29

*ACBL Corp.*, 427 F. Supp. 2d 327, 342 (S.D.N.Y. 2005) (same).  Defendants A. Battaglia and J. Battaglia are joint owners of J.B. Construction and Defendant Mannino shared responsibility for direct supervision, management, and operation of the business.  "These factors are not exclusive, and the plaintiff need not satisfy all of them to demonstrate that a particular defendant is an employer." *Ke v. Saigon Grill, Inc.,* 595 F. Supp. 2d 240, 264 (S.D.N.Y. 2008).  Each individual defendant therefore meets the definition of "employer" under FLSA and state law and is personally liable for the full amount of wages owed to each Plaintiff.

### A.    All Corporate Defendants Comprise a Single-Employer Enterprise

Plaintiffs have performed construction work for J.B. Custom Masonry & Concrete, Inc., J.B. Custom Corp., J.B. Holding & Property Corp., and J.B. Residential, LLC, which have all served as Plaintiffs' employer and are all part of one uniform "enterprise" as defined by the FLSA and NYLL.  The single employer doctrine applies when "'separate corporations are not what they appear to be, that in truth they are but divisions or departments of a single enterprise.'" *Clinton's Ditch Coop. Co., Inc. v. NLRB,* 778 F.2d 132, 137 (2d Cir. 1985), *cert. denied,* 479 U.S. 814, 107 S. Ct. 67, 93 L. Ed. 2d 25 (1986) (quoting *NLRB v. Deena Artware, Inc.,* 361 U.S. 398, 402, 80 S. Ct. 441, 4 L.Ed.2d 400 (1960)).  In other words, two companies are a single employer "if there is an 'absence of an arm's length relationship found among unintegrated companies.'" *LaBarbera v. C. Volante Corp.,* 164 F. Supp. 2d 321, 325 (E.D.N.Y. 2001) (quoting *Lihli Fashions Corp. v. NLRB,* 80 F.3d 743, 747-48 (2d Cir. 1996)).  The Supreme Court has set forth a four-factor test to determine whether two companies are a single employer. *Radio & Television Broadcast Technicians Local Union v. Broadcast Service of Mobile, Inc.*, 380 U.S. 255, 256, 85 S. Ct. 876, 877, 13 L. Ed. 2d 789 (1965).  The test specifically looks at the companies' interrelation of operations, common management, centralized control of labor

relations and common ownership. *Id.*  In addition to these four factors, the presence of common office facilities and equipment, as well as the existence of family connections among the businesses, may also be considered when determining single employer status. *See LaBarbera,* 168 F. Supp. 2d at 325 (citing *Radio & Television Broadcast Technicians,* 380 U.S. 255, 85 S. Ct. 876, 13 L. Ed. 2d 789).  To make a finding of single-employer status, it is not necessary for all of the factors to be present, and no one factor is more important than another. *Lihli Fashions Corp.,* 80 F.3d at 747.  What is key to determining single employer status is finding that the companies do not conduct business dealings at arm's length, as they would if they were not closely related to each other. *Id.*

The Corporate Defendants are all part of one uniform "enterprise" because the companies are under common ownership and control and utilize the same business locations. *See Brown v. Dominic Prisco Transp., Inc.,* 1997 U.S. Dist. LEXIS 23709, No. CV 95-1121, 1997 WL 1093463, at *4 (E.D.N.Y. Aug. 16, 1997) (holding that companies with the same owners and business officers are a single employer).  All Corporate Defendants in this case clearly comprise a single-employer enterprise and accordingly, all are jointly and severally liable with the Individual Defendants.

## CONCLUSION

The authorities cited above, together with the evidence submitted by declaration, demonstrate that Plaintiffs will prevail on their claims for substantial amounts of unpaid wages and overtime, damages, costs, attorneys' fees and interest against Defendants.  Plaintiffs respectfully ask for the opportunity to submit additional papers after trial, including a computation of damages to be assessed.

Dated:  New York, New York
         October 14, 2011

Respectfully submitted,

PELTON & ASSOCIATES, PC
*Attorneys for Plaintiffs*


By:      /s/Brent E. Pelton
Brent Pelton [BP-1055]
111 Broadway, Suite 901
New York, New York 10006
Telephone: (212) 385-9700
Facsimile:  (212) 385-0800
pelton@peltonlaw.com

Dorothy A. O'Brien
Dorothy A. O'Brien Attorney & Counselor
at Law PLC
2322 East Kimberly Rd, Suite 100E
Davenport, IA 52807
Telephone: (563) 355-6060
Facsimile:  (563) 355-6666