IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JESUS ACOSTA ARTICA, JUAN ZELAYA, NILSON CABALLERO, JOSE RUIZ, ADONIS LOBO and ERNESTO GALEANO, Individually and on Behalf of all other Employees Similarly Situated,<br><br>**Plaintiff,**<br><br>-against-<br><br>J.B. CUSTOM MASONRY & CONCRETE, INC., J.B. BATTAGLIA, J.B. CONTRACTING, ALFREDO J. BATTAGLIA, JOHN BATTAGLIA and SALVATORE MANNINO, Jointly and Severally,<br><br>**Defendants.** | ECF<br><br>09-CV-3796 (CBA)(RER) |
| JESUS ACOSTA ARTICA, JUAN ZELAYA, NILSON CABALLERO, JOSE RUIZ, ADONIS LOBO, ERNESTO GALEANO, HUGO RIVAS and JAIME RIVAS, Individually and on Behalf of all other Employees Similarly Situated,<br><br>**Plaintiff,**<br><br>-against-<br><br>J.B. CUSTOM MASONRY & CONCRETE, INC., J.B. CUSTOM CORP., J.B. HOLDING & PROPERTY CORP., J.B. RESIDENTIAL, LLC, ALFREDO J. BATTAGLIA, JOHN BATTAGLIA, JOSEPHINE BATTAGLIA and SALVATORE MANNINO, Jointly and Severally,<br><br>**Defendants.** | 11-CV-0842 (CBA)(RER) |

**PLAINTIFFS' MEMORANDUM OF LAW
CONCERNING PLAINTIFFS' "REGULAR RATE"**

Brent E. Pelton [BP-1055]
Pelton & Associates, PC
111 Broadway, Suite 901
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800
pelton@peltonlaw.com

Dorothy A. O'Brien
Dorothy A. O'Brien Attorney & Counselor
at Law PLC
2322 East Kimberly Rd, Suite 100E
Davenport, IA 52807
Telephone: (563) 355-6060
Facsimile:  (563) 355-6666

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................................2

ARGUMENT ...................................................................................................................................3

I.        PLAINTIFFS WERE NOT PAID A BONA FIDE DAY RATE ........................................3

        A.        Legal Definition of Day Rate...................................................................................3

        B.        Defendants Failed to Pay Plaintiffs a Bona Fide Day Rate .....................................3

II.       DEFENDANTS INTENDED TO PAY PLAINTIFFS FOR AN EIGHT HOUR WORKDAY....................................................................................................................5

        A.        Procedure for Determining Regular Rate ................................................................5

        B.        The Best Evidence of the Number of Hours for which Defendants Intended to Pay Plaintiffs Are the Parties' Deposition Testimony and Plaintiffs' Paystubs ....................................................................................................6

        C.        Defendants' Paid Drivers Differently from Laborers, Further Demonstrating that Defendants Intended to Compensate Plaintiffs for an Eight-hour Workday ....................................................................................................7

        D.        Since Defendants Acknowledge That They Only Paid for an Eight-hour Day, It Would Be Illogical to Assume that Defendants Paid for All Hours Worked and Therefore Owe Only Half-time for Overtime Hours ..........................8

III.      PLAINTIFFS PERFORMED COMPENSABLE WORK DURING THE TIME OUTSIDE OF THE EIGHT HOURS FOR WHICH DEFENDANTS PAID THEM ..............................................................................................................................8

IV.      PLAINTIFFS' MEASURE OF DAMAGES.....................................................................10

CONCLUSION..............................................................................................................................11

The FLSA's implementing regulations state that: "[t]he regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment … in any workweek by the total number of hours actually worked by him in that workweek *for which such compensation was paid*." (emphasis added). Plaintiffs respectfully submit this Memorandum of Law to demonstrate that Plaintiffs' regular rate is equal to their total weekly compensation divided by the hours for which Defendants intended to compensate them. The facts will show that Defendants intended to pay Plaintiffs for eight hours of work per day, notwithstanding the fact that Plaintiffs were required to work a significant number of additional off-the-clock hours each day.

