**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
JESUS ACOSTA ARTICA, et al.,

                                 Plaintiffs,                            **MEMORANDUM & ORDER**

           -against-

                                                      09-CV-3796 (RER)
J.B. CUSTOM MASONRY & CONCRETE, INC.,
et al.

                              Defendants.
-----------------------------------------------------------------X

-----------------------------------------------------------------X
JESUS ACOSTA ARTICA, et al.,

                                   Plaintiffs,
           -against-
                                                      11-CV-0842 (RER)
J.B. CUSTOM MASONRY & CONCRETE, INC.,
et al.

                              Defendants.
-----------------------------------------------------------------X

**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiffs commenced these related actions against Defendants on September 2, 2009 and

February 18, 2011, asserting claims of unpaid wages and retaliation under the Fair Labor

Standards Act (FLSA) and the New York Labor Law (NYLL), breach of contract, and assault and

battery.[1]   The case proceeded to a jury trial, at the end of which the jury was given a special

---

[1] During the course of the trial, both parties made several oral motions seeking judgment
as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure.  I refer the reader
to the court transcripts of March 16, 2012 and March 19, 2012 for my rulings.  (*See generally*
3/16/12 Tr. 644-725; 3/19/12 Tr. 874-81.)  I do note briefly, as it is relevant to the instant
motions, that I found Plaintiffs Lundy Hemmings, Luis Martin, and Balkrishna Birsen, unable to
satisfy their burden of proof as a matter of law, as these individuals failed to appear at trial.  (*See*

verdict sheet.  The jury returned a verdict in favor of Plaintiffs on nearly all of the claims.  The jury made specific findings of fact on liability and damages.  I then directed the parties to submit post-trial briefs calculating the damages due pursuant to the jury's verdict.  Now before me are Plaintiffs' motions for entry of judgement and for attorneys' fees and costs.

For the reasons discussed below, and in accordance with the jury's verdict, I find Defendants Alfredo "Joe" Battaglia, J.B. Custom Masonry & Concrete, Inc., J.B. Holding & Property Corp., and J.B. Residential, LLC jointly and severally liable, in an amount to be determined, for willful violations of the wage and hour provisions of the FLSA and the NYLL, as well as a total of $60,000 for violations of the anti-retaliation provisions under these laws.  Additionally, I find Defendant J.B. Custom Masonry & Concrete, Inc. liable for a total of $84,712.10 for prevailing wage damages.  I reserve entering judgement on Ernesto Galeano's claims of assault and battery, in anticipation of further briefing by the parties on these claims.  Finally, I find all remaining Defendants, including Alfredo "Joe" Battaglia, J.B. Custom Masonry & Concrete, Inc., J.B. Holding & Property Corp., J.B. Residential, LLC  Inc, and Salvatore Mannino[2] jointly and severally liable for a total of $427,565.40 for attorneys' fees and costs.

---

*generally* 3/16/12 Tr. 718, 722-23; *see also* 5/15/12 Tr. 507-11).  Additionally, I found that Plaintiffs failed to satisfy their burden as to the liability of Josephine Battaglia and John Battaglia on all claims (*see* 3/16/12 Tr. 667: 2-9), and Salvatore Mannino on all claims arising under the FLSA, the NYLL, and common law breach of contract (*see id.* 673: 20-24).  Finally, I found that Plaintiffs failed to establish the liability of Alfredo "Joe" Battaglia, J.B. Holding & Property Corp., and J.B. Residential, LLC on the prevailing wage claims.  (*See id.* 683:  20-25, 684: 1-5; 696: 12-25, 697:1-16.)

[2] Salvatore Mannino is a defendant in this matter only as to the claims of assault and battery against Ernesto Galeano.  In the event that judgement is not entered against Mr. Mannino on these claims, he is relieved of liability for attorney fees and costs.

2

## Background[3]

Plaintiffs worked as general laborers for Defendants, who are in the construction services business.  Plaintiffs allege that Defendants willfully violated the FLSA and the NYLL by failing to compensate them for off-the-clock and overtime hours.  Additionally, several Plaintiffs assert that Defendants retaliated against them for seeking to enforce their rights under the law.  In that vein, Plaintiff Ernesto Galeno also asserts against Defendants claims of assault and battery.

In addition to working on private jobs, several Plaintiffs performed labor pursuant to a public works contract entered into by Defendants and New York City, which entitled the laborers to the prevailing wage and supplemental benefits.  Several Plaintiffs assert common law breach of contract claims, alleging that Defendants failed to pay them the prevailing wage as required by the contract and the relevant law.

