```
            UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF NEW YORK




----------------------------X
                            :
JESUS ACOSTA ARTICA,        :
et al.,                     :    09-CV-3796 (RER)
             Plaintiffs,    :
                            :    August 10, 2012
                            :
             V.             :    Brooklyn, New York
                            :
J.B. CUSTOM MASONRY &       :
CONCRETE, INC., et al.,     :
             Defendant.     :
----------------------------X


         TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE
         BEFORE THE HONORABLE RAMON E. REYES, JR.
            UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:          BRENT PELTON, ESQ.
                            TAYLOR GRAHAM, ESQ.




For the Defendant:          THOMAS GEARON, ESQ.


Audio Operator:


Court Transcriber:          ARIA SERVICES, INC.
                            c/o Elizabeth Barron
                            102 Sparrow Ridge Road
                            Carmel, NY 10512
                            (845) 260-1377



Proceedings recorded by electronic sound recording,
transcript produced by transcription service
```

```
1              THE CLERK:  Civil cause for pre-motion

2    conference, docket number 09-CV-3796 and 11-CV-842,

3    Artica v. J.B. Custom Masonry & Concrete, Inc.

4              Counsel for plaintiff, please state your

5    name for the record.

6              MR. PELTON:  Brent Pelton, Pelton &

7    Associates.

8              MR. GRAHAM:  Taylor Graham, Pelton &

9    Associates.

10             THE CLERK:  Counsel for the defendant?

11             MR. GEARON:  Law Office of Thomas Gearon by

12   Thomas Gearon, for the defendant.

13             THE COURT:  Good afternoon, gentlemen.

14   Please be seated.

15             MR. GEARON:  Good afternoon, your Honor.

16             THE COURT:  All right.  I was expecting to

17   see Mr. Rubinstein today.  Where is he, do we know?  Do

18   you know where he is?

19             MR. GEARON:  I spoke to Mr. Rubinstein

20   yesterday, your Honor, or the day before.  He had said

21   he was going to post something on Pacer as a response.

22   I mentioned the letter to him.  That's all I know at

23   the moment.

24             THE COURT:  All right.  Well, he did post

25   something on ECF, did not request any extension or
```

1    adjournment.  Actually, he requested an extension of

2    the time to respond to the post-judgment discovery

3    requests but he did not request an adjournment of this

4    pre-motion conference, so I thought he would be here.

5    But if he's not here, he can't be heard on scheduling

6    matters, so his loss.

7              Mr. Pelton, this is plaintiffs' application,

8    so why don't you tell me what it is you want, and then

9    we'll hear from Mr. Gearon.

10             MR. PELTON:  Yes, your Honor.  Plaintiffs

11   would like to depose Joe Battaglia and the other

12   judgment debtors as to assets, and we'd like timely

13   responses to our interrogatory requests and document

14   demands.  These demands were sent out sometime ago.

15   The responses were due, I want to say the 24th or so of

16   July.  We've extended the deadline.  They're

17   significantly past due.

18             We were supposed to have a deposition of Joe

19   Battaglia yesterday.  I called to confirm that

20   deposition and was told by both by Mr. Rubinstein and

21   Mr. Gearon that he was not being produced.  So we'd

22   like to have him -- we'd appreciate a court order

23   requiring that he appear for his deposition.

24             We're concerned that Kenneth Rubinstein is

25   going to be a necessary witness in this matter.  On his

1   web site, assetlawyer.com, he --

2              THE COURT:  I've seen -- I've seen the web

3   site.  I know what your argument is.

4              MR. PELTON:  He talks about --

5              THE COURT:  His web site is really not the

6   important thing.  The important thing is the fact that

7   he served as the attorney for the creation of the

8   various family limited partnerships, and perhaps was

9   the attorney that facilitated the transfer of the

10  property to those limited partnership.  That's your

11  argument, right?

12             MR. PELTON:  He certainly was the attorney

13  who created that --

14             THE COURT:  Okay.

15             MR. PELTON:  -- and facilitated the

16  transfer.

17             THE COURT:  Why does that make him a witness

18  in this case?

19             MR. PELTON:  Because he's going to argue

20  that -- he would argue that these family limited

21  partnerships were set up for estate tax purposes.

