# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JESUS ACOSTA ARTICA, JUAN ZELAYA, NILSON CABALLERO, JOSE RUIZ, ADONIS LOBO and ERNESTO GALEANO**, Individually and on Behalf of all other Employees Similarly Situated, | **ECF Case** <br><br> **09-CV-3796 (RER)** |

**Plaintiff,**

-against-

**J.B. CUSTOM MASONRY & CONCRETE, INC., J.B. BATTAGLIA, J.B. CONTRACTING, ALFREDO J. BATTAGLIA, JOHN BATTAGLIA and SALVATORE MANNINO**, Jointly and Severally,

**Defendants.**

---

| | |
|---|---|
| **JESUS ACOSTA ARTICA, JUAN ZELAYA, NILSON CABALLERO, JOSE RUIZ, ADONIS LOBO, ERNESTO GALEANO, HUGO RIVAS and JAIME RIVAS**, Individually and on Behalf of all other Employees Similarly Situated, | **11-CV-0842 (RER)** |

**Plaintiff,**

-against-

**J.B. CUSTOM MASONRY & CONCRETE, INC., J.B. CUSTOM CORP., J.B. HOLDING & PROPERTY CORP., J.B. RESIDENTIAL, LLC, ALFREDO J. BATTAGLIA, JOHN BATTAGLIA, JOSEPHINE BATTAGLIA and SALVATORE MANNINO**, Jointly and Severally,

**Defendants.**

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO SET ASIDE DEFENDANTS' FRAUDULENT CONVEYANCES

# TABLE OF CONTENTS – MEMORANDUM OF LAW

**Page**

Table of Authorities ............................................................................................. iii

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF THE CASE ............................................................................... 2

EVIDENCE IN SUPPORT OF FRAUDULENT CONVEYANCES ........................... 3

    1.  Creation of Family Limited Partnerships ................................................. 3

    2.  Conveyance of Property to FLPs ........................................................... 4

        *A.  Conveyances by Battaglia Personally* ............................................ 5

        *B.  Conveyances by J.B. Custom Masonry & Concrete, Inc.* ................. 7

        *C.  Conveyances by J.B. Residential, LLC.* ....................................... 8

        *D.  Conveyances by J.B. Holding & Property Corp.* ............................ 8

LEGAL STANDARDS GOVERNING FRAUDULENT CONVEYANCE MOTION ....... 9

    1.  Subject Matter Jurisdiction ................................................................. 10

    2.  Fraudulent Conveyances ..................................................................... 11

I.  JUDGEMENT DEBTORS' CONVEYANCES WERE CONSTRUCTIVELY
FRAUDUENT ...................................................................................... 14

    A.  The Conveyances Lacked Fair Consideration ......................................... 14

      1.  *The transfers were not made in exchange for a "fair equivalent"* ........ 15

      2.  *The transfers were not made in good faith* .................................... 18

    B.  The Judgement Debtors Have Not Satifised The Judgement Against Them
(NY DCL § 273-a) ........................................................................... 19

    C.  The Judgement Debtors Were Rendered Insolvent By The Conveyances (NY
DCL § 273). ................................................................................... 19

    D.  The Judgment Debtors Were Left With Unreasonably Small Capital (NYDCL
§ 274).. ......................................................................................... 8

D.  The Judgment Debtors Were Left With Unreasonably Small Capital (NYDCL § 274).. ................................................................................................8

E.  The Judgment Debtors Knew That They Would Incur Debts Beyond Their Ability To Pay Them After Making the Conveyances (NYDCL § 275).. ....................21

II.  JUDGMENT DEBTORS' CONVEYANCES WERE ACTUALLY FRAUDULENT..........21

A.  All Six "Badges of Fraud" Are Present.......................................................21

1.  *The conveyances lacked adequate condiseration* ...................................22

2.  *There was a close relationship between the parties to the conveyances* ..............22

3.  *The Judgment Debtors retained possession, benefit and use of the property*........22

4.  *The Judgment Debtors were left with no assets after the conveyances* ................22

5.  *The transactions in question took place prior to trial in this action* ...................23

6.  *The timing of the transactions is suspect* ..............................................23

III.  JUDGMENT DEBTORS' CONVEYANCES SHOULD BE SET ASIDE ......................23

IV.  REASONABLE ATTORNEYS' FEES SHOULD BE AWARDED ..............................24

CONCLUSION.......................................................................................25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Aaron v. Mattikow*,
    225 F.R.D. 407, 414-15 (E.D.N.Y. 2004) ..............................................................................10

*Ackerman v. Ventimiglia*,
    362 B.R. 71, 82 (Bankr. E.D.N.Y. 2007) ..............................................................................13

*American Safety Table Co. v. Schreiber & Goldberg, Inc*.,
    320 F. Supp. 603, 604 (S.D.N.Y. 1970) ...............................................................................10

*Arista Records LLC v. Lime Group LLC*,
    No. 06 Civ. 5936 (KMW), 2011 U.S. Dist. LEXIS 43716 (S.D.N.Y.  Apr. 21, 2011) ..........14

*Berner Trucking, Inc. v Brown*,
    281 A.D.2d 924, 925, 722 N.Y.S.2d 656 (4th Dept 2001) ....................................................18

*Citi Group/Commercial Servs., Inc. v 160-09 Jamaica Ave. Ltd. Partnership*,
    25 A.D.3d 301, 303, 808 N.Y.S.2d 187 (1st Dept 2006)........................................................18

*Citibank, N.A., v. Benedict*,
    No. 97 Civ. 9541 (AGS), 2000 U.S. Dist. LEXIS 3815 (S.D.N.Y. March 27, 2000) ............14

*Computerland Corp. v. Batac, Inc*.,
     750 F. Supp. 97, 98 (S.D.N.Y. 1990) ...................................................................................12

*Dillon v. Dean*,
    236 A.D.2d 360, 653 N.Y.S.2d 639 (App. Div. 1997) ...........................................................14

*Domino Media, Inc. v. Kranis*,
     9 F. Supp. 2d 374, 387 (S.D.N.Y. 1998), aff'd, 173 F.3d 843 (2d Cir. 1999)........................13

*Epperson v. Entertainment Express, Inc.*,
    242 F.3d 100, 107 (2d Cir. 2001)..........................................................................................10

*First Fidelity Bank v. Manzo*,
    250 A.D.2d 730, 673 N.Y.S.2d 196, 197 (App. Div. 1998) ...................................................14

*Gala Enters., Inc. v. Hewlett Packard Co.*,
    989 F. Supp. 525, 528 (S.D.N.Y. 1998).................................................................................19

*Gasser v. Infanti Int'l, Inc.,*
    353 F. Supp. 2d 342, 356 (E.D.N.Y. 2005) ...........................................................................24

- iii -

*Grace v. Bank Leumi Trust Co. of New York*,
   443 F.3d 180, 189 (2d Cir. 2006) ......................................................................24

*Hansen v. Cramer*,
   39 Cal. 2d 321, 324-25, 245 P.2d 1059, 1061 (1952) ........................................15

*HBE Leasing Corp. v. Frank*,
   61 F.3d 1054, 1058-59 (2d Cir. 1995) ................................................................12

*Hearn 45 St. Corp. v. Jano*,
   283 N.Y. 139, 143, 27 N.E.2d 814 (1940) ..........................................................24

*Heimbinder v. Berkovitz*,
   175 Misc. 2d 808, 814-16, 670 N.Y.S.2d 301 (1998) ...................................16, 17

*In re All Am. Petroleum Corp.*,
   259 B.R. 6, 16-17 (Bankr. E.D.N.Y. 2001) ...................................................11, 20