## PRELIMINARY STATEMENT

Defendants contend that Plaintiffs were paid at a "day rate" that remained constant independent of the number of hours a Plaintiff worked on a particular day. Plaintiffs' paystubs demonstrate with certainty, however, that whenever Plaintiffs' hours fluctuated outside of a predetermined range, their pay fluctuated accordingly. The analysis demonstrates that based on these fluctuations, Defendants' assertion that they paid a "day rate" conflicts with reality.

Defendants further contend that Plaintiffs' wages were meant to cover all "hours actually worked," as that term has been construed by the federal courts. The analysis below shows that Defendants' intention throughout the relevant period was to compensate laborers only for their time spent doing physical labor at a jobsite (which Defendants believe amounts to roughly (8) hours per day). Thus, all additional hours actually worked by Plaintiffs must be treated as "off the clock" time, for which Plaintiffs are owed compensation at a rate of one and one-half times Plaintiffs' regular rate in weeks where they worked in excess of 40 hours.

**ARGUMENT**

I.  **PLAINTIFFS WERE NOT PAID A BONA FIDE DAY RATE**

   A.  **Legal Definition of Day Rate**

Under the Fair Labor Standards Act (FLSA) and its implementing regulations, employers are permitted to pay employees by a "day rate." 29 C.F.R. § 778.112. To constitute a day rate, the employee must be "paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job…." *Id*. Under a bona fide day rate structure, the "regular rate" used to find the employee's overtime rate is determined by dividing the total weekly pay received by the total weekly hours worked. *Id*. Importantly, employers paying a bona fide day rate are only required to pay employees an additional half-time premium on top of their regular rate for hours worked in excess of 40 per week. *Id*. When an employee is simply paid by the hour, on the other hand, the employer owes an additional time-and-a-half premium for each hour worked in excess of 40 per week. 29 U.S.C. § 207(a)(1).

   B.  **Defendants Failed to Pay Plaintiffs a Bona Fide Day Rate**

If an employer reduces employees' pay when they work fewer than a certain number of hours per day, the employees are no longer receiving a flat sum and therefore are not paid via a bona fide day rate. *Solis v. Hooglands Nursery, L.L.C.*, 2010 U.S. App. LEXIS 7198, at *2 (5th Cir. Apr. 7, 2010). When an employee's paystubs list hours worked and the employees hourly rate, that is circumstantial evidence that the employer was not actually paying employees a day rate. *Updite v. Delta Bev. Group, Inc.*, 2009 U.S. Dist. LEXIS 25507, at *14-15 (W.D. La. Mar. 24, 2009).

Here, Plaintiffs' standard paystubs will show that Defendants regularly reduced Plaintiffs' pay when they worked fewer than a certain number of hours per day. The paystubs

3

include the number of hours worked each day and pay deductions are seen whenever the number falls below a certain threshold. The testimony of Defendant Alfredo J. Battaglia ("Battaglia") and of certain Plaintiffs, excerpted below, bolsters the conclusion that Defendants did not pay a bona fide day rate:

(a) "[If] there was an incident where they didn't work a full day or they worked less than a full day or a partial day, I would make a note of that." Alfredo J. Battaglia Depo. 30:12-16.

(b) "If he worked less than a full day, he got less than a day's pay. That's my answer." Battaglia Depo. 72:12-16.

(c) "Q: Day after day, you got paid your daily rate, correct? A: No, they didn't pay for per day because, otherwise, if I worked three hours, they would have paid me for the day and they paid me for three hours." Ernesto Galeano Depo. 119:15-20.

(d) "Q: If the work ended in the middle of the day, did you get $80 or [did] you get less? A: Less. Q: Let's say the job ended halfway through the day, how much would you get? A: Was four hours of work. Q: So you would get half pay? A: The hours we worked." Hugo Rivas Depo. 35:24-25 – 36:1-8.

The evidence concerning Plaintiffs' work on prevailing wage projects lends further support to the conclusion that they were not paid a bona fide day rate. For all prevailing wage work, Defendant Battaglia submitted signed Payroll Reports to the Office of the Comptroller stating that Plaintiffs were paid on an hourly basis.

Based on the facts and law discussed above, Plaintiffs were not paid a "day rate" as such a payment structure was contemplated by the FLSA, despite Defendants' assertions to the contrary. Rather, Defendants intended to pay employees for an eight-hour workday and pay no compensation whatsoever for hours worked in excess of eight hours per day, including travel time, preparatory work, and additional physical labor on the jobsite.