After a trial, the jury returned a special verdict in favor of Plaintiffs on nearly all of the claims.  Pursuant to the special verdict sheet, the jury made global findings that Defendants intended to pay Plaintiffs for an 8-hour work day; that Defendants willfully violated the FLSA and the NYLL; and that Defendants Alfredo "Joe" Battaglia, J.B. Custom Masonry & Concrete, Inc., J.B. Holding & Property Corp., and J.B. Residential, LLC, constituted a "single employer" under the law.  (*See* Docket No. 144.)  Additionally, the jury made findings relating to each Plaintiff's average length of employment; number of weeks, hours, and days worked; and wages

---

[3] For this section, I rely on Plaintiffs' 9/09/2009 Complaint, 12/30/2009 Amended Complaint, 02/18/2011 Complaint (*see* 09-CV-3796, Docket Nos. 1, 9; 11-CV-00842, Docket No. 1), and the jury's special verdict sheet (*see* 09-CV-3796, Docket No. 144)

actually paid.  *Id.*  Finally, the jury made findings as to each Plaintiff's retaliation claim and breach of contract claim, where relevant, and Ernesto Galeano's assault and battery claims.  *Id.*

## Discussion

Plaintiffs now move for entry of judgement and for attorney fees and costs.  I will address each motion in turn.

A.    <u>Damages</u>

        Pursuant to my direction, the parties have submitted post-trial briefs calculating damages in accordance with the jury's special verdict.  Defendants seek a reduced award, expressly arguing that Plaintiffs' calculations are flawed in two key respects, and tacitly challenging other assumptions underlying Plaintiffs' proposed award.  Upon careful review of the parties' proposals, I find significant errors in the parties' calculations, rendering it impossible for me to enter damage awards for the FLSA and the NYLL claims at this time.  I therefore must direct the parties to submit revised damage calculations to reconcile these errors.  Nonetheless, I will address Defendants' challenges to Plaintiffs' proposed damages, and the parties are to incorporate my rulings into their revised submissions.

        1.    *Accrual Period*

        As an initial matter, the parties agree that Plaintiffs are entitled to unpaid wage damages under the NYLL from September 2, 2003 until September 1, 2006, after which time such damages are calculated under the FLSA.  The parties dispute, however, the end date of the

4

accrual of damages.  Plaintiffs seek damages accruing to the entry of judgment.  As all of the

Plaintiffs had stopped working for Defendants by December 2010, Plaintiffs in practical effect

seek damages covering the entire employment period for each Plaintiff, as determined by the

jury.  Without citing to any authority, Defendants argue that the accrual of damages ends on

September 2, 2009, the date when Plaintiffs filed the first lawsuit against Defendants.

Additionally, Defendants contend that Plaintiffs failed to mitigate their damages by seeking

injunctive relief, all the while continuing to work for Defendants.

     As argued in their brief, Plaintiffs filed a second related action on February 18, 2011, at

which point all of the Plaintiffs had long ceased working for Defendants.  The second complaint

was broader in breadth, supplementing the claims alleged in the first complaint, and adding

additional Defendants.  (*Compare* 12/30/09 Am. Compl. *with* 02/18/11 Compl.)  Assuming

*arguendo* that damages stopped accruing on the date the complaint is filed, the Plaintiffs would

nonetheless be entitled to recover damages through the termination of their employment,

pursuant to either the first or second complaint.[4]

---

[4] In addition, courts have long held that damages accruing since the commencement of the
lawsuit are recoverable so long as they flow proximately and directly from the wrongful act
alleged in the complaint.  *See Norwest Bank Minnesota Nat. Ass'n v. F.D.I.C.*, 312 F.3d 447, 451
(D.C. Cir. 2002) ("[I]t is perfectly clear, that the proof of actual damage may extend to facts that
occur and grow out of the injury, even up to the day of the verdict.") (internal citation and
quotation marks omitted); *Rea v. Ford Motor Co.*, 560 F.2d 554, 557 (3rd Cir. 1977) ("[I]n
general, a court has the power to award damages occurring up to the date of the ultimate
judgment in the case.") (*citing Calhoun v. U.S.,* 354 F.2d 337, 339 (1965); *Lawlor v. Loewe*, 235
U.S. 522, 536 (1915) ("Damages accruing since the action began were allowed, but only such as
were the consequence of acts done before and constituting part of the cause of action declared
on."); *Cooper v. Sillers,* 30 App. D.C. 567, 572 (1908) ("It is well settled that, though damages
accrue after the institution of the suit, they may be recovered, provided they are the natural and
proximate consequences of the act complained of, and do not themselves constitute a new cause
of action. Actual damages in such case are assessable up to the date of the verdict.").  Here,
Plaintiffs seek damages flowing from Defendants' violations of the NYLL and the FLSA, as first

I therefore find that each Plaintiff is entitled to recover unpaid wages pursuant to the FLSA and the NYLL for their entire period of employment, as determined by the jury.  The parties are directed to submit their calculation proposals accordingly.

2. *Prejudgment interest*

The parties dispute the relevant date from which to calculate prejudgment interest on unpaid wages, which in turn is determinative of the number of months that have elapsed to date. Prejudgment interest is calculated only on that portion of unpaid wages that is not subject to liquidated damages pursuant to the FLSA, as both FLSA liquidated damages and prejudgment interest are designed to compensate employees for delay in payment.  *See Santillan v. Henao,* 822 F. Supp. 2d. 284, 298 (E.D.N.Y. 2011).  As prejudgment interest "can only be awarded on the basis of what is solely a state claim, it is appropriate to use the state interest rate."  *McLean v. Garage Mgmt. Corp*., 10-CV-3950 (DLC) & 09-CV-9325 (DLC), 2012 WL 1358739, at * 11 (S.D.N.Y. Apr. 19, 2012) (internal citation and quotation marks omitted).  Pursuant to sections 5001(b) and 5004 of the New York Civil Practice Law and Rules, I will calculate prejudgment interest at a rate of nine percent per annum from a "single reasonable intermediate date."