22             THE COURT:  That's irrelevant, the reason.

23  Intent is irrelevant, correct?  Under the statute, if

24  I'm not mistaken, fraudulent conveyance under New York

25  Law Section 273-A of Debtor/Creditor Law, it says,

1    "Every conveyance made without fair consideration, when

2    the person making it is a defendant in an action for

3    money damages, or a judgment in such an action has been

4    docketed against him, is fraudulent as to the plaintiff

5    in that action, without regard to the actual intent of

6    the defendant, if, after final judgment for the

7    plaintiff, the defendant fails to satisfy the

8    judgment."

9              So the intent really isn't -- why they set

10   up these family partnerships, why it was transferred is

11   not relevant to the determination of whether it was a

12   fraudulent conveyance.  The only issue in my mind is

13   whether the transfers were without fair consideration.

14             I'm not exactly sure why Mr. Rubinstein's

15   testimony would be necessary for that, so you tell me

16   about that.  On the other hand, while intent isn't an

17   element of the fraudulent conveyance, perhaps it is an

18   element or part of what goes into fair consideration.

19             MR. PELTON:  And we would anticipate that

20   Rubinstein is a necessary witness as to the fair

21   consideration that was exchanged in these family

22   limited partnerships.

23             THE COURT:  Well, perhaps.  I mean, you

24   haven't gotten all the documents yet.

25             MR. PELTON:  Correct.

1          THE COURT:  You've gotten two boxes of

2   documents from Mr. Rubinstein, correct?

3          MR. PELTON:  Correct, two binders.

4          THE COURT:  Two binders, excuse me, two

5   binders.  And in that, some of the deeds say that they

6   were transferred for $10.

7          MR. PELTON:  Most of them.

8          THE COURT:  Right?  And in inter-family

9   transfers, they're presumed to be fraudulent if there

10  isn't tangible consideration.

11         MR. PELTON:  Absolutely.

12         THE COURT:  So $10 for properties that are

13  probably worth a couple hundred thousand each easy --

14         MR. PELTON:  Absolutely.

15         THE COURT:  So maybe you don't need his --

16  maybe the documents themselves show that there wasn't

17  any consideration.

18         MR. PELTON:  We also believe that we're

19  entitled to underlying notes and correspondence between

20  Mr. Rubinstein and Joe Battaglia, and anyone else

21  acting on Joe Battaglia's behalf relating to these

22  transfers of assets, pursuant to the crime fraud

23  exception to the attorney/client privilege.

24         THE COURT:  Well, I understand that.  Even

25  were we to apply the crime fraud exception to the

1   attorney/client privilege, allowing you to get to these

2   documents and get testimony from Mr. Rubinstein, still

3   the issue is, is it relevant?  Is it information that

4   you need to -- for your clients to prove fraudulent

5   conveyances.  I don't know, maybe it is, maybe it

6   isn't.  You have to -- you haven't made a formal, full-

7   blown motion.  You haven't finished the discovery yet,

8   so maybe that issue should be tabled, search you're

9   entitled to the deposition.

10          MR. PELTON:  Certainly the discovery is the

11  key aspect that we're here to address.

12          THE COURT:  Meaning written responses to

13  document requests and interrogatories along with the

14  production of documents from the defendants.  I mean,

15  you've already served your subpoena on Mr. Rubinstein.

16  He's given you what he claims he has.

17          MR. PELTON:  Correct.

18          THE COURT:  Other than these communications

19  and correspondence, right?  So you need to get that

20  first.  I understand Mr. Gearon is not representing the

21  defendants for that.

22          You're out of it, for all intents and

23  purposes, correct?

24          MR. GEARON:  Yes, your Honor.  One point --

25  Mr. Pelton and I had a conversation back in July, and I

1    had communicated that to him, that after this trial was

2    over, we were in essence terminated.  Mr. Battaglia had

3    interviewed other firms for appellate reasons and

4    things of that nature, moving forward.  Mr. Battaglia

5    and I have had conversations before and I've had this

6    conversation with Mr. Pelton.

7              I've been through this case for a long time,

8    from a matter of historical perspective.  I'm not

9    looking to duck my responsibility.  I've had a

10   conversation with Battaglia.  He's directed me to have

11   Mr. Rubinstein answer the interrogatories.  On the

12   first e-mail we got from Mr. Pelton, I called him up

13   and I said, I didn't get it, resend it to me.  This is

14   where we are in the situation.

15             Battaglia now wants me to stay in it.  I

16   haven't been involved in this case for a while.  I'm

17   more than happy to stay in it, to facilitate with the

18   Court and to make sure that the defendants comply, that

19   this thing is expedite and moves forward.  So at this

20   point, I am now representing Battaglia.  I at that

21   point had a conversation with Mr. Pelton and said, I've

22   been directed that Mr. Rubinstein will answer the

23   interrogatories.