*In re Borriello*,
   329 B.R. 367, 377 (E.D.N.Y. 2005) ....................................................................20

*In re Checkmate Stereo & Electronics, Ltd.*,
   9 B.R. 585, 617 (Bankr. E.D.N.Y. 1981), *aff'd*, 21 B.R. 402 (E.D.N.Y. 1982) ....................12

*In re Corcoran*,
   246 B.R. 152, 163 (E.D.N.Y. 2000) ....................................................................20

*In re Kaiser*,
   722 F.2d 1574, 1582 (2d Cir. 1983) ....................................................................14

*In re Prejean*,
   994 F.2d 706, 708 (9th Cir. 1993) .......................................................................15

*Interpool Ltd., v. Patterson*,
   890 F. Supp. 259, 266 (S.D.N.Y. 1995) ...................................................15, 16, 18

*Julien J. Studley, Inc. v Lefrak*,
   66 A.D.2d 208, 213, 412 N.Y.S.2d 901 (2d Dept 1979), *aff'd* 48 N.Y.2d 954, 401
   N.E.2d 187, 425 N.Y.S.2d 65 (1979) ...................................................................18

*Leventhal v. Spillman*,
   234 F. Supp. 207 (E.D.N.Y. 1964), *aff'd*, 362 F.2d 264 (2d Cir. 1966) ................16

*Liggio v. Liggio*,
   53 A.D.2d 543, 549, 385 N.Y.S.2d 33, 39 (1st Dep't 1976) ...............................13

*Marine Midland Bank v. Murkoff*,
    120 A.D.2d 122, 130, 508 N.Y.S.2d 17 (2d Dept. 1986) ...................................17, 21

*Megabank Financial Corp. v. Alpha Gamma Rho Fraternity*,
    841 P.2d 318, 320 (Colo. App. 1992). ....................................................................15

*Neshewat v. Salem*,
    365 F. Supp. 2d 508, 521 (S.D.N.Y. 2005)...............................................................23

*Ostashko v. Ostashko*,
    No. 00 Civ. 7162, 2002 U.S. Dist. LEXIS 27015, at *64 (E.D.N.Y. Dec. 10, 2002)..............12

*Peacock v. Thomas*,
    516 U.S. 349, 357, 116 S. Ct. 862, 133 L. Ed. 2d 817 (1996)................................10

*Petersen v. Vallenzano*,
    849 F. Supp 228 (S.D.N.Y 1994) ............................................................................16

*Polkowski v. Mela*,
    143 A.D.2d 260, 532 N.Y.S.2d 159 (App. Div. 1988) ............................................17

*Prudential Farms of Nassau County v. Morris*,
    286 A.D.2d 323, 324, 729 N.Y.S.2d 156 (2d Dep't 2001) .....................................21

*Sharp Int'l Corp. v. State St. Bank & Trust Co.*,
    403 F.3d 43, 53 (2d Cir. 2005).................................................................................11

*Shelly v. Doe*,
    249 A.D.2d 756, 758, 671 N.Y.S.2d 803 (3d Dep't 1998)................................13, 19

*Southern Industries, Inc. v. Jeremias*,
    66 A.D.2d 178, 182, 411 N.Y.S.2d 945 (2d Dept 1978) ........................................20

*Stochastic Decisions, Inc. v. DiDomenico*,
    995 F.2d 1158, 1172 (2d Cir. 1993).........................................................................24

*Tesmetges v. Herman*,
    85 Bankr. 683, 696 (Bankr. E.D.N.Y. 1988) ..........................................................15

*U.S. Bancorp Equip. Fin., Inc. v. Rubashkin*,
    30 Misc.3d 1216[A], 924 N.Y.S.2d 312 (N.Y.Sup. Jan. 31, 2011) ........................13

*United States v. Carlin*,
    948 F. Supp. 271, 277-78 (S.D.N.Y. 1996) ............................................................14

*United States v. Laronga*,
No. 89 Civ. 692 (FB), 2000 U.S. Dist. LEXIS 7226, at *11 (E.D.N.Y. May 25, 2000) .........11

*United States v. McCombs*,
30 F.3d 310, 326 (2d Cir. 1994) ................................................................................. *passim*

*United States v. Red Stripe*,
792 F. Supp. 1338, 1342 (E.D.N.Y. 1992) ..................................................................20

*United States v. Tabor Court Realty Corp.*,
803 F.2d 1288, 1295-96 (3d Cir. 1986) .....................................................................18

*Wittemann Bros. v. Forman Bottling Co.*,
178 A.D. 674, 676 (N.Y. App. Div. 1917) ....................................................................23


STATUTES, RULES AND REGULATIONS

Fed. R. Civ. P. 69(a) ...........................................................................................................1

C.P.L.R. § 5225(b) .............................................................................................................1

NYDCL
§ 270.....................................................................................................................20
§ 271(1)................................................................................................................19
§ 272...........................................................................................................11, 12, 14
§ 273.............................................................................................................11, 25
§ 273-a.....................................................................................................11, 19, 25
§ 274.............................................................................................................11, 25
§ 275.......................................................................................................11, 21, 25
§ 276.............................................................................................................13, 25
§ 276-a.................................................................................................................24
§ 278.....................................................................................................................24


SECONDARY SOURCES

30 N.Y.Jur.2d Creditor's Remedies § 300 .........................................................................11

G. GLENN, FRAUDULENT CONVEYANCES AND PREFERENCES §§ 61d, 195
(Rev. ed. 1940)...................................................................................................................17

G. GLENN, THE LAW OF CONVEYANCES § 195 (1931)......................................................16

## PRELIMINARY STATEMENT

Plaintiffs, who have obtained a money judgment in this action (collectively, the "Plaintiffs" or the "Judgment Creditors") from Defendants J.B. Custom Masonry & Concrete, Inc., J.B. Holding & Property Corp., J.B. Residential, LLC, Alfredo Battaglia and Salvatore Mannino[1] (collectively, the "Defendants" or the "Judgment Debtors"), hereby respectfully submit, pursuant to Fed. R. Civ. P. 69(a) and New York's C.P.L.R. § 5225(b), this memorandum of law in support of their motion for an order:

(1) declaring certain conveyances of property made by the Judgment Debtors to be fraudulent conveyances pursuant to New York Debtor & Creditor Law ("NYDCL") §§ 273, 273-a, 274, 275 and 276;

(2) setting aside the fraudulent conveyances and causing the conveyed property to be returned to the Judgment Debtors;

(3) directing Judgment Debtors to turn over to the Plaintiffs all of the property conveyed necessary to satisfy the outstanding judgment in favor of Plaintiffs; and

(4) any other such remedy the Court deems justified.

For the reasons set forth below, the Judgment Creditors' motion should be granted in its entirety.

---

[1] While Defendant Salvatore Mannino is liable to Plaintiff Ernesto Galeano for $80,000.00, this motion is directed towards only those Judgment Debtors who responded to Plaintiffs' post-trial discovery demands relating to conveyances of their property.

**STATEMENT OF THE CASE**

Plaintiffs note here only facts necessary to provide context for the issues raised in the present motion.[2]  Plaintiffs commenced these related actions against Defendants on September 2, 2009 and February 18, 2011, asserting claims of unpaid wages and retaliation under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), breach of contract, and assault and battery.

Throughout the pendency of the actions, the parties engaged in numerous attempts at settlement, including through private mediation and through settlement conferences before the Court.  During these ongoing settlement discussions, in or around September 2011, the parties deliberated regarding monetary settlement for numbers ranging in the high six figures to low seven figures.  The parties were not able to reach an agreement to settle the action at that time.