4

## II. DEFENDANTS INTENDED TO PAY PLAINTIFFS FOR AN EIGHT-HOUR WORKDAY

### A. Procedure for Determining Regular Rate

When the employer has not satisfied the requirements for a day rate, the regular rate is determined based on 29 C.F.R. § 778.109, which states: "[t]he regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek *for which such compensation was paid*." (emphasis added). In other words, the regular rate calculation proceeds by "dividing weekly compensation by the number of hours for which that compensation is *intended*." *Solis v. Tally Young Cosmetics, LLC*, 2011 U.S. Dist. LEXIS 35333, at *23-24 (E.D.N.Y. Mar. 4, 2011) (emphasis added)[1]; *see also Shin Won Kang v. Inno Asset Dev., LLC*, 2011 U.S. Dist. LEXIS 47408, at *8 (E.D.N.Y. Jan. 28, 2011) (same); *Dingwall v. Friedman Fisher Assocs., P.C.*, 3 F. Supp. 2d 215, 221 (N.D.N.Y. 1998) (same). On the other hand, under a day rate scheme, the regular rate is simply determined by "totaling all the sums received at such day rates … and dividing by the total hours actually worked." 29 C.F.R. § 778.112. In other words, the default regular rate calculation revolves around employer intent, while the day rate calculation ignores employer intent entirely.[2] There is limited case law construing the employer intent component of 29 C.F.R. § 778.109, thus a comprehensive understanding of the parties' beliefs is particularly important.

---

[1] Certain cases incorrectly refer to 29 C.F.R. § 778.112 as the standard regular rate regulation. In actuality, 29 C.F.R. § 778.112 specifically concerns calculating the regular rate *under a day rate structure*. As discussed *infra*, 29 C.F.R. § 778.112 does not include the key intent component contained in 29 C.F.R. § 778.109, the default regulation for calculating the regular rate under all compensation structures not governed by more specific regulations.

[2] Calculating the regular rate for non-exempt employees paid by the week also relies on employer intent. 29 C.F.R. § 778.113. Interestingly, in that context there is a well-settled presumption that the salary is intended to cover 40 hours of work per week. *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005).

### B. The Best Evidence of the Number of Hours for which Defendants Intended to Pay Plaintiffs Are the Parties' Deposition Testimony and Plaintiffs' Paystubs

Battaglia's testimony demonstrates his intent to pay laborers for only eight (8) hours each day and his intent not to pay laborers before they arrived at the job site or after they left:

(a) "[Plaintiffs'] expected work day was an eight-hour period plus or minus … the expected work time was the normal eight-hour day for the most part." Battaglia Depo. 62:12-20.

(b) "Q: How long was the workday typically? A: Eight hours." Battaglia Depo. 30:17-19.

(c) "Q: In your view of the world, [laborers] weren't at work until they got to the [jobsite]? … A: Yes, yes, for the most part the answer would be yes." Battaglia Depo. 65:11-16.

(d) "[T]hey basically started when they got to the job … [a]nd started physically working. … Q: And in your view of the world, the laborers' work day ends when they leave the worksite, right? A: Yes." Battaglia Depo. 65:18-66:1.

The depositions of various Plaintiffs, as excerpted below, demonstrate that such individuals believed they were being paid for eight hours of work only, at an hourly rate that was determined by dividing the amount they were paid per day by eight. The excerpts also demonstrate Plaintiffs' understanding that they were not paid for work away from the job site:

(a) "Q: Why did you think you were getting paid for eight hours a day…? A: Eight hours because that is what we talked about the first day. He told me he was going to pay me for eight hours." Adonis Lobo Depo. 13:19-24.

(b) When Plaintiffs complained about not being paid for work at the jobsite outside of eight hours, Plaintiffs recall being told that that time was "his time" (meaning Plaintiffs received no compensation). Nilson Caballero Depo. 59:22-60:2; Genrrin Medina Depo. 18:6-10, 44:16-18; Galeano Depo. 108:6-13.

(c) "[Battaglia] pays me $80 per day, $10 an hour. Q: Who said it was $10 an hour? A: He told me. He said I'm not paying more than $10 an hour. That is $80 a day." Lundy Hemmings Depo. 12:12-15.