Although the parties agree that a midpoint of the accural of damages should form the basis of the "reasonable intermediate date," they dispute the relevant period from which to draw that midpoint.  Plaintiffs calculate the midpoint for each Plaintiff's employment during the NYLL period not covered by the FLSA, because it is only during that three-year period that interest on the NYLL-only claims accrues.  Consistent with their approach, Plaintiffs seek

alleged in their 2009 Complaint.

prejudgment interest only on their NYLL unpaid wages for that three-year period.  Defendants

urge the Court to take the midpoint of the entire period of employment, not just the time falling

exclusively under the NYLL.  In support of their argument, Defendants cite to *Santillan*, *supra*,

in which the court calculated prejudgment interest from "the midway point between when

plaintiffs began and ceased working for defendant."  822 F. Supp. 2d. 284, 298 (internal citations

and quotations omitted).

As a general matter, courts are afforded "wide discretion" in fashioning a reasonable date

from which to determine prejudgment interest.  *See Conway v. Icahn & Co., Inc.*, 16 F.3d 504,

512 (2d Cir. 1994) (internal citation omitted).  I am persuaded by the reasoning that underlies

Plaintiffs' determination of the midpoint.  Additionally, I find that Plaintiffs are correct in

arguing that *Santillan* is factually distinguishable, insofar that the plaintiff in that case asserted a

spread-of-hours claim, which is available only under the NYLL.  Such is not the case here.  I

therefore find Defendants' reliance on *Santillan* unavailing.

As I find that Plaintiffs' proposed method of calculating the midpoint is reasonable, as

well as logically sound, I adopt their approach for determining the "single intermediate date."

The parties are directed to submit revised damage calculations based on Plaintiffs' proposed

midpoint.


3.     *Liquidated Damages*

Although addressed only summarily, if at all, in their briefs, the parties appear to dispute

the method of calculating liquidated damages.  New York law allows for a six-year statute of

limitations to recover unpaid wages.  N.Y. Lab. Law § 663(3).  Where Defendants' violations are

willful, as the jury found here, the FLSA provides for a three-year statue of limitations. 29 U.S.C. § 225. Additionally, for willful violations, Defendants are required to pay 100% of the unpaid wages in liquidated damages, and 25% of the unpaid wages in liquidated damages under the NYLL. 29 U.S.C. § 216(b); N.Y. Lab. Law §663(1) (in effect prior to Apr. 9, 2011).[5] Plaintiffs' calculations assume that they are entitled to recover simultaneously liquidated damages under the FLSA and NYLL.[6] (*See* Mem. of Law in Supp. of Pls. Mot. for Entry of J. and Award of Fees and Costs ("Pls. Mot."), Exhs. B, C.) In contrast, Defendants calculate liquidated damages under the NYLL and the FLSA exclusively. (*See* Reply in Opp'n ("Defs. Opp'n"), Exhs. B, C, Docket No. 144.) Accordingly, Defendants apply a rate of 100% to unpaid wages under the FLSA and 25% to unpaid wages under the NYLL. *Id.*

Although there is a split in this Circuit, most courts hold that a plaintiff is entitled to recover both federal and state liquidated damages for the same unpaid wage violation. *See Li Ping Fu v. Pop Art Intern. Inc.*, 10-CV-8562 (DLC) (AJP), 2011 WL 4552436, at * 4 (S.D.N.Y. Sep. 19, 2011) (collecting cases). "The majority view is that such a simultaneous recovery is permissible because liquidated damages under the FLSA and the NYLL serve different purposes. . . while liquidated damages under the FLSA are considered compensatory, essentially serving as a form of prejudgment interest, liquidated damages under the NYLL are punitive." *Gurung v.*

---

[5] In April of 2011, the New York Wage Theft Prevention Act ("WTPA") became effective, providing for liquidated damages equal to 100% of the unpaid wages. *See* N.Y. Lab. Law § 663(1) (McKinney 2011).

[6] In their brief, Plaintiffs argue that "Defendants are required to pay 100% liquidated damages on top of wages owed under the FLSA, and 25% liquidated damages on top of wages owed under the NYLL." (Pls. Mot. at 3) (internal citation omitted). Plaintiffs later affirm, incorrectly, that they calculate NYLL liquidated damages by multiplying 25% of exclusively NYLL damages. (*See* Pls. Mot. at 4.)

*Malhotra*, 10-CV-5086 (VM), 2012 WL 983520, at * 7 (S.D.N.Y. Mar. 16, 2012) (*citing Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 261–62 (S.D.N.Y.2008). *But see Pineda-Herrera v. Da-Ar-Da, Inc.*, 09–CV–5140 (RLM), 2011 WL 2133825, at * 4-5 (E.D.N.Y. May 26, 2011) ("[B]oth forms of damages seek to deter wage-and-hour violations.  Both do so in a manner calculated to compensate the party harmed.").