24             As far Mr. Nino (ph) goes, I've also

25   communicated with Mr. Pelton that I haven't spoken to

1   Mr. Nino since before the trial.  We've sent him many,

2   many letters, we've noticed him on this, and we haven't

3   heard from him on any issue regarding this matter.  I

4   apologize, your Honor.  After our post-trial motions,

5   that's when our basic involvement had ended.

6           THE COURT:  Okay.  So first, you want the

7   written responses and the documents, right, and then

8   we'll go from there.  I'm going to pull out my

9   calendar.  Bear with me.

10          (Pause in Proceedings)

11          MR. GEARON:  Your Honor, if I may for the

12  record.  I apologize.  I know the subpoena said August

13  3rd.  Right after I got off the phone with Mr. Pelton, I

14  called Mr. Rubinstein and I asked him to expedite, to

15  get whatever documents that Mr. Pelton asked for.  They

16  were delivered before August 3    $^{rd}$ because I asked Mr.

17  Rubinstein to move forward on it.

18          THE COURT:  That's what Mr. Rubinstein said

19  in his letter, but that was with respect to the

20  subpoena that was served on Mr. Rubinstein, not the

21  document requests and interrogatories served on the

22  defendants.

23          MR. GEARON:  You're right, your Honor, I

24  apologize.

25          THE COURT:  Mr. Rubinstein is saying that

1   he's going to be out of the country until September 5th.

2   He's asked for two weeks to respond to -- he asked for

3   two weeks to respond to the discovery requests, which

4   would be --

5           MR. GEARON:  The 24th.

6           THE COURT:  -- from today, the 24th.  But

7   he's leaving on the 19th, so I don't know how he's going

8   to do that.

9           MR. PELTON:  Perhaps we can have them by the

10  17th?

11          THE COURT:  I'm going to do that, August

12  17th.  And you want Mr. Battaglia's deposition.

13          MR. PELTON:  Correct.  And I imagine that

14  he'll be serving as the corporate rep for the corporate

15  judgment errors.

16          THE COURT:  Depositions by September 21st.

17          I'm going to note for the record and when

18  you have whatever conversation with Mr. Rubinstein, let

19  him know this:  If he needs additional time to respond

20  to the written discovery requests -- the 17th is only a

21  week, right?  If he needs more time, and that would in

22  essence put it when he gets back from wherever he's

23  going, I would give him that, but I would preliminarily

24  enjoin all the defendants from transferring any

25  property in the interim without order of the Court.  So

1    that's the quid pro quo for the extension.  I

2    understand he says in his letter they haven't -- I'll

3    use his words because I found them interesting.  They

4    haven't hidden a single dollar, dissipated a single

5    dollar and have not moved a single dollar out of the

6    Court's jurisdiction.  You can take issue with that

7    since these are Wisconsin --

8                  MR. PELTON:  Wyoming.

9                  THE COURT:  -- Wyoming limited family

10   partnerships, which really means that the property is

11   located here, ownership is there, so perhaps we have an

12   issue.  But if he says he needs more time, that's fine.

13   They can't move anything in the interim without asking

14   permission to do so.  Of course, if he needs more time,

15   then you're going to have to adjust the deposition

16   schedule.

17                  MR. PELTON:  Okay.

18                  THE COURT:  I would say if you -- if you do

19   have a preliminary injunction in place, and I could

20   write it up, your clients would be protected.  They

21   wouldn't be prejudiced because if they have some need

22   to refinance, to do something, they can just come to me

23   and say, Judge, we need to do this, and that's fine,

24   right?

25                  MR. PELTON:  Yes.

1          THE COURT:  That's fine, right?

2          MR. PELTON:  Yes.

3          THE COURT:  That's fine.  But if you have

4    problems with the schedule or he needs extensions, work

5    it out with him, and then just file a letter with the

6    Court setting it out.  Okay, that's the discovery.

7          Ultimately, what are you going -- you have

8    the issue of the deposition.  I take it you're going to

9    move separately to depose Mr. Rubinstein.

10          MR. PELTON:  That's the current plan.  We

11    need to look into the consideration that was exchanged

12    to Mr. Battaglia and the judgment debtors, which we

13    anticipate that Mr. Rubinstein would argue that the

14    shares in the FLP's are adequate consideration.  So I

15    think that that would be an issue that we'd want to

16    address with him.