While the matter was initially scheduled to commence trial on October 11, 2011 (Dkt. Entry Dated 7/14/2011), after the parties submitted the joint pretrial order on September 16, 2011, the Court determined that the trial would take at least seven (7) days and thus rescheduled trial for November 7, 2011.

On November 6, 2011, the parties agreed to a preliminary settlement of the matter for $940,000.00, pending this Court's approval.  Thereafter, Defendants refused to sign the settlement agreement and accordingly, the Court refused to credit the settlement and restored the case to the trial calendar.  The case proceeded to a jury trial which commenced on March 12, 2012, at the end of which the jury was given a special verdict sheet.  The jury returned a verdict in favor of Plaintiffs on nearly all of the claims, and pursuant to the special verdict sheet, made specific findings of fact on liability and damages.  In accordance with the Court's order, the

---

[2] The full background of the underlying actions is detailed in several post-trial submissions and orders by the Court, familiarity with which is assumed.

parties then submitted initial damages calculations.  After several subsequent revisions to the damages calculations, the Court ultimately entered judgment against the Defendants for approximately $2.95 million,[3] including substantial punitive damages, interest and attorneys' fees.

The verdicts are currently on appeal, but no supersedeas bond has been posted.  Nothing has been collected on the judgments and the Judgment Debtors do not intend to pay them. *See* Deposition of Alfredo Battaglia ("AB Depo.") at 6:13-8:5.[5]

## EVIDENCE IN SUPPORT OF FRAUDULENT CONVEYANCES

### 1.    Creation of Family Limited Partnerships

During the pendency of the underlying action, Alfredo Battaglia ("Battaglia"), with the aid of his asset-protection attorney, Mr. Kenneth Rubinstein, formed at least fourteen (14) family limited partnerships ("FLPs") and several limited liability companies ("LLCs") in order to subdivide his portfolio. *See* AB Depo. at 29:21-30:6.[6]  Battaglia created a FLP for each of the real estate properties and other valuable assets that were previously held by the Judgment Debtors in the underlying action.  Battaglia discontinued the use of JB Custom Masonry & Concrete Inc., operating his construction business through a new corporate entity named NY Construction 69 Co. Inc., and also created LLCs for certain properties and reorganized certain corporate entities as LLCs, including, for example, Judgment Debtor J.B. Holding & Property Corp. as J.B. Holding & Property Partners, LLC.  *See, e.g.,* Exs. 23-24.

---

[3] A copy of the Clerk's Judgment in this matter is attached to the Declaration of Brent E. Pelton, Esq. in support of this motion ("Pelton Decl.") as Exhibit 1.

[5] The relevant excerpts from the AB Depo. are attached to the Pelton Decl. as Exhibit 2.

[6] A complete list of the FLPs and LLCs and the relevant information regarding their creation is provided in an Excel Spreadsheet attached to the Declaration of Taylor B. Graham, Esq. ("Graham Decl.") as Exhibit 3.

The partnership operating agreements for the FLPs provide that Battaglia is the general partner and a limited partner of each of the FLPs. *See* Ex. 4.  Battaglia's wife and five children are also limited partners of each FLP. *Id.*  Battaglia's children each executed a Note (signed by Battaglia) in exchange for a limited partner interest in several of the FLPs. *See* Ex. 7.  The children also received partnership interests in certain FLPs as gifts from Battaglia and his wife "by virtue of the love and affection which [Battaglia and his wife] have for their child[ren]".  Ex. 8.  All of the gifts of partnership interests were executed on May 29, 2012, and resulted in each of the five children owning a 19.80% limited partnership interest in each of the FLPs (totaling 99% as a group), leaving Battaglia with a one percent (1%) general partnership interest. *Id.*[7]  The FLPs were discounted by 50% for the purpose of valuing the gifts to Battaglia's daughters. *Id.*; AB Depo. at 86:4-88:11.  This discount allowed Battaglia to gift his $13 million estate within the $10 million gift tax exemption. *Id.* at 72:3-73:4.

Battaglia no longer has any assets other than his general partner interests in the FLPs (*Id.* at 13:4-22), yet he retained full control over everything that was transferred to the FLPs because he is the general partner of each FLP. *Id.* at 31:9-32:6; *see also*, *e.g.*, Ex. 4 at § 7.1 ("The business of the Partnership shall be under the exclusive control of the General Partners . . .").

## 2.    Conveyance of Property to FLPs

During the pendency of the underlying action, Battaglia transferred his entire portfolio of assets (worth approximately $13 million) into FLPs and LLCs. AB Depo. at 31:9-19; 34:14-17.

---

[7] The gifts of limited partnership interests in the FLPs were done a full eight (8) months after the FLPs were created and the property transfers were made.  The FLP partnership agreements were never revised to include the updated percentages of partnership interests that resulted from these gifts.

These transfers include all of the assets held by the Judgment Debtors. *Id.* at 69:16-70:14.[9] Battaglia asserts that he made these transfers for "estate planning" purposes for the benefit of his family. *See generally Id.* at 26:4-31:4.  He refused to acknowledge that the underlying suit was pending during the time that the transfers were made or that the lawsuit had any influence on his decision to make the transfers. *Id.* at 32:18-33:11.

The following transfers of property and assets were made during the pendency of the underlying action.

### A.  Conveyances by Battaglia Personally

On September 13, 2010, Battaglia transferred a single-family residential property that had been owned by him individually, located at 160-43 85th Street, Howard Beach, NY 11414, to 160-43 85th Street, LLC for a sale price of $0. *See* Exs. 3, 21.  Battaglia's sister-in-law and employee, Rosa Samaras, is the 100% owner of 160-43 85th Street, LLC (*See* Ex. 24), leaving Battaglia with no ownership interest in this property after this transfer.[10]

Also on September 13, 2010, Battaglia and his father Giovanni Battaglia (who was a co-owner of the properties) transferred two single-family residential properties, which had been

---

[9] The only asset that Battaglia acknowledges he did not transfer to a FLP was a single-family residential property in Queens, of which Battaglia owns a fifty percent (50%) interest. *Id.* at 34:18-36-23.  Battaglia allegedly held this property out of an FLP because he assumed that this property would be used to settle the underlying lawsuit. *Id.*  Although Battaglia would not specify the address of the property that he "held out" of the FLPs to resolve the underlying action, Plaintiffs have concluded that this property is the residence located at 157-19 84th Street, Howard Beach, NY 11414, which was recently sold for $535,000.