(d) "[W]hat I knew is, when I started, [my compensation] was $95 for eight hours." Medina Depo. 23:20-22.

6

 (e) "Q: Do you know if you were paid for the travel time to get to the job site? A: No, they didn't pay us for that." Medina Depo. 43:24 – 44:1.

While Battaglia and Plaintiffs consistently testify that the paid work day was eight hours long, Plaintiffs' paystubs (which list their hours worked) consistently show that Plaintiffs were punched into Defendants' timekeeping system for approximately ten hours per day. This discrepancy is further evidence that Plaintiffs are owed time-and-one-half, rather than half-time, for all hours worked above eight per day ("off-the-clock" hours).

 **C.** **Defendants Paid Drivers Differently from Laborers, Further Demonstrating that Defendants Intended to Compensate Plaintiffs for an Eight-hour Workday**

Employees who drove work vans to the jobsite were paid differently than the laborers who rode in the vans with them. Regarding drivers, Defendant Battaglia states: "The minute they get [to the garage], they're working till the minute they get back. … They work all day because they're driving…." Battaglia Depo. 61:5-9. Laborers, however, "started [working] when they got to the job." Battaglia Depo. 65: 18-20. A laborer's workday "ends at the jobsite." Battaglia Depo. 66:4-5.

Battaglia's explicit acknowledgement that drivers were paid for all hours from the time they arrived at the garage until the time they returned to the garage provides further evidence that laborers were paid for an eight-hour workday. The distinction between drivers and laborers clearly indicates the hours for which Defendants intended to pay Plaintiffs, and the hours for which they did not. In the language of the key regular rate regulation, it is those eight hours "for which such compensation is paid." 29 C.F.R. § 778.109.

7

  **D.** **Since Defendants Acknowledge that They Only Paid for an Eight-hour Day, It Would Be Illogical to Assume that Defendants Paid for All Hours Worked and Therefore Owe Only Half-time for Overtime Hours**

In the deposition excerpts above, (i) Plaintiffs recall being told that Battaglia believed time spent at a job site beyond eight hours was "his time" (meaning it was completely uncompensated); and (ii) Battaglia admits that time spent loading vans, cleaning tools, hitching trailers, and driving to job sites was always completely uncompensated. The intent component of 29 C.F.R. § 778.109 exists to ferret out situations exactly like this one, where employers claim after the fact that they paid for all hours worked but the facts reveal that their intent was to pay for an eight hour workday only. Defendants, who initially admitted they only compensated laborers for an eight hour workday, cannot now benefit by saying they paid for all hours worked.

**III. PLAINTIFFS PERFORMED COMPENSABLE WORK DURING THE TIME OUTSIDE OF THE EIGHT HOURS FOR WHICH DEFENDANTS PAID THEM**

Under the Department of Labor's well-settled "continuous workday" rule, an employee's compensable workday begins when the employee performs his first principal job activity and ends after his final principal job activity concludes. 29 C.F.R. § 790.6(a). A principal activity include all sub-activities that are an "integral and indispensable part" of it. *Steiner v. Mitchell*, 350 U.S. 247, 249 (1956).

Courts have held that a wide variety of tasks performed prior to an employee commencing his primary work function fall under the continuous workday rule. *See, e.g., Mitchell v. King Packing Co.*, 350 U.S. 260, 263 (1956) (butchers sharpening knives); *Steiner*, 350 U.S. at 256 (workers in battery manufacturing plant showering and donning safety equipment prior to shift); *Hajny v. Best Roofing of N.J., Inc.*, 2011 U.S. Dist. LEXIS 67763, at *7-8 (S.D.N.Y. June 22, 2011) (roofers loading tools and materials into truck, driving to worksite); *Gonzalez v. Bustleton Services, Inc.*, 2010 U.S. Dist. LEXIS 23158, at *30-31 (E.D.

8

Pa. Mar. 5, 2010); *O'Brien v. Encotech Constr.*, 2004 U.S. Dist. LEXIS 4696, at *7 (cleaning vehicles, hooking up trailers, then driving to worksites); *Dole v. Enduro Plumbing, Inc.*, 1990 U.S. Dist. LEXIS 20135, at *11-12 (C.D. Cal. Oct. 16, 1990) (laborers checking in, picking up tools, loading trucks).