As Defendants have not proffered any arguments to persuade me to reject the majority view, and indeed have failed to address the issue of liquidated damages at all in their opposition brief, I will adopt the line of cases that allows plaintiffs to recover liquidated damages under both the NYLL and the FLSA.  In preparing their revised calculations, the parties are to calculate liquidated damages in accordance with this Order.

3.    *Failure to Discount FLSA Damages & Other Errors*

In contemplating the interplay between the FLSA and breach of contract claims,  I made it clear to the parties my expectation that, should the jury award prevailing wage damages to a particular Plaintiff, the damages awarded to that Plaintiff under the FLSA would need to be offset accordingly.  (Tr. 3/16/12 Tr. 724: 1-25; 3/22/12 Tr. 1064: 2-25, 1065: 1-9)   To allow otherwise would clearly be double recovery.  By way of illustration, the jury found that Rene Alejandro Cabrera ("Cabrera") worked from April 2007 to October 2010.  Based on those dates, the parties determined the FLSA damages.  (*See* Special Verdict Sheet, Question No. 4.)  The jury also found that Cabrera had established that he worked on the prevailing wage job from June 2009 to June 2010, accruing $29,931.23 in unpaid wages for hours worked exclusively on the public works project.  (*Id.* at Question No. 39.)  To prevent double recovery, the FLSA damages

awarded to Cabrera for the period of June 2009 to June 2010 should have been offset

proportionate to the number of hours he worked on the public works contract.  The parties'

damages calculations do not account for such considerations, despite my explicit instructions to

do so.

      Moreover, in reviewing Plaintiffs' damage proposals, I discovered other errors in the

Plaintiffs' Summary of Employment (Pls. Mot., Exh. A), which is their chief exhibit from which

they derive other calculations.[7]  Specifically, the precise method by which counsel calculated

Plaintiffs' FLSA Weeks (column C1) and NYLL Weeks (column E1) is not entirely clear.[8]  What

is more, some of the calculations are simply wrong.  For example, Plaintiffs represent that the

jury determined Jaime Rivas' dates of employment from 9/2003 to 10/2010, when in fact, the

jury found that Rivas was employed by Defendants from 9/2003 to 12/2010.  (*Compare* Pls.

Mot., Exh. A *with* Special Verdict Sheet, Question No. 5.)  Additionally, it is unclear what date

Plaintiffs have used to calculate damages for Tony Lobo.  According to their summary, Tony

Lobo's FLSA employment period would run from 9/2006 to 9/2007, but Plaintiffs list his total

recoverable work period as 54.6 weeks.[9]  As another example, Noslin Caballero, Jose Ruiz, Hugo

---

[7]  While it appears that the content of Defendants' corresponding Summary of Plaintiffs' Employment (Defs. Opp'n, Exh. A) is internally consistent, I am unable to adopt their table, as I reject the substantive arguments that underlie their calculations.

[8]  Despite much effort, I was unable to achieve the same number of FLSA Weeks and NYLL Weeks in several instances.  In their revised submissions, Plaintiffs are directed to provide the Court with the precise method used to calculate these figures.

[9]  It may be that Plaintiffs are calculating the recovery period based on the jury's finding that Tony Lobo began working in 3/2006 and the FLSA period ran through 9/15/2007.  (*See* Special Verdict Sheet, Question No. 9.)  However, such an assumption is not apparent on the face of the document.  Moreover, if Plaintiffs are intending to revise their hours to conform to the Special Verdict Sheet, then I advise them to do so for all Plaintiffs, including those whose

Rivas, and Genaro Ruiz all worked the entire three years of the NYLL period, which is a total of 156 weeks, but Plaintiffs claim only 152 weeks. Finally, Plaintiffs found that Milton Lobo worked 32 Adjusted NYLL Weeks, which does not comport with the formula described in their brief.

In light of the parties' failure to offset the prevailing wage damages from the FLSA damages, as well as the uncertainty surrounding Plaintiffs' damage calculations, I direct Plaintiffs' counsel to submit revised calculations (Pl. Mot., Exhs. A-D) no later than June 13, 2012. Defendants' reply, if any, is due on June 22, 2012.

B.      Attorney Fees and Costs

Plaintiffs move for an award of attorney fees in the amount of $572,822.50 and costs in the amount of $28,133.23 through March 30, 2012.[10]   Defendants argue that the Court should deny Plaintiffs' motion for attorney fees and costs as unreasonable and unsupported by the record, or alternatively, reduce the amount of the fees awarded.

_____

recovery would be decreased.

[10]   These figures represent Plaintiffs' latest demand, as provided in their May 23, 2012 letter to the Court. (*See* Docket No. 153). Also in their letter, Plaintiffs request an additional $15,013.75, representing reduced attorney fees incurred from March 31, 2012 through May 23, 2012. *Id*. I deny this request without prejudice to renewal, as a fee award for this time would be prejudicial to Defendants, who have not had a formal opportunity to respond. Additionally, upon review of the time record, I note that a portion of the fees requested is for time spent in preparing an opposition to Defendants' post-trial motions. As the briefing schedule is ongoing, and the outcome of these motions is uncertain, it is still too premature to consider an award of attorney fees in connection to the same. Finally, I question the reasonableness of expending several hours contacting clients as to the case status, given the minimal developments in the case since the close of trial.