17          THE COURT:  Well, there are couple of issues

18    in consideration, just going through the documents,

19    that sort of jumped out at me.  Number one, the

20    transfer of J.B. Custom Masonry's equipment was

21    consideration -- they transferred into the limited

22    family partnership and then the partners executed a

23    promissory note in favor of J.B. Custom Masonry.  So

24    that's would be the consideration; it's the promissory

25    note.

1          MR. PELTON:  Yeah.

2          THE COURT:  You would --

3          MR. PELTON:  And the interest in the family

4    limited partnership.

5          THE COURT:  No.

6          MR. PELTON:  That's going to be an argument

7    they're going to make.

8          THE COURT:  J.B. Custom -- that's an

9    argument that they're going to make.

10          MR. PELTON:  Yes.

11          THE COURT:  But J.B. Custom Masonry, Inc.

12    doesn't have an interest in the family limited

13    partnership, does it?

14          MR. PELTON:  No, but Joe Battaglia and

15    Josephine Battaglia and the five kids do.

16          THE COURT:  Yes, but that's what -- that's

17    what they received.  This was -- this was equipment

18    owned by a corporation.

19          MR. PELTON:  Correct.

20          THE COURT:  The corporation takes that

21    equipment, says here, family limited partnership, and

22    the general and limited partners then execute a note.

23    That's the consideration for getting the equipment,

24    right?

25          MR. PELTON:  Correct.

1          THE COURT:  The creation of the family

2    limited partnership is not consideration that's flowing

3    to the corporation.

4          MR. PELTON:  In the limited example of J.B.

5    Custom Masonry & Concrete, Inc., that's correct.

6          THE COURT:  That's all we were talking

7    about.  You've got to listen first, listen to what I'm

8    talking about.  So that's what they would argue with

9    respect to the equipment, and they'd probably have a

10   good argument on that, a note for 500-and-some-odd-

11   thousand dollars, promissory note, that's -- unless the

12   equipment is worth five million dollars.  I mean, who

13   knows, but you need to get into that.

14          Now, the consideration for the properties,

15   the limited partnerships:  So from what I understand,

16   and correct me if I'm wrong, Mr. Battaglia owned these

17   properties.  They were his, in his individual name.

18          MR. PELTON:  For the most part.

19          THE COURT:  For the most part.  Maybe him

20   and his wife?

21          MR. PELTON:  Yes.

22          THE COURT:  Okay.

23          MR. PELTON:  For a couple of them.

24          THE COURT:  So they created these family

25   limited partnerships, in which he was the general

1    partner.

2              MR. PELTON:  Correct.

3              THE COURT:  She and he and the daughters

4    were limited partners?

5              MR. PELTON:  Correct.

6              THE COURT:  Then he transferred the property

7    to the family limited partnership for $10 and got what

8    in return?

9              MR. PELTON:  Shares --

10             THE COURT:  Something that he already had,

11   though.

12             MR. PELTON:  Interest in the family limited

13   partnership.

14             THE COURT:  And the only asset of the family

15   limited partnership is the property that was

16   transferred, which was his to begin with.

17             MR. PELTON:  Absolutely.

18             THE COURT:  So in essence --

19             MR. PELTON:  But now it's encumbered.

20             THE COURT:  In essence, he decreased his --

21             MR. PELTON:  Significantly.

22             THE COURT:  -- his interest in the property

23   for what?  That's why intrafamily transfers are often

24   times presumed to be fraudulent, because it's not clear

25   what you're getting.  But you need to figure that out.

1   Maybe there's something there, I don't know.

2              Did you notice on these family limited

3   partnerships, the signatures are all the same?

4              MR. PELTON:  Yeah.  They were all signed by

5   Joe Battaglia.

6              THE COURT:  How do you know that?

7              MR. PELTON:  Well, we believe so.

8              THE COURT:  They're not all the same;

9   there's one that's different, Josephine Battaglia.

10             MR. PELTON:  Josephine's is different, but

11  he signed -- it appears that he signed on behalf of the

12  children, as their guardian.

13             THE COURT:  Okay.

14             MR. PELTON:  There are examples --

15             THE COURT:  Aren't some of them -- I thought

16  some of them were of majority age.

17             MR. PELTON:  If so, it would be close.  I

18  think still in high school.

19             THE COURT:  Okay, all right.  There's

20  nothing unusual about that then, right?  But this is

21  all what you're going to ask him at his deposition,

22  correct?