[10] Plaintiffs became aware of this conveyance in or around September 2011, at which point Plaintiffs filed a pre-motion letter with the Court regarding Plaintiffs' anticipated motion for attachment. Dkt. No. 77.  The Court subsequently held a telephone conference with the parties on September 30, 2011, wherein the Court warned the Defendants that if transfers were made by Battaglia in "an effort to hide ... his assets and make himself judgment-proof or the corporations, then there's an issue." Transcript of 9/30/2011 Conference at 11:11-15.  At that time, Plaintiffs were unaware of any other transfers of property or the formation of the FLPs, which ultimately led to the Judgment Debtors being judgment-proof, necessitating the instant motion.

owned individually by Battaglia and Giovanni Battaglia, to 157-19 84th Street Corp. The first property is located at 157-19 84th Street, Howard Beach, NY 11414 and was transferred for a sale price of $0. Exs. 3, 22. *See also, infra* Footnote 7. The second property is located at 158-31 90th Street, Howard Beach, NY 11414 and was also transferred for a sale price of $0.[11] Ex. 3, 16. Rosa Samaras signed the deed and other property transfer documents on behalf of 157-19 84th Street Corp. for both of these transfers, although Battaglia's interest in the corporation has not been disclosed. *Id.*

On November 29, 2011, Battaglia and his wife Josephine Battaglia (who was a co-owner of the property) transferred their personal residence, a single-family residential property located at 87-07 158th Avenue, Howard Beach, NY 11414 to 87-07 158th Ave FLP. *See* Exs. 3, 14, 15. Battaglia's residence is located on two lots (87-07 158th Avenue and 157-47 87th Street), requiring two separate transfers to the FLP. *See Id.* These transfers, which conveyed Battaglia's individual interest in the residence, were each made for consideration of $10. *Id.* No New York City real property or New York State real estate transfer taxes were paid for this transfer. *Id.*

On January 12, 2012, Battaglia transferred the title of the following vehicles from his name to JB Vehicles FLP: 1966 Lincoln; 1972 Lamborghini Miura P400M; 1989 Lamborghini Countach; 2010 Fiat 500; 1966 Fiat 600D; 1995 Ferrari F512 M; 2002 Ducati; 2005 Porsche Carrera GT; 2007 Porsche 911 Turbo. Plaintiffs were not provided with any information regarding the details of the vehicle transfers; however the self-reported value of the JB Vehicles FLP, which only holds title to these vehicles, is $1,886,111.00. Ex. 3.

---

[11] The property at 158-31 90th Street was subsequently transferred two additional times. First, on November 22, 2011, from 157-19 84th Street Corp. to 157-19 84th Partners, LLC for a sale price of $10 (Ex.16), and second, on January 26, 2012 from 157-19 84th Partners, LLC to 158-31 90th St FLP for a sale price of $10. *Id.*

In addition to the transfers of real estate and vehicles, Battaglia transferred three (3) institutional investment accounts to JB Investments FLP. Ex. 3. Though the details regarding the balances of these investment accounts or the transfer of such accounts to the FLP were not provided to the Judgment Creditors, the JB Investments FLP, which only holds these 3 investment accounts (and notes from each of Battaglia's daughters), was valued at $224,363.33. Ex. 3.

Although Battaglia used to own all of these assets in his own name, after making these transfers, Battaglia no longer owns anything other than FLP partnership interests. AB Depo. at 10:15-11:11.

### B. Conveyances by J.B. Custom Masonry & Concrete, Inc.

On January 12, 2012, J.B. Custom Masonry & Concrete, Inc. ("J.B. Custom") entered into an agreement for sale of equipment with JB Machinery FLP. Ex. 26. J.B. Custom agreed to sell ten (10) motor vehicles and ten (10) items of machinery to the FLP in exchange for a promissory note in the amount of $562,500. *Id.* The very same day, the JB Machinery FLP partnership agreement was drafted providing that the agreed value of the FLP is only $1,111.11. Ex. 3.

Plaintiffs were not provided with any other information regarding transfers by J.B. Custom; however, Battaglia admits that J.B. Custom does not currently own any assets other than what has been transferred to the FLPs.[12] AB Depo. at 69:16-20.

---

[12] The construction company that was formerly operated by J.B. Custom, whose unlawful pay practices were at issue in the underlying action, is now operated by New York Construction 69 Co., Inc. ("New York Construction 69"), located at 100-02 Atlantic Avenue, Ozone Park, NY 11416. AB Depo. at 8:16-9:7. New York Construction 69 was created on February 29, 2012 and is owned and operated by New York Construction 69 Limited Partnership. *Id.*; Ex. 27. Plaintiffs were not provided any information regarding New York Construction 69 or New York Construction 69 Limited Partnership. Battaglia testified that J.B. Custom no longer maintains a

### C.  Conveyances by J.B. Residential, LLC

On November 29, 2011, J.B. Residential, LLC ("J.B. Residential") transferred an apartment building located at 153 East 33rd Street, New York, NY 10016 to 153 East 33rd St FLP for a sale price of $10. Exs. 3, 11.  No New York City real property or New York State real estate transfer taxes were paid for this transfer. *Id.*  The reported value of 153 East 33rd Street FLP, which only owns the 153 East 33rd Street property, is $1,111,111.00. Ex. 3.

On April 19, 2012, J.B. Residential transferred a three-family residence located at 95-18 87th Street, Ozone Park, NY 11416 to 95-18 87th St FLP for a sale price of $10. Exs. 3, 19.  No New York City real property or New York State real estate transfer taxes were paid for this transfer. *Id.*  The 95-18 87th St FLP, which only owns the 95-18 87th Street property, is valued at $611,111.11. Ex. 3.  Also on April 19, 2012, J.B. Residential transferred a three-family residence located at 95-16 87th Street, Ozone Park, NY 11416 to 95-16 87th St FLP for a sale price of $10. Exs. 3, 18.  No New York City real property or New York State real estate transfer taxes were paid for this transfer. *Id.*  The 95-16 87th St FLP, which only owns the 95-16 87th Street property, is valued at $611,111.11. Ex. 3.

J.B. Residential does not currently own any assets other than what has been transferred to the FLPs. AB Depo. at 69:25-70:6.

### D.  Conveyances by J.B. Holding & Property Corp.

J.B. Holding & Property Corp. ("J.B. Holding") transferred three separate real estate properties on October 19, 2011.  The first was a commercial property located at 88-01 Ditmas Avenue, Brooklyn, NY 11236 which was transferred to J.B. Holding & Property Partners, LLC

---

bank account such that all payments for construction services must now be cleared through New York Construction 69's bank accounts.

for a sale price of $10. Exs. 3, 12.[14]   The second property was a plot of land located on 78th

Street, Queens, NY 11414, at Block: 11357, Lot: 19, which was also transferred to J.B. Holding

& Property Partners, LLC for a sale price of $10. Exs. 3, 13.[15]   No New York City real property

or New York State real estate transfer taxes were paid for these transfers. Ex. 3.

The third property transferred by J.B. Holding on October 19, 2011 was a single-family

residence located at 157-52 88th Street, Howard Beach, NY 11414, which was transferred to J.B.

Holding & Property Partners, LLC for a sale price of $10. Exs.  3, 17.   Then, on January 12,

2012, J.B. Holding & Property Partners, LLC transferred the same property to 157-52 88th St

FLP for a sale price of $10. *See* Ex. 3.  No New York City real property or New York State real

estate transfer taxes were paid for these transfers. *Id*.  The value of the 157-52 88th St FLP, which

only owns the 157-52 88th Street property, is $777,777.78. *Id*.

J.B. Holding did not receive anything in exchange for these transfers. *See* AB Depo. at

129:4-19.  Battaglia personally received FLP interests for the transfers, but not J.B. Holding. *Id*.

J.B. Holding does not currently own any assets other than what has been transferred to the LLCs

and FLPs. AB Depo. at 70:7-14.

**LEGAL STANDARDS GOVERNING FRAUDULENT CONVEYANCE MOTION**

Under Fed. R. Civ. P. 69(a), a judgment creditor seeking to enforce a federal judgment is

directed to employ, in federal court, the practice and procedure governing execution of

judgments of the state in which the federal court sits.  Among the New York statutory procedures

---

[14] A FLP titled 88-01 Ditmas Ave FLP was formed with a stated value of $2,000,000.00, but the
title to the property at 88-01 Ditmas Avenue was never actually transferred from J.B. Holding &
Property Partners, LLC to the FLP.