Where an employee must "report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work." 29 C.F.R. § 785.38; *Hajny*, 2011 U.S. Dist. LEXIS 67763, at *7-8.

Defendants typically required Plaintiffs to report to the garage between 6:30 and 6:45 a.m. While at the garage, Plaintiffs loaded equipment onto trucks, gathered and repaired their tools, hitched up trailers, and obtained their job assignments for the day. Those activities were each of principal importance to individuals whose work involved traveling by work van to job sites and performing work that continuously relied on tools and other construction equipment. Then, having already completed various principal activities, Plaintiffs rode in company-owned work vans to the day's first jobsite. Similarly, at the end of the day Plaintiffs were required to return the work vans to the garage and frequently perform additional work.

Even if the above tasks are not deemed principal job activities, they are certainly "integral and indispensable" parts of laborers' principal activities; Defendants would be unable to provide construction services without tools, supplies, and workers who are present at the job site and aware of the day's assignments. Furthermore, even if the activities performed by laborers are not considered principal job activities or sub-parts of such activities, they are still activities performed after arriving at a required meeting place. Therefore, Plaintiffs' off-the-clock work is compensable under any of the relevant tests.

## IV. PLAINTIFFS' MEASURE OF DAMAGES

Based on the foregoing analysis, Plaintiffs are owed additional compensation at two separate rates.

(i) For hours worked beyond eight (8) per day, which were entirely uncompensated based on Defendants' intent ("off the clock" hours), Plaintiffs are owed time-and-one-half their regular rate (assuming they worked more than 40 hours in the week in question). Plaintiffs worked approximately two (2) off-the-clock hours each workday. Therefore, Plaintiffs worked approximately twelve (12) off-the-clock hours each six-day workweek.

(ii) For hours that were worked as part of an 8-hour day but that represent hours worked beyond forty (40) in one week, Plaintiffs are owed only an additional one-half time their regular rate. Plaintiffs were typically paid their regular rate for forty-eight (48) hours per week and thus are owed an additional half-time premium for eight (8) hours per week.

The following example illustrates how to calculate the damages owed to a given Plaintiff during a typical workweek (this example ignores the role of prevailing wage work not compensated at the mandatory prevailing wage):

*Weekly pay*: $720.
*Weekly compensated hours*: 48 (8 hours per day, 6 days per week).

*Hourly rate*: $15 ($720 divided by 48 compensated hours).
*Time-and-one-half rate for Off-the-clock Hours*: $22.50 ($15 x 1.5)
*Half-time rate for Unpaid Overtime Hours*: $7.50 ($15 x 0.5)

*Unpaid Off-the-clock Hours*: 12 (6 days x 2 off-the-clock hours per day).
*Unpaid Off-the-clock Damages*: $22.50 x 12 hours = **$270**.

*Unpaid Overtime Hours*: 8 (48 total compensated hours minus 40 hours correctly paid at regular rate)
*Unpaid Overtime Damages*: $7.50 x 8 = **$60**.

**Total weekly damages (exclusive of liquidated damages and interest provided for by New York Labor Law) = $330** ($270 Unpaid Off-the-clock Damages + $60 Unpaid Overtime Damages)

## **CONCLUSION**

The regular rate, used to calculate overtime compensation, is determined by dividing an employee's weekly compensation by the employee's number of compensated hours. Here, Defendants have admitted that they pay laborers for only eight hours of physical work at a jobsite. As such, hours worked in excess of eight each day must be compensated at time-and-one-half the regular rate.

Dated:  New York, New York
           March 7, 2012

        Respectfully submitted,

        PELTON & ASSOCIATES, PC
        *Attorneys for Plaintiffs*

        By:     /s/Brent E. Pelton
        Brent Pelton [BP-1055]
        111 Broadway, Suite 901
        New York, New York 10006
        Telephone: (212) 385-9700
        Facsimile:  (212) 385-0800
        pelton@peltonlaw.com

        Dorothy A. O'Brien
        Dorothy A. O'Brien Attorney & Counselor at Law PLC
        2322 East Kimberly Rd, Suite 100E
        Davenport, IA 52807
        Telephone: (563) 355-6060
        Facsimile:  (563) 355-6666