Both the FLSA and the NYLL are fee-shifting statutes that entitle plaintiffs to recover reasonable attorney fees and costs of the action from the defendant. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663.1. As the moving party, Plaintiffs bear the burden of "establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Savoie v. Merchants Bank*, 166 F.3d 456, 463 (2d Cir. 1994) (internal citation and quotation marks omitted). In applying for fees and costs, "any attorney . . . must document the application with contemporaneous time records. These records should specify, for each attorney, the date, the hours expended, and the nature of the work done.'" *Thomas v. U.S. N.Y State*, 02-CV-5746 (HBP), 2011 WL 6057898, at * 6 (S.D.N.Y. Dec. 5, 2011) (quoting *Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983)).

The Second Circuit has instructed district courts to evaluate the reasonableness of attorneys' fee award under the "presumptively reasonable fee" standard, which is equal to a reasonable hourly rate multiplied by a reasonable number of hours expended. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections,* 522 F.3d 182, 190 (2d. Cir. 2008). The reasonable hourly rate is "the rate a paying client would be willing to pay," bearing in mind "that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.* District courts have considerable discretion in determining the reasonable rate, but should "bear in mind *all* of the case-specific variables that . . . have [been] identified as relevant to the reasonableness of attorneys' fees," including the level of skill required to perform the legal service properly, the attorney's customary hourly rate, the amount involved in the case, and the experience, reputation, and ability of the attorneys. *Id.* at 186 n.3, 190 (emphasis in original) (internal citations omitted). Additionally, district courts are

12

to apply a "presumption in favor of the forum rule," *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 174, 175 (2d Cir.2009), such that courts "should generally use the hourly rates employed in the district in which the reviewing court sits . . . ." *Id.* at 174 (internal quotation marks omitted).  Plaintiffs have not proffered any arguments to overcome this presumption.  *See Germain v. County of Suffolk*, 269 F. Supp. 2d. 408, 414 (S.D.N.Y. 2003).  I therefore use the prevailing hourly rates for attorneys practicing in the Eastern District of New York.

      1.    *Reasonable Hourly Rate*

Plaintiffs seek a total of $572,822.50 in attorneys' fees.  As for individual hourly rates, Plaintiffs seek the following: $425 for both Brent E. Pelton, a principle of Pelton & Associates PC, and Dorothy A. O'Brien, a principle of Dorothy A. O'Brien Attorney and Counsel at Law PLC; $225 for Nicholas Maxwell as an attorney; $150 for Taylor Graham as a law clerk and $225 once he earned his Juris Doctor degree; and $125 for paralegal assistants.  Defendants argue for reduced hourly rates in the amount of $200 for Brent Pelton; $225 for Dorthory O'Brien; $100 for Taylor Graham; and a range of $50-$60 for paralegal assistants.

The hourly rates requested by Plaintiffs are above the general range of rates received by attorneys in the Eastern District of New York.  Courts in this district have approved hourly rates ranging from $200 to $400 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants.  *See, e.g., Board of Trustees of the Insurance, et al v. Liberty Signs, Inc.,* 10-CV-1737 (ADS) (AKT), 2011 WL 4374519 (E.D.N.Y. Aug. 30, 2011) (collecting cases); *Vazquez v. Ranieri Cheese Corp.*, 07-CV-0464 (ENV) (VVP), 2011 WL 554695, at * 2 (E.D.N.Y. Feb. 7, 2011) (*citing Luca v. County of Nassau*, 698 F. Supp.

2d. 296, 305-06 (E.D.N.Y. 2010); *see also Santiago v. Coco Nail HB, Inc.,* 10-CV-3373 (ILG) (MDG), 2012 WL 1117961 (E.D.N.Y. Mar. 16, 2011) (collecting cases) (finding the prevailing hourly rates for partners in this district between $300 and $400).  I therefore find that a reduction in the hourly rates is warranted, although I reject Defendants' proposed rates as unreasonably low, given the complexity of the case, the experience and skill of the attorneys, and the nature of the litigation.

Accordingly, I will award fees at a rate of $400 per hour for Dorothy O'Brien and $350 per hour for Brent Pelton, who have practiced law for about 30 years and 10 years, respectively. (*See* Reply Mem. of Law in Further Supp. of Pls. Mot. for Entry of Default J. and Award of Fees and Costs ("Pls. Reply Mem."), Exh. A, ¶ 2; Decl. of Brent E. Pelton, Esq. in Supp. of Pls. Mot. for Entry of J. and Award of Fees and Costs ("Pelton Decl.") ¶¶ 32, 36).  I will also award fees at the rate of $150 per hour for Nick Maxwell, who graduated from the University of Texas in 2011 and worked at Pelton & Associates from approximately September 2011 through February 2012. (*see* Pelton Decl. ¶41.)  I find it appropriate to award fees for Taylor Graham at a rate of $100 per hour as a law clerk; $150 per hour after he received his Juris Doctorate in May 2011; and $200 per hour after he was admitted pro hac vice on March 7, 2012, recognizing his unique contribution at trial given the length of time he had worked on the case.  (*See* Pelton Decl. ¶ 37; 09-CV-3796, Docket Entry dated Mar. 7, 2012).  Finally, I award $100 per hour for paralegal assistants.  I have decided to award an enhanced rate in some instances because of the complexity and vigorous litigation of the case, the inherent difficulties of litigating a collective action of this size, and the logistical difficulties that come with a case involving numerous plaintiffs, some of whom live abroad, and most of whom do not speak the English language.