23             MR. PELTON:  Correct.

24             THE COURT:  All right.  I want to set up a

25  schedule for you to file this -- any motion with

1    respect to Mr. Rubinstein.  That motion is going to be

2    to take his deposition and to have him removed from

3    serving as counsel for the defendants with respect to

4    the post-judgment issues; is that right?

5                    MR. PELTON:  Correct.

6                    THE COURT:  So you'd probably want to do

7    that before --

8                    MR. PELTON:  The deposition.

9                    THE COURT:  -- Mr. Battaglia's deposition.

10   And you can't really know that until you get the

11   documents, or can you?

12                   MR. PELTON:  I think the documents would be

13   helpful.  Perhaps sometime in early September?  So long

14   as he's responded to our document demands by the 17th,

15   the first week of September should be fine.

16                   THE COURT:  Okay, here's how I'm going to do

17   it, because I'm almost certain that Mr. Rubinstein is

18   going to want additional time to respond to the

19   discovery requests.  I'm keeping that date as August

20   17th and depositions by the 21st of September.

21                   Any motion to take Mr. Rubinstein's

22   deposition and to have him removed as defendants'

23   counsel is due two weeks prior to Mr. Battaglia's

24   deposition.  You're going to set the date of the

25   deposition.  If he responds by the 17th, fine.  You're

1   going to say okay, we're going to take Mr. Battaglia's

2   deposition by such and such a date, and you'll agree to

3   that.  Then you'll know when your motion is due to be

4   served, and he has to respond one week after that.

5             What else are you planning?

6             MR. PELTON:  We'd certainly seek to file a

7   motion to overturn these fraudulent conveyances.

8             THE COURT:  Pursuant to what?

9             MR. PELTON:  Rule 69.

10            THE COURT:  Prior to that, do you want to do

11  anything?  Can you attach any of this property?

12            MR. PELTON:  We could get a writ of

13  execution and we'll look into attaching as well.  At

14  this point, I don't know if there's much left to

15  attach.

16            THE COURT:  I see.  Property that's in their

17  name, in the defendants' name that's here.

18            MR. PELTON:  We've already filed the

19  judgment in Queens County, where the -- in Kings and

20  Queens County, which effectively acts as an attachment.

21  But we'll look into filing an additional --

22            THE COURT:  Okay.

23            MR. PELTON:  -- restraining order.

24            THE COURT:  The family home, has that been

25  transferred to a limited partnership?

```
 1              MR. PELTON:  Yes, it has.

 2              THE COURT:  All right.

 3              MR. PELTON:  All of the transfers were

 4   certainly made after the conference with your Honor on

 5   September 30 th, 2011.

 6              THE COURT:  Well, it doesn't -- accordingly

 7   to the law, it doesn't -- that might be aspheric

 8   evidence of intent, which is not directly relevant.  As

 9   long as they were defendants, it could have happened

10   two years ago and it still would be subject to possibly

11   fraudulent conveyance.  All right, we've got somewhat

12   of a schedule.

13              Do you want to be formally relieved and

14   taken off, Mr. Gearon?

15              MR. GEARON:  Your Honor, would I like to be

16   formally relieved?  I would love to be formally

17   relieved.  However -- and this is what -- I've had a

18   conversation with Mr. Pelton.  I have a historical

19   perspective in this case.  I think I have some value in

20   expediting and moving things along.

21              THE COURT:  Okay.  I appreciate that.

22              MR. GEARON:  My one concern is, also, we

23   have to address the Mannino issue at some particular

24   point.  We've sent him letters, he hasn't responded.

25   At this point --
```

1          THE COURT:  That's their problem now, right?

2          MR. GEARON:  Your Honor, I don't mind

3    staying in this case.

4          THE COURT:  Okay.  I appreciate that, Mr.

5    Gearon.  You've been helpful.  Certainly you've tried

6    your hardest.  I recognize that.

7          All right, so I guess the ball is in -- to

8    some degree, it's in Mr. Rubinstein's court to get

9    these discovery responses done, and also in plaintiffs'

10   court, to push forward with the deposition, to get the

11   documents, figure it out, and make whatever other

12   applications you're going to make.  And I'll sit back

13   and wait to see what comes across my desk, all right?

14         Anything else?  Okay, great.  Thank you,

15   gentlemen.

16         MR. PELTON:  Thank you, your Honor.

17              *  *  *  *  *  *  *  *

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18          I certify that the foregoing is a correct

19    transcript from the electronic sound recording of the

20    proceedings in the above-entitled matter.

21

22

23

24

25    ELIZABETH BARRON                    August 16, 2012