[15] A FLP titled 78th St Land FLP was formed with a stated value of $111,111.11, but the title to
the property on 78th Street was never actually transferred from J.B. Holding & Property Partners,
LLC to the FLP.

in aid of execution of a judgment is the turnover proceeding provided by CPLR 5225(b).  CPLR 5225(b) authorizes a "special proceeding" by a judgment creditor to secure an order directing a third party to turn over to the creditor, in satisfaction of the judgment, "money or other personal property in which a judgment debtor has an interest."  The instant motion is brought pursuant to this procedure.

### 1.    Subject Matter Jurisdiction

A federal court has an "inherent power to enforce its judgments." *Peacock v. Thomas*, 516 U.S. 349, 357, 116 S. Ct. 862, 133 L. Ed. 2d 817 (1996).  Pursuant to this power, the Supreme Court has "approved [district courts'] exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments." *Id*.  *Peacock* does not preclude district courts' ancillary jurisdiction over a judgment creditor's effort to reach "assets . . . found in the hands of a third party," if those assets were fraudulently conveyed to the third party by the judgment debtor. *Id*. at 107 (holding that, because claims for fraudulent conveyance "operate as simple collection mechanisms . . . [and] do not present a substantive theory seeking to establish liability on the part of a new party not otherwise liable" they are "within the scope of the enforcement jurisdiction of the district court").

Accordingly, since the present motion simply seeks to collect the Judgment Debtors' assets, even those in the hands of a third-party, the Court has jurisdiction over it. *Aaron v. Mattikow*, 225 F.R.D. 407, 414-15 (E.D.N.Y. 2004) (citing *Epperson v. Entertainment Express, Inc.*, 242 F.3d 100, 107 (2d Cir. 2001)); *American Safety Table Co. v. Schreiber & Goldberg, Inc.*, 320 F. Supp. 603, 604 (S.D.N.Y. 1970) (observing that federal courts are vested with

ancillary jurisdiction over proceedings to enforce their judgments because "a federal court [has] a vital interest in seeing that [its] judgments are not rendered ineffective by . . . misconduct.")

### 2.    Fraudulent Conveyances

In New York,

> the theory upon which the law of fraudulent conveyances is based is that the assets or resources of a debtor constitute a fund out of which the creditors have the right to be paid, and it therefore embraces any business affair or transaction which places his property beyond the reach of creditors.

30 N.Y.Jur.2d Creditor's Remedies § 300. Accordingly, the NYDCL deems certain conveyances as fraudulent when the conveyances are made under circumstances which unfairly curtail creditors' rights. *United States v. Laronga*, No. 89 Civ. 692 (FB), 2000 U.S. Dist. LEXIS 7226, at *11 (E.D.N.Y. May 25, 2000).

#### *Constructively Fraudulent Conveyances*

Pursuant to the NYDCL, a conveyance by a debtor is deemed constructively fraudulent if it is made without fair consideration and, *inter alia*, if one of the following conditions is met: (1) the conveyor is insolvent or will be rendered insolvent by the conveyance in question, NYDCL § 273; (2) the conveyor is a defendant in an action for money damages or a judgment in such an action has been docketed against the conveyor, and the conveyor fails to satisfy the judgment, NYDCL § 273-a; (3) the conveyer is engaged . . . in a business . . . for which the property remaining in his hands after the conveyance is an unreasonably small capital, NYDCL § 274, or (4) the conveyor intends or believes that he will incur debts beyond his ability to pay as they mature, NYDCL § 275. See *Sharp Int'l Corp. v. State St. Bank & Trust Co*., 403 F.3d 43, 53 (2d Cir. 2005); *In re All Am. Petroleum Corp.*, 259 B.R. 6, 16-17 (Bankr. E.D.N.Y. 2001). Neither of these sections of the NYDCL requires the plaintiff to show that the defendant acted with

actual intent to defraud. *Ostashko v. Ostashko*, No. 00 Civ. 7162, 2002 U.S. Dist. LEXIS 27015, at *64 (E.D.N.Y. Dec. 10, 2002).

For each type of constructive fraud, the plaintiff must establish that the conveyance was not made for fair consideration.  NYDCL § 272 defines fair consideration as that given for property, or obligation,

> (a) when in exchange for such property, or obligation, as a fair equivalent therefore, and in good faith, property is conveyed or an antecedent debt is satisfied, or

> (b) when such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

*See also HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1058-59 (2d Cir. 1995).  Even if a transaction involves an exchange of fair equivalents, a transaction also lacks fair consideration if it was not made in good faith. *Id. See also United States v. McCombs*, 30 F.3d 310, 326 (2d Cir. 1994) (sufficiency of consideration under DCL § 272 depends on facts and circumstances of each particular case).  "[A] transaction is void for lack of good faith when one or more of the following factors is lacking: (1) an honest belief in the propriety of the activities in question; (2) no intent to take unconscionable advantage of others; and (3) no intent to, or knowledge of the fact that the activities in question will hinder, delay, or defraud others.  The term 'good faith' does not merely mean the opposite of the phrase 'actual intent to defraud.'" *Computerland Corp. v. Batac, Inc.*, 750 F. Supp. 97, 98 (S.D.N.Y. 1990) (quotations and citation omitted).  Good faith is required of both the transferor and the transferee. *See In re Checkmate Stereo & Electronics, Ltd.*, 9 B.R. 585, 617 (Bankr. E.D.N.Y. 1981), *aff'd*, 21 B.R. 402 (E.D.N.Y. 1982).

For purposes of constructive fraud, the burden to establish a lack of fair consideration, which is a component of each of the constructive fraud claims, is generally on the party challenging the conveyance. *See United States v. McCombs*, 30 F.3d 310, 324 (2d Cir. 1994).

12

However, the burden of proof shifts from the plaintiff to the defendant where the facts regarding the nature of the consideration are in the defendant's control. *See Id.; Ackerman v. Ventimiglia*, 362 B.R. 71, 82 (Bankr. E.D.N.Y. 2007).  Moreover, "where the transaction involves family members, and the transaction was made without any tangible consideration, 'a heavier burden is placed upon the grantee to demonstrate fair consideration for the transfer.'" *Id*. at 324 (quoting *Liggio v. Liggio*, 53 A.D.2d 543, 549, 385 N.Y.S.2d 33, 39 (1st Dep't 1976)). *See also Domino Media, Inc. v. Kranis*, 9 F. Supp. 2d 374, 387 (S.D.N.Y. 1998), aff'd, 173 F.3d 843 (2d Cir. 1999).

### *Actually Fraudulent Conveyances*

In contrast to the constructive fraud provisions of the New York Debtor and Creditor Law, NYDCL § 276 requires a showing of a debtor's "actual intent" to hinder, delay, or defraud its creditors. *See generally McCombs*, 30 F.3d at 327.  "Because direct proof of a debtor's intent to hinder his creditors is rare, creditors may rely on 'badges of fraud' to establish an inference of fraudulent intent." *Shelly v. Doe*, 249 A.D.2d 756, 758, 671 N.Y.S.2d 803 (3d Dep't 1998). Badges of fraud are "circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." *U.S. Bancorp Equip. Fin., Inc. v. Rubashkin*, 30 Misc.3d 1216[A], 924 N.Y.S.2d 312, 2011 NY Slip Op 50100[U], (N.Y.Sup. Jan. 31, 2011) (internal quotations and citations omitted).  In the Second Circuit, these include: "(1) the lack or inadequacy of consideration; (2) the family, friendship or close associates relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits

by creditors; and (6) the general chronology of the events and transactions under inquiry. *Arista Records LLC v. Lime Group LLC*, No. 06 Civ. 5936 (KMW), 2011 U.S. Dist. LEXIS 43716, at *12 (S.D.N.Y.  Apr. 21, 2011) (citing *In re Kaiser*, 722 F.2d 1574, 1582 (2d Cir. 1983)).