2.    *Reduction of Hours*

Plaintiffs seek a total of 1818.90 hours for work performed by Pelton & Associates and 244.5 hours for worked performed by Dorothy O'Brien through March 30, 2012.  Defendants argue that Plaintiffs' hours should be "substantially reduced" as excessive, duplicative, unnecessary, and vague.  In particular, Defendants maintain that Plaintiffs counsel should not be compensated for time spent in connection with separate actions against Defendants, seeking advice from outside counsel, and working on unsuccessful claims.

The Court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended."  *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir.1994).  When examining the hours billed, a court should determine the reasonableness of the hours expended by analyzing "the value of the work product of the specific expenditures to the client's case."  *Tr. of the Rd. Carriers Local 707 Welfare Fund v. Goldberg,* 08-CV-0884 (RRM) (MDG), 2009 WL 3497493, at *9 (E.D.N.Y. Oct. 28, 2009) (internal citations omitted).  The Court should exclude "excessive, redundant, or otherwise unnecessary hours" from the fee award.  *Quaratino v. Tiffany & Co.,* 166 F.3d 422, 425 (2d Cir. 1999) (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 569-70 n.4 (1986)).  "In lieu of making minute adjustments to individual timekeeping entries, a court may make across-the-board percentage cuts in the number of hours claimed, 'as a practical means of trimming the fat from a fee application.'" *Heng Chan v. Sung Yue Tung Corp*., 03-CV- 6048 (GEL), 2007 WL 1373118, at * 5 (*quoting In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir.1987)).

As a general observation, I find that counsel billed time for tasks that are inadequately

described.  *See J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, 03-CV-1548 (GBD) (AJP), 2008 WL

4613752, at * 4 (S.D.N.Y. Oct. 17, 2008) ("A time entry is vague if it lacks 'sufficient specificity

for the Court to assess the reasonableness of the amount charged in relation to the work

performed.") (internal citation and quotation marks omitted).  In particular, numerous entries by

VCG (apparently paralegal Victoria Glavin) lack the necessary detail to interpret the substance of

the work performed.  (*See, e.g.,* Pls. Mot., Exh. E ("Time Record"), 3/28/11 Entry for VCG

("Deposition Prep"); 8/19/11 Entries for VCG ("Telephone calls to JB Construction Plaitniffs re:

Trial Prep.")  Additionally, in several instances, counsel employed "block billing," stating the

total daily time spent on the case.  (*See e.g.,* Time Record, 11/06/11 Entry by BEP; 3/8/12 Entry

by BEP; 3/11/12 Entry by RAC); *see also Rodriguez ex rel. Kelly v. McLoughlin*, 84 F. Supp. 2d

417, 425 (S.D.N.Y. 1999).  While such a practice is not prohibited, it does make it "difficult to

determine whether, and/or the extent to which, the work done by . . . attorneys is duplicative or

unnecessary. . .," warranting across-the-board percentage reductions.  *See J.S. Nicol, Inc. v.

Peking Handicraft, Inc.*, 2008 WL 4613752, at * 4 (*quoting Sea Spray Holdings, Ltd. v. Pali Fin.

Group, Inc.*, 277 F. Supp. 2d 323, 326 (S.D.N.Y. 2003).

     Moreover, I find that a reduction of hours is warranted in light of Defendants' specific

challenges.  I will address only Defendants' challenges to fees for time spent on unrelated matters

and unsuccessful claims.[11]  First, Defendants challenge counsel's claim for fees in connection to

the EEOC action brought against Defendants on behalf of Peter Vittucci and the "criminal

matter" filed against Defendants.  I find that Defendants' argument has some merit, particularly

---

[11]  Defendants challenge the time Plaintiffs' counsel spent seeking advice from outside
counsel on the retaliation claim.  As far as I can tell, the amount of time billed is minimal (*see*
Time Record, 4/14/10 Entry by BEP), and a reasonable use of time.

with regard to the EEOC matter.  Although Plaintiffs contend that the "work performed in connection with the EEOC is inextricably intertwined" with Vittuci's retaliation claim (*see* Pls. Reply Mem. at 6), the time records reflect hours devoted exclusively to the EEOC claim.  (*See, e.g.,* Time Record, 7/6/10 Entry by VCG;  10/6/10 Entry by VCG; 10/11/10 Entry by VCG; and 10/14/2010 Entry by VCG.)  I therefore find that a reduction of hours is appropriate to account for hours spent exclusively on unrelated claims.