Although it is normally inappropriate for a court to rule on a factual issue such as a party's intent, nevertheless, courts do grant summary judgment on claims pursuant to § 276 where badges of fraud give rise to an inference of actual intent. *Citibank, N.A., v. Benedict*, No. 97 Civ. 9541 (AGS), 2000 U.S. Dist. LEXIS 3815, at *33-34 (S.D.N.Y. March 27, 2000) (citing *Dillon v. Dean*, 236 A.D.2d 360, 653 N.Y.S.2d 639 (App. Div. 1997); *United States v. Carlin*, 948 F. Supp. 271, 277-78 (S.D.N.Y. 1996) (granting summary judgment on § 276 claim); *First Fidelity Bank v. Manzo*, 250 A.D.2d 730, 673 N.Y.S.2d 196, 197 (App. Div. 1998) (same)).

Furthermore, "only an actual intent to hinder and delay need be established, not an actual intent to defraud, and lack of fair consideration gives rise to a rebuttable presumption of fraudulent intent." *United States v. Carlin,* 948 F. Supp. 271, 277-78 (S.D.N.Y. 1996).

# I.   JUDGMENT DEBTORS' CONVEYANCES WERE CONSTRUCTIVELY FRAUDULENT

## A.   The Conveyances Lacked Fair Consideration

Fair consideration is given for property when in exchange for such property, as a fair equivalent therefore, and in good faith, property is conveyed or an antecedent debt is satisfied. NYDCL § 272.  Here, the transfers were made for $10 (or in some cases $0), and all that was "exchanged" for the property were partnership interests to Battaglia.[16]  Thus, in order to pass

---

[16]  The corporate Judgment Debtors did not receive any partnership interests for the transfers of property they made to FLPs.  Moreover, the properties that were transferred prior to Mr. Rubinstein's involvement and the FLPs being created (e.g., 160-43 85th Street, Howard Beach, NY 11414, 157-19 84th Street, Howard Beach, NY 11414 and 158-31 90th Street, Howard Beach, NY 11414)  however, were only exchanged for consideration of $10 or less, without any partnership interests in the exchange.

muster, the partnership interests Battaglia received must be a "fair equivalent" for what was transferred. *See Interpool Ltd., v. Patterson*, 890 F. Supp. 259, 266 (S.D.N.Y. 1995).

### 1. The transfers were not made in exchange for a "fair equivalent"

Regardless of what the Judgment Debtors may argue, it is plain that there was no fair equivalent exchanged for the transfer of these properties. Battaglia claims that the transfers of property were made in exchange for partnership shares in the FLPs "of equal value" or "fair market value." *See, e.g.*, AB Depo. at 18:16-19:17. However, the partnership interest that Battaglia received could not have been equal to the value of the property because Battaglia does not have a 100% unrestricted interest in the FLPs. In fact, the very fact that the assets are placed within an FLP diminishes its value because of the restrictions associated with the FLP ownership of a property. Further, the limited partner shares, although relatively small values compared to the general partner shares, have values stated in the partnership agreements that take away from the value that Battaglia retained through the transfers. Battaglia could not receive "equal value" in partnership shares because his family has an interest in the FLPs and furthermore, he gifted large percentages of the partnership interests to his daughters.

Notably, this "equal value" that Battaglia refers to was only arguably of equal value to him because he retained control over the properties, but was not at all equal in terms of the value that these partnership shares have to his creditors as compared to the value of the property itself. Indeed, the existence of a fair exchange must be determined from the perspective of *creditors* rather than from the vantage point of the debtor. *See In re Prejean,* 994 F.2d 706, 708 (9th Cir. 1993); *Tesmetges v. Herman,* 85 Bankr. 683, 696 (Bankr. E.D.N.Y. 1988); *Megabank Financial Corp. v. Alpha Gamma Rho Fraternity,* 841 P.2d 318, 320 (Colo. App. 1992); *Hansen v. Cramer,* 39 Cal. 2d 321, 324-25, 245 P.2d 1059, 1061 (1952) (en banc). The *Tesmetges* court,

for example, held that a conveyance is not an exchange for equivalent value when it makes the debtor "execution proof" and the debtor's assets unreachable by creditors.   In determining whether a conveyance is fraudulent, "the touchstone is the unjust diminution of the estate of the debtor that otherwise would be available to creditors." *Tesmetges,* 85 Bankr. at 697 (quoting G. GLENN, THE LAW OF CONVEYANCES § 195 (1931)).   Viewing the fairness of a transfer from the perspective of a creditor is consistent with the policy underlying statutes against fraudulent conveyances, which were enacted in order to protect the rights of creditors by preventing debtors from making transfers that would "hinder, defraud or delay" creditors. G. GLENN, FRAUDULENT CONVEYANCES AND PREFERENCES §§ 61d, 195 (Rev. ed. 1940).

Battaglia has done just that by rendering his approximately $13 million worth of property and assets virtually unreachable by the Judgment Creditors.   Although Battaglia boasts that the best part of the FLPs is that he was still left in full control of everything and "[i]t's like nothing ever changed," (AB Depo. at 31:9-32:2), such an assertion plainly misses the point.   *See Interpool, Ltd.*, 890 F. Supp. at 266-67 (rejecting the judgment debtor's argument that partnership interests are just as valuable as the property exchanged because he is left in control of the property after the transfer). *See also Petersen v. Vallenzano*, 849 F. Supp 228 (S.D.N.Y 1994) (Where "the reservation of the dominion and control over the property in dispute is inconsistent with the effective disposition of the property by the judgment debtor, the courts may determine that a fraudulent conveyance has occurred.").   To the contrary, what has in fact changed is the availability of the estate for the Judgment Creditors; this is the most important factor in determining whether a conveyance is fraudulent. *See Id.* at 267. *Leventhal v. Spillman*, 234 F. Supp. 207 (E.D.N.Y. 1964), *aff'd*, 362 F.2d 264 (2d Cir. 1966).   The FLPs prevent the

Judgment Creditors from reaching the assets because the FLPs themselves are now the owners of the assets and the Judgment Debtors simply own shares or interests in the FLPs.  It is fully within the control of Battaglia, as the general partner of the FLPs, to decide not to make any distributions of profits from the FLPs and leave the creditors with nothing.   Accordingly, when these transfers are viewed from the standpoint of the Judgment Creditors and their legal rights with respect to the Judgment Debtors' partnership interests, the conveyances were not an exchange for equivalent value in any respect.

Furthermore, the corporate Judgment Debtors (J.B. Custom, J.B. Residential and J.B. Holding), received no consideration for the transfers of property that they made to the FLPs and/or LLCs.  Battaglia may have received interests in FLPs but the corporations themselves did not.  By acting only in his own interests rather than in the interest of the corporations and the corporations' creditors, Battaglia has breached his fiduciary duty to the Judgment Creditors and demonstrated a clear lack of fair consideration.[17] *See Heimbinder v. Berkovitz*, 175 Misc. 2d 808, 814-16, 670 N.Y.S.2d 301 (1998) ("The manipulation of corporate assets by the [defendants] in the face of the [plaintiff's] rights by preferring the interests of those in control of the corporation . . . deprives the [defendants] of the status of transferees for fair consideration.").