Second, Defendants argue that Plaintiffs' attorneys' fees should be reduced by thirteen percent to account for the three plaintiffs who did not appear at trial.[12]  Plaintiffs contend that they are entitled to recover fees in connection to these Plaintiffs, notwithstanding the dismissal of their claims, because they achieved "substantial success in the litigation" and all of the plaintiffs claims for relief were intertwined.  (Pls. Reply Mem. at 7.)  In support of their argument, Plaintiffs cite caselaw in which the litigants, having asserted a number of different claims, prevailed on only some of them.  *See LeBlanc Sternberg v. Fletcher,* 143 F.3d 748, 762 (2d. Cir. 1998).  While I recognize Plaintiffs' argument carries some force here, I find it has limits, as the three plaintiffs at issue did not merely fail on some claims, but effectively faced outright dismissal of their entire case.  Instead, I am more persuaded by the general reasoning of the court in *Adorno v. Port Authority of N.Y,* 685 F. Supp. 2d 507 (S.D.N.Y. Feb. 19, 2010), a muti-plaintiff litigation, where the jury ruled against five of the seven plaintiffs, and the court had

---

[12] Additionally, Defendants argue that I should reduce the award for time spent on individual claims that were unsuccessful, either because they were dismissed, or because the jury found in favor of Defendants.  I find their argument unavailing.  *See LeBlanc Sternberg v. Fletcher,* 143 F.3d 748, 762 (2d. Cir. 1998) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434-35) (1983) ("When a plaintiff has achieved substantial success in the litigation but has prevailed on fewer than all of his claims, the most important question in determining a reasonable fee is whether the failed claim was intertwined with the claims on which he succeeded.").

dismissed certain claims.  *Id.* at 516.  As here, plaintiffs in *Adorno* objected to a fee reduction for lack of success because of the intertwined nature of the successful and unsuccessful claims.  *Id.* The *Adorno* court found plaintiffs "intertwining" argument unpersuasive.[13]  *Id.*  Nonetheless, I recognize that Plaintiffs' counsel was devoted significantly to the litigation as a whole, rather than claims of individual Plaintiffs, rendering a strict proportion reduction inappropriate.  *Id*. at 518.

In light of the above, I will apply a fifteen percent across-the-board reduction to Plaintiffs' hours.  Accordingly, I award attorneys' fees as follows:

### Attorney Fees through March 30, 2012

| Individual | Hours | Less 15% | Rate | Total |
|---|---|---|---|---|
| Dorothy A. O'Brien | 244.5 | 207.83 | $400 | $83,130 |
| Brent Pelton | 673.8 | 572.73 | $350 | $200,455.50 |
| Taylor Graham (Law Clerk) | 53.3 | 45.31 | $100 | $4,530.50 |
| Taylor Graham (Law School Graduate) | 179.3 | 152.41 | $150 | $22,860.75 |
| Taylor Graham (3/7/12 and after) | 141.2 | 120.02 | $200 | $24,004 |
| Victoria Galvin | 367.7 | 312.55 | $100 | $31,254.50 |
| Nicholas Maxwell | 40.1 | 34.09 | $150 | $5,112.75 |
| Ricardo Castro | 272.8 | 231.88 | $100 | $23,188 |
| Salomon Mejia | 90.7 | 77.10 | $100 | $7,709.5 |
| | | | TOTAL | $402,245.50 |

---

[13] The *Adono* court also observed that "[p]laintiffs have not cited any authority for the proposition that in a multi-plaintiff case, where some plaintiffs succeed and some fail, counsel may be compensated for the time spent prosecuting the unsuccessful plaintiffs' claims."  *Id.* at 517.

3.     *Costs*

Plaintiffs seek costs in the amount of $28,133.23.  An award of attorney's fees should

"'include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged

to their clients.'"  *Cesario v. BNI Const., Inc.*, 07-CV-8545 (LLS) (GWG), 2008 WL 5210209, at

*10 (S.D.N.Y. Dec. 15, 2008) (*quoting LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d

Cir.1998)).  Courts have found that expenses reasonably charged to a client might include

express mail, long distance telephone, local travel, and messenger services.  *See Sulkowska v.*

*City of N.Y*, 170 F. Supp. 2d 359, 307 (S.D.N.Y. 2001) (internal citation omitted).

As a general matter, I find Plaintiffs' record of costs vague.  Several entries are only

categorically described as "Copying" or "Local Travel - Taxi" without parameters by which to

assess the reasonableness.  (*See generally* Pl. Mot., Exh. F ("Record of Costs").)  For example,

while photocopying expenses are recoverable, such costs are generally reimbursable only at a rate

charged by a commercial vendor.  *King Vision Pay-Per-View Corp., Ltd. v. Tardes Calenas*

*Moscoro, Inc.*, 01-CV-9775 (JGK) (JC), 2004 WL 473306, at * 5 (S.D.N.Y. Mar. 12, 2004).  As

Plaintiffs provide only a flat fee for copying, without indication of the number of pages or the

rate per copy, I am left to speculate on the reasonableness of the expense.  (*See, e.g.,* 9/17/10

Entry by BEP ("Copying Copying Discovery & Mailings to Plaintiffs"); 11/01/11 Entries (two)

by BEP ("Copying").)  In addition to vagueness, the entries are all logged under BEP, making it

difficult to cross reference the costs against the hours billed in the Time Records.