In addition, no real estate transfer tax was paid on the majority of these conveyances, which is evidence of inadequate consideration. *See Benedict*, 2000 U.S. Dist. LEXIS 3815, at *35; *Polkowski v. Mela*, 143 A.D.2d 260, 532 N.Y.S.2d 159 (App. Div. 1988) (holding that absence of real estate transfer tax is accepted as evidence that there was an absence of fair

---

[17] This fiduciary duty is based on "the duty corporate directors and officers owe to creditors deriving from the principle that the corporate assets constitute a trust fund for the benefit of creditors." *Marine Midland Bank v. Murkoff*, 120 A.D.2d 122, 130, 508 N.Y.S.2d 17 (2d Dept. 1986).  Nevertheless, Plaintiffs here do not seek to establish a breach of fiduciary duty because the remedy is the same as under the fraudulent conveyance laws that Plaintiffs satisfy herein. *See Id*. at 133.

consideration.).  For all of these reasons, it is clear that the property transfers were not made in exchange for adequate consideration.

### 2.   *The transfers were not made in good faith*

In addition, it is plain that the property transfers lacked fair consideration for the additional reason that they were not made in good faith.  Under New York law "good faith" is an integral part of the "fair consideration" factor, and the plaintiff bears the burden of proving lack of good faith by inference. *McCombs*, 30 F.3d at 326.  "Good faith is required of both the transferor and the transferee, and it is lacking when there is a failure to deal honestly, fairly, and openly." *Citi Group/Commercial Servs., Inc. v 160-09 Jamaica Ave. Ltd. Partnership*, 25 A.D.3d 301, 303, 808 N.Y.S.2d 187 (1st Dept 2006) (citation and internal quotation marks omitted).

Courts have not hesitated to find a lack of good faith where the transferee "knew that the transfer would hinder the transferor's creditors." *Interpool, Ltd*., 890 F. Supp. at 268. *See also United States v. Tabor Court Realty Corp.*, 803 F.2d 1288, 1295-96 (3d Cir. 1986), *cert. denied*, 483 U.S. 1005, 97 L. Ed. 2d 735, 107 S. Ct. 3229 (1987).  While Battaglia refuses to admit that he knew that transferring his property to the FLPs would hinder the Judgment Creditor's ability to collect the judgment against him and his companies, common sense dictates that he was well aware of this outcome and, more likely, made these transfers for that very purpose.  Indeed, Mr. Rubinstein must have advised Mr. Battaglia of all the implications that would result from his "estate planning."

Moreover, good faith may be deemed to be lacking, under the constructive fraud provisions of the fraudulent conveyance law, where a transferee is controlled by a person who is also an insider of, and/or has control over, the transferor. S*ee*, *e.g.*, *Berner Trucking, Inc. v Brown*, 281 A.D.2d 924, 925, 722 N.Y.S.2d 656 (4th Dept 2001); *Julien J. Studley, Inc. v Lefrak*,

66 A.D.2d 208, 213, 412 N.Y.S.2d 901 (2d Dept 1979), *aff'd* 48 N.Y.2d 954, 401 N.E.2d 187,

425 N.Y.S.2d 65 (1979).  Battaglia is a shareholder of each of the Judgment Debtor companies

and is the general partner of each FLP to which the Judgment Debtors conveyed property.  His

control over the transferees in the conveyances at issue is thus undisputed and another indication

of lack of good faith is present.

  With no fair equivalent exchanged and such a lack of good faith inferred from the facts of

the property conveyances, there was plainly no fair consideration for these transfers

demonstrating their fraudulent nature.

### B. The Judgment Debtors Have Not Satisfied The Judgment Against Them (NY DCL § 273-a)

  It is undisputed that the Judgment Debtors were defendants in an action for money

damages who have not satisfied the judgment against them and who have made certain

conveyances while the action was in progress.  Accordingly, the only relevant dispute for

purposes of NYDCL § 273-a is whether the conveyances were made with, or without "fair

consideration."  As set forth above, it is clear that the conveyances were made without fair

consideration and thus are constructively fraudulent pursuant to NYDCL § 273-a.

### C. The Judgment Debtors Were Rendered Insolvent By The Conveyances (NY DCL § 273)

  Section 273 prohibits conveyances, made without fair consideration, that render or will

render the transferor insolvent.  *See United States v. McCombs*, 30 F.3d 310, 323 (2d Cir. 1994);

*Gala Enters., Inc. v. Hewlett Packard Co.*, 989 F. Supp. 525, 528 (S.D.N.Y. 1998); *Shelly v.

Doe*, 249 A.D.2d 756, 757, 671 N.Y.S.2d 803, 805 (3d Dep't 1998).  Pursuant to NYDCL §

271(1), "[a] person is insolvent when the present fair saleable value of his assets is less than the

amount that will be required to pay his provable liability on his existing debts as they become

absolute and matured."  A debt includes any legal liability, whether matured or unmatured,

liquidated or unliquidated, absolute, fixed or contingent. *In re Borriello,* 329 B.R. 367, 377 (E.D.N.Y. 2005) (citing NYDCL§ 270). Here, Battaglia admitted that he and the other Judgment Debtors retained no assets after the transfers were made. AB Depo. at 10:15-11:11; 69-70:14. There is no doubt that the transfer of substantially, if not all of the Judgment Debtors' assets to FLPs left nothing with which to pay the debt owed to the Plaintiffs. Accordingly, since these transfers were made without fair consideration, they must be set aside. *See Southern Industries, Inc. v. Jeremias*, 66 A.D.2d 178, 182, 411 N.Y.S.2d 945 (2d Dept 1978).

Further, when a transfer is made without consideration, courts have applied a presumption of insolvency that shifts the burden to the defendant to rebut by showing continued solvency after the transaction. *See In re Borriello,* 329 B.R. at 373; *In re Corcoran*, 246 B.R. 152, 163 (E.D.N.Y. 2000); *United States v. Red Stripe*, 792 F. Supp. 1338, 1342 (E.D.N.Y. 1992). Defendants will not – because they cannot – meet their burden in this respect.

**D.     The Judgment Debtors Were Left With Unreasonably Small Capital (NYDCL § 274)**

As set forth above, the Judgment Debtors conveyed away virtually all of their assets, leaving them with unreasonably small capital, if any, with which to pay any debt that would be incurred to Plaintiffs through settlement or trial. In fact, after transferring away their assets, the Judgment Debtors ceased operations of their businesses and began operating under newly-formed entities, further demonstrating that they were left with "unreasonably small capital" in the Judgment Debtor entities with which to conduct their business. Conveyances such as these, without fair consideration, are fraudulent and should be set aside. *See In re All Am. Petroleum Corp.,* 259 B.R. at 16; *In re Tuller's, Inc.*, 480 F.2d 49, 51 (2d Cir. 1973).

### E. The Judgment Debtors Knew That They Would Incur Debts Beyond Their Ability To Pay Them After Making the Conveyances (NYDCL § 275)

At the time that the majority of the FLPs were created (September 2011), the Judgment Debtors knew, or certainly should have known, that they would incur debts associated with the lawsuit brought by the Plaintiffs which was approaching trial at that time.  Not only were the Judgment Debtors aware of what monetary amounts Plaintiffs were seeking based on settlement discussions, they were also aware that Plaintiffs sought to attach $4.5 million worth of assets in September 2011. *See* Dkt. No. 77.  In addition, the Defendants admitted to liability as trial approached, only disputing the methodology for calculating the damages owed to the Plaintiffs. Having transferred all of the assets of the Defendants, it was a virtual certainty that the Defendants would incur a debt from the trial that they would not be able to pay.  Accordingly, and since the conveyances were made without fair consideration, the property transfers should be set aside.

## II. JUDGMENT DEBTORS' CONVEYANCES WERE ACTUALLY FRAUDULENT

### A. All Six "Badges of Fraud" Are Present

Although it is abundantly clear that these conveyances should be avoided based on the constructive fraud provisions set forth above, the circumstances surrounding the conveyances at issue can only be interpreted to demonstrate that the Judgment Debtors made such transfers of property with actual intent to defraud. *See Prudential Farms of Nassau County v. Morris*, 286 A.D.2d 323, 324, 729 N.Y.S.2d 156 (2d Dep't 2001); *Marine Midland Bank v. Murkoff*, 120 A.D.2d 122, 128, 508 N.Y.S.2d 17 (2d Dep't 1986) (holding that defendants' actual intent to defraud was proven by circumstances established by the evidence).  As such, each of the "badges of fraud" demonstrating fraudulent intent are present here and set forth in turn below.

21

        *1.*      *The conveyances lacked adequate consideration*

As discussed in detail in Section I (A) above, it is plain that the conveyances of property made by the Judgment Debtors were not for fair consideration because they were lacking in good faith and involved no exchange of a "fair equivalent." This "badge" weighs heavily in support of actual intent to defraud.

        *2.*      *There was a close relationship between the parties to the conveyances*

Battaglia was a shareholder and owner of the Judgment Debtor corporations and is himself personally a Judgment Debtor. Battaglia and the Judgment Debtor corporations conveyed all of their assets to FLPs. Battaglia is the general partner of the FLPs and his wife and daughters are limited partners to the FLPs. Also, with regard to the two properties that were transferred in September 2010 (prior to the creation of the FLPs), Battaglia is the brother-in-law and boss of Rosa Samaras, the signatory for the corporate entities to which these properties were transferred. Therefore, it is undeniable that all of the parties to the conveyances at issue were family members of Battaglia or companies for which Battaglia held an ownership or partnership interest. Fraudulent intent can be inferred from the presence of this "badge" as well.

        *3.*      *The Judgment Debtors retained possession, benefit and use of the property*

Battaglia boasted that he retained possession, benefit and use of the property that he and the other Judgment Debtors conveyed to the FLPs, stating that "the best part of the [FLPs]" was that he "was still left in full control of everything" and "[i]t's like nothing ever changed." AB Depo. at 31:9-32:2. This "badge" is clearly present and is indicative of actual fraudulent intent.

        *4.*      *The Judgment Debtors were left with no assets after the conveyances*

Battaglia confirmed that the Judgment Debtors were left with no assets after these conveyances were made. The Judgment Debtor corporations essentially function as shell corporations without conducting any business. This "badge" is also unquestionably present.

      *5.     The transactions in question took place prior to trial in this action*

The formation of the FLPs and the conveyances of property by the Judgment Debtors took place in the months leading up to and subsequent to the initial trial date for the underlying actions of October 11, 2011. The majority, if not all of the conveyances were completed by beginning of the actual trial that took place in March 2012. Undeniably, all of the conveyances at issue took place during the pendency of this action, while the Judgment Debtors were Defendants.

      *6.     The timing of the transactions is suspect*

If having taken place during the late stages of a pending action is not suspect enough, the conveyances at issue, with the exception of the two September 2010 property transfers, took place within months of the trial dates and proposed settlements. *See* Ex. 3. The majority of the transfers took place on the same days, from late September 2011 through January 2012, with several additional conveyances made after trial in April 2012. Indeed, one court has found that "[p]roof of contemporaneous conveyances, no matter to whom made, is always relevant to the issue of a fraudulent conveyance." *Wittemann Bros. v. Forman Bottling Co.*, 178 A.D. 674, 676 (N.Y. App. Div. 1917) (emphasis added). In addition, the "gifts" of FLP interests, which Battaglia claimed was the entire purpose of the "estate planning," were not made until late May, 2012. In sum, when the final judgment was entered in the underlying action, the Judgment Debtors had conveyed all of their assets, leaving nothing to be levied or attached for collection purposes.

## III.   JUDGMENT DEBTORS' CONVEYANCES SHOULD BE SET ASIDE

"Generally, the creditor's remedy in a fraudulent conveyance action is limited to reaching the property which would have been available to satisfy the judgment had there been no

conveyance." *Neshewat v. Salem*, 365 F. Supp. 2d 508, 521 (S.D.N.Y. 2005) (citations and internal quotation marks omitted); *see also Grace v. Bank Leumi Trust Co. of New York*, 443 F.3d 180, 189 (2d Cir. 2006) ("The proper remedy in a fraudulent conveyance claim is to rescind, or set aside, the allegedly fraudulent transfer, and cause the transferee to return the transferred property to the transferor."). NYDCL section 278 provides, in relevant part:

> Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such purchaser . . . have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or disregard the conveyance and attach or levy execution upon the property conveyed.

NYDCL § 278(1).  *See also Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1172 (2d Cir. 1993).  "The purpose of the remedy fashioned by DCL § 278 is to grant the creditor the right 'to be paid out of assets to which he is actually entitled and to set aside the indicia of ownership which apparently contradict that right.'" *Gasser v. Infanti Int'l, Inc.,* 353 F. Supp. 2d 342, 356 (E.D.N.Y. 2005) (quoting *Hearn 45 St. Corp. v. Jano,* 283 N.Y. 139, 143, 27 N.E.2d 814 (1940) (citations omitted)).  Here, the Judgment Creditors seek to be paid out of the assets that the Judgment Debtors fraudulently conveyed away during the pendency of this action by having such conveyances set aside or disregarded.  Once the conveyances are set aside, the Court should issue an execution of that property for the Judgment Creditors to obtain payment of the judgment or should quit-claim title to the amount of Judgment Debtors' property necessary to satisfy the judgment.

## IV.    REASONABLE ATTORNEYS' FEES SHOULD BE AWARDED

Plaintiffs should be awarded reasonable attorneys fees associated with their work to investigate and demonstrate the Judgment Debtors' fraudulent conveyances.  "§ 276-a provides

for attorneys' fees in the event a party proves that a transfer is made and received with actual intent." *Hassett v. Goetzmann*, 10 F. Supp. 2d 181, 190 (N.D.N.Y. 1998); *see also Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Plaintiffs have done just that through the badges of fraud set forth in Section II above. Plaintiffs will provide contemporaneous time records for this work in conjunction with their reply in support of the motion.

## CONCLUSION

As set forth above, the Defendants in the underlying action fraudulently conveyed their assets during the pendency of the action in order to frustrate collection of the judgment by the Plaintiffs. Plaintiffs have demonstrated this through both constructive fraud (§§ 273, 273-a, 274, 275) and actual fraud (§ 276) provisions of the NYDCL. Accordingly, the Court should grant the Plaintiffs' motion in its entirety and enter an order: (i) declaring certain conveyances of property made by the Judgment Debtors to be fraudulent conveyances pursuant to NYDCL §§ 273, 273-a, 274, 275 and 276; (ii) setting aside the fraudulent conveyances and causing the conveyed property to be returned to the Judgment Debtors; (iii) directing Judgment Debtors to turn over to the Plaintiffs all of the property conveyed necessary to satisfy the outstanding judgment in favor of Plaintiffs; and (iv) any other such remedy the Court deems justified.

Dated: New York, New York
      January 22, 2013

                               PELTON & ASSOCIATES PC

                               By:    */s/ Brent E. Pelton*        
                               Brent E. Pelton (BP 1055)
                               Taylor B. Graham (TG 9607)
                               111 Broadway, Suite 901
                               New York, New York 10006
                               Telephone: (212) 385-9700
                               Facsimile: (212) 385-0800

                               *Attorneys for Plaintiffs/Judgment Creditors*