In that regard, I note specifically Plaintiffs' costs for working meals and foodstuffs.

While working meals may be a reasonable cost as a general matter, Plaintiffs fail to provide

important detail, such as the number of individuals participating in the meal, to assess the

reasonableness of these expenses. Moreover, I would be remiss not to call attention to a few notable entries. For example, Plaintiffs made seven meal entries on 3/12/2012 alone, totaling $235.87, and on 1/25/12, billed $200.00 for meals and travel to Brooklyn to meet the District Attorney. Given the proximity of Brooklyn to Manhattan, where Plaintiffs' counsel are located, such a cost appears unreasonable on its face.

Finally, I find that several entries raise concern about the accuracy of the document as a whole. For example, a 2/23/2011 entry documents $700 expended for "filing fees for two complaints," but I note that one of those complaints was filed almost a year-and-a-half earlier. While I have no doubt that Plaintiffs did indeed pay $700 in filing fees, the apparent inaccuracy casts some doubt as to the integrity of the document. Such a concern cannot be overstated, as Plaintiffs rely solely on this record to establish their costs, having failed to provide receipts, invoices, or other documentation. Additionally, I review with skepticism entries such as those on 10/14/2012, where Plaintiffs twice billed $16.30 for "shipping" and "mailing" pre-trial binders to Defendant. I also have concern about the entries on 7/7/11 and 7/18/11 for deposition related costs, both for the amount of $809. Given the lack of detail that plagues the entire document, I am unable to determine whether such entries are the product of oversight, or accurate billing.

For these reasons, I will apply a ten percent across-the-board reduction to Plaintiffs' costs. Accordingly, I award Plaintiffs $25,319.91 for costs incurred in prosecuting this case.

C.   Awards Determined by the Jury

The jury made damages findings as to Plaintiffs' breach of contract and retaliation claims, where relevant, and Ernesto Galeano's assault and battery claims. I will adopt the jury's damage

awards as to each Plaintiffs' breach of contract and retaliation claims.  Accordingly, I will award a total of $60,000 for punitive damages relating to the retaliation claims brought by Plaintiffs Peter Vitucci and Rene Alejandro Cabrera, and $84,712.10 for breach of contract damages.[14]

As for damages relating to Plaintiff Ernesto Galeano's claims for assault and battery, I reserve entry of judgement until further briefing by the parties.  In their post-trial motion, Defendants challenge the award of punitive damages as excessive and unsupported by caselaw. (*See* Defs. Mot. for J. as a Matter of Law or, in the Alternative, for a New Trial, and Mem. in Supp. at 11-12, Docket No. 152.)  In particular, Defendants cite to caselaw for the proposition that a plaintiff is not entitled to recover punitive damages absent a finding of actual damages.[15] Here, the jury found Defendant Salvatore Mannino liable for the claims of assault and battery against Ernesto Galeano, awarding $80,000 in punitive damages, but no corresponding damages for pain, suffering and emotional distress, or loss of earnings.  (*See* Special Verdict Sheet, Question No. 59.)  In light of this issue, I decline to enter judgement as to the assault and battery claims pending further briefing by the parties, either in the course of post-trial motions, or pursuant to a separate briefing schedule ordered by the Court.

### Conclusion

In light of the foregoing, I hereby find: (1) Defendants Alfredo "Joe" Battaglia, J.B.

---

[14] On the Special Verdict Sheet, Jose Ruiz is listed twice in the section on breach of contract (prevailing wage).  (*See* Special Verdict Sheet, Question Nos. 44-45, 50-51.)  The jury made identical findings both times.  Accordingly, I deduct $5,184.56 from the total damages to prevent double recovery for Jose Ruiz.

[15] I note that the briefing scheduling is ongoing, with Defendants' reply due on 6/8/12. (*See* 09-CV-3796, Notice dated 5/18/2012.)

Custom Masonry & Concrete, Inc., J.B. Holding & Property Corp., and J.B. Residential, LLC jointly and severally liable, in an amount to be determined, for unpaid wage damages; (2) Defendants Alfredo "Joe" Battaglia, J.B. Custom Masonry & Concrete, Inc., J.B. Holding & Property Corp., and J.B. Residential, LLC jointly and severally liable for a total of $60,000 for punitive damages relating to Plaintiffs' retaliation claims; (3) Defendant J.B. Custom Masonry & Concrete, Inc. liable for $84,712.10 for prevailing wage damages; and (4) all remaining Defendants, including Alfredo "Joe" Battaglia, J.B. Custom Masonry & Concrete, Inc., J.B. Holding & Property Corp., J.B. Residential, LLC  Inc, and Salvatore Mannino[16] jointly and severally liable for $427,565.40 for attorneys' fees and costs.  I reserve entering judgment as to Ernesto Galeano's claims of assault and battery, pending further briefing by the parties.


**Dated: June 4, 2012**
        **Brooklyn, New York**


                        *Ramon E. Reyes Jr.*
                        **Ramon E. Reyes, Jr.**
                        **United States Magistrate Judge**

---

[16] Subject to the caveat set forth in footnote 2 of this Order